U.S.C.A. – 7th Circuit
R E C E I V E D

JUN 0 3 2025

No. 25-1854

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| JANE F. GIRARD, | ) | Appeal from the United States District |
|     Plaintiff - Appellee, | ) | Court for the Northern District of Illinois, |
| | ) | Eastern Division. |
| and | ) | |
| | ) | |
| KENTON GIRARD, | ) | |
|     Defendant/Crossclaim | ) | No. 1:25-cv-04586 |
|     Plaintiff - Appellee, | ) | |
| | ) | |
|     v. | ) | The Honorable |
| | ) | JEREMY C. DANIEL |
| MARISSA GIRARD, | ) | Judge Presiding. |
|     Defendant - Appellant. | ) | |

---

**JURISDICTIONAL BRIEF OF APPELLANT MARISSA GIRARD**

---

for Appellant Marissa Girard:

Marissa Girard, in pro se
965 Forestway Drive
Glencoe, IL 60022
Email: marissadakis@gmail.com
Tel: 773-425-4393

Dated: June 1, 2025

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1854

Short Caption: Girard v. Girard et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
MARISSA GIRARD

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
N/A

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and
N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Marissa Girard    Date: June 1, 2025

Attorney's Printed Name: MARISSA GIRARD

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓    No ☐

Address: 965 Forestway Drive

Glencoe, IL 60022

Phone Number: (773) 425-4393    Fax Number:

E-Mail Address: marissadakis@gmail.com

rev. 12/19 AK

1

## TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

1

TABLE OF AUTHORITIES

3

STATEMENT OF CASE AND FACTS

4-7

ARGUMENT

7-14

CONCLUSION

15

CERTIFICATE OF COMPLIANCE

16

CERTIFICATE OF FILING AND SERVICE

17

TABLE OF CONTENTS FOR SHORT APPENDIX

18

## TABLE OF AUTHORITIES

*City of Greenwood v. Peacock,*
 384 U.S. 808 (1966)   10,11

*Dart Cherokee Basin Operating Co. v. Owens,*
 135 S. Ct. 547, 554 (2014)   7

*Fenton v. Dudley,*
 761 F.3d 3 770 (7th Cir. 2014)   11

*Home Depot USA Inc. versus Jackson,*
 587 U.S. 435 (2019)   13

*Georgia v. Rachel,*
 384 U.S. 780, 792 (1966)   11,15

*Girard v. Fernandez et al.,*
 Civil Action No. 1:25-cv-00136 (N. Dist. Illinois)   5,8

*Girard v. Girard,*
 Cook County Case No. 2015D009633 (State of Illinois)   4

*Johnson v. Mississippi,*
 421 U.S. 213 (1975)   11

*Saint Francis College v. Al-Khazraji,*
 481 U.S. 604 (1987)   8

*Vega v. Hempstead Union Free Sch. Dist.,*
 801 F.3d 72 (2nd Cir. 2015)   11,15

*Village of Freeport v. Barrella,*
 814 F.3d 594 (2d Cir. 2016)   8

*Willingham v. Morgan,*
 395 U.S. 402 (1969)   8

*Watson v. Philip Morris Cos.,*
 551 U.S. 142 (2007)   8

## STATEMENT OF THE CASE AND FACTS

In 2015, Jane F. Girard and Kenton Girard divorced, pursuant to *Girard v. Girard*, Cook County Case No. 2015D009633. Shortly after finalizing the divorce, Kenton Girard married a Hispanic/Latinx woman Marissa del Campo, now known under her married name Marissa Girard.

Eight years later, in late June 2023, Jane F. Girard served Marissa Girard with a summons under 2015D009633 (D. 1, pp. 15-17) together with an accompanying paper entitled "Motion to Join Third Party" filed on March 8 2023 (D.1, pp. 7-14). The motion does not name Marissa Girard as a party, much less in its caption. By failing to action Marissa Girard with a pleading, Jane F. Girard's joinder of Marissa Girard is deficient under 735 ILCS 5/2-201(a). By failing to ever serve Marissa Girard with a pleading – whilst targeting her with more than a dozen motions seeking her jailing and a panoply of other abusive litigation tactics – Jane F. Girard has trampled Marissa Girard's constitutional right to fair notice of claims. A1.

The injustice is magnified by the fact that Marissa Girard is a disabled person who suffers from two ADA-recognized disabilities, which predominantly impact Hispanic/Latinx persons, namely PTSD (post traumatic stress disorder) and interstitial cystitis which cause symptoms including aphasia, degraded locomotive capabilities and severe short term memory loss. A1.

Under the two-year history of Marissa Girard's involvement under the state proceedings, Jane F. Girard and her attorneys – with the complicity of various Cook County judicial officials – have turned Marissa Girard's life upside down. They have weaponized Cook County's so-called "courtroom disability coordinators" whom are solely responsible for emplacement of reasonable accommodations under the Americans with Disabilities Act ("ADA"), and they have seized on a latent and pervasive anti-Hispanic/Latinx sentiment among the halls of the Domestic Relations

Division to magnify her mistreatment by a range of Cook County officials spanning judicial officers, judicial staff and courtroom personnel.

The spectrum of mistreatment and discrimination has included (a) outright blocking Marissa Girard from participating in and attending court date, and (b) greenlighting a criminal contempt proceeding within the confines of the Domestic Relations Division and wholly devoid of the requisite elements required under the Sixth Amendment such as a bill of charges, the involvement of a state prosecutor and the installment of a jury of peers. Elsewhere, Appellant has experienced myriad violations of her constitutional due process rights, her constitutional rights to fair notice of claims, her rights to freedom from racial discrimination premised on her Hispanic/Latinx background, her rights to unfettered access to court dates and courtroom facilities, and her constitutional rights to equal protection under the law given her Hispanitc/Latinx racial background and her ADA qualifying disabilities.

In response to these abuses, Marissa Girard filed a suit on January 6 2025 in the Northern District of Illinois under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, pending before Judge Andrea Wood, ultimately amending that pleading ("FAC") on March 10 2025. A1. Under the FAC, Marissa Girard seeks relief inter alia under Section 1983 and the Equal Protection Clause against various Cook County personnel under the Domestic Relations Division relating to all of the above-enumerated causes of action, as well as Jane F. Girard and her primary attorneys at Beermann LLP specifically with respect to their liability under abuse of process and negligence theories. A1.

On April 28 2025, Marissa Girard was served with a declaratory judgment pleading by Kenton Girard, seeking a determination of his financial responsibility under their Postnuptial Indemnification Agreement, under which Kenton has agreed to indemnify Marissa from

5

reasonable and necessary legal fees incurred in connection with violation of Marissa's rights arising under the Constitution or federal law precipitated by a course of action undertaken by Jane F. Girard. D. 1, A2 at pp. 40-46.

Upon receipt of that pleading – the first she had received in fact, notwithstanding her status as an "original defendant" – Marissa Girard repaired to federal court filing a Notice of Removal because of the obvious federal and constitutional questions implicated. D. 1, A2. Jane F. Girard's attorneys at Beermann LLP immediately filed a Motion to Remand (D. 6, 7) and attempted to notice it for a hearing within two (2) court days, in violation of the fourteen (14) day notice period required under Rule 6.. In response, Judge Daniel struck their notice and imposed a briefing schedule with a status date on June 18, 2025. D. 11.

However, upon the filing of a "Motion to Reconsider" by Jane F. Girard two days later on May 1 2025 (D. 12, 13), District Judge Daniel ordered the case to be remanded to the state court on May 6 2025 (D. 34, A3) without allowing the previously ordered briefing schedule to be fulfilled and ironically without proper notice of Appellant Marissa Girard under Rule 6. Curiously, despite the obvious articulation of federal questions under the Notice of Removal (D. 1, A2 at pp. 1-5, 40-46), District Judge Daniel poignantly observed the alleged non-existence of federal questions motivating his remand decision, stating "Nothing about those claims introduce a federal question into this case, which centers on domestic disputes related to custody and divorce agreements". D. 16, A5.

On May 15 2025, this Court ruled without a written explanation  (D. 23) against Marissa Girard's Motion to Vacate Order of Remand under Rule 59(e), timely filed on May 13 2025 (D. 20). Appellant promptly filed her Notice of Appeal on May 16 2025 (D. 26) as to District Judge Daniel's remand order of May 6 2025 (D. 16) and denial of her Rule 59(e) motion of May 15

2025 (D. 23). Appellant followed up with her Motion for Compliance with Circuit Rule 50, requesting a written explanation from District Judge Daniel, specifically because her Notice of Removal actioned civil rights claims under the ambit of 28 U.S.C. § 1443(1). D. 29. On the very next court day on May 19 2025, District Judge Daniel penned a response to the request under Circuit Rule 50, stating in relevant part (D. 30):

> At argument, the Court explained that it must look at the original action, filed by Jane Girard, when assessing whether the case involves a federal question that warrants removal. **Because the original action did not involve a federal question**, which both Kenton Girard and counsel for Marissa Girard conceded, the Court remanded the case to state court. The Court further explained that Supreme Court and Seventh Circuit precedent **counseled against treating a cross–claim as part of the original action.** (emphasis supplied)

As such, District Judge Daniel appears to have conceded that the pleading which was actioned for removal – the Declaratory Judgment Crossclaim filed by Kenton Girard on April 28 2025 – did in fact raise federal questions. However, he finds that the posture (i.e. Appellant as Crossclaim Defendant) is proscribed under Supreme Court and Seventh Circuit precedent. The operative case law was duly identified in the court date on May 15 2025 and has been identified under the transcript of that proceeding. D. 36, A4.

## ARGUMENT

I.     There is no presumption against removal in this case.

To the extent there is a presumption against removal in ordinary diversity cases, it does not extend to cases in which there is a contrary congressional policy favoring removal. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (involving CAFA). Here, diversity is not at play and the operative statutory authority mandating appellate review is 28 U.S.C. § 1443(1). Because of the presentation of civil rights questions, strict scrutiny must be applied in the Court's analysis.

The Supreme Court has repeatedly found such a congressional policy in the related and

adjacent codification under 28 U.S.C. § 1442, and it has instructed courts that "this policy should not be frustrated by a narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Instead, the Court has directed that "[t]he federal officer removal statute is not 'narrow' or 'limited,'" *Id.* at 406, and the statute must be "liberally construed," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

II.     Hispanic/Latinx constitutes a race for federal purposes.

Appellant's maiden name is "del Campo" and her paternal family is Hispanic/Latinx. As such, Appellant is a proud member of the Hispanic/Latinx community. She has been discriminated against because of her Hispanic/Latinx identity, which constitutes racial discrimination. She brought her lawsuit against Cook County officials in early January 2025, including for relief for violations of equal protection based on her racial identity. In *Village of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016), the Second Circuit held that Hispanic constitutes a race for purposes of Title VII and section 1981. Prior, the Supreme Court determined that Hispanic is a race for the purposes of a § 1981 claim in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987) and has further defined "race" to include discrimination based on "ancestry or ethnic characteristics."

III.     Appellant has filed a lawsuit for violations of her civil rights based on race.

As previously described, Appellant filed a federal complaint on January 6 2025 under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136, and the operative pleading is her FAC duly filed on March 10 2025. A1. Under her complaint, she seeks relief from a twenty-four month and counting assault on her federal and constitutional rights, including via Section 1983 and the Equal Protection Clause based on her Hispanic/Latinx racial identity. A1. While the discrimination she has experienced is "intersectional" or "multi-faceted" in nature, one obvious

8

element of the discrimination Appellant has experienced is owing to her racial identity as a Hispanic/Latinx person.

In case of any doubt, her complaint and the FAC speak at length about her physical disabilities arising under PTSD and interstitial cystitis, including the debilitating symptoms presented thereunder. Each medical condition on its own is a call sign for Appellant's Hispanic/Latinx racial identity. Together, they constitute an unambiguous marker for her Hispanic/Latinx racial identity. Recent scientific studies have substantiated this proposition.

To wit, the prevalence of PTSD among Hispanic/Latinx persons is higher compared to non-Hispanic Caucasians. Hispanic/Latinx persons are exposed to higher rates of traumatic events and conditional risks for developing PTSD symptoms and comorbid mental health symptoms compared to other minority groups. The United States Hispanic/Latinx population evinces a higher conditional risk for posttraumatic stress disorder (PTSD) compared to other racial groups (link: McKnight-Eily et al., 2021) and when diagnosed with PTSD, Hispanic/Latinx persons showcase a more chronic course (link: McKnight-Eily et al., 2021; link: Ortega & Rosenheck, 2000).

Interstitial cystitis is much more common in Hispanic patients with complaints of urinary frequency and urgency than previously believed. In these women, a strong consideration should be given for underlying diagnosis of IC. PREVALENCE OF INTERSTITIAL CYSTITIS IN HISPANIC PATIENTS WITH URINARY FREQUENCY AND URGENCY (Ho M, Bergman J, Bhatia N of the University of California at Los Angeles).

IV.    42 U.S.C. § 1983 on its own facilitates removal under § 1443(1).

Section 1983 is traced back to the tumultuous period following the American Civil War. 1865 marked the war's end and the abolition of slavery followed soon after through ratification

of the Thirteenth Amendment. During the Reconstruction Era, however, southern states refused to adhere to the Constitution. Rampant racism persisted across the South. Black Codes severely restricting the freedoms and rights of African Americans were enacted in some states in response to the abolition of slavery.

The Civil Rights Act of 1871 was the immediate precursor to Section 1983. Congressman Samuel Shellabarger introduced this legislation in response to widespread violence and intimidation orchestrated by groups like the Ku Klux Klan. These groups terrorized African Americans and other minority groups and blocked their participation in political and social life.

On April 20, 1871, Congress enacted legislation that provided the federal government with tools to combat racial terrorism and protect constitutional rights. We now recognize Section 1983 – originally codified as Section 1 of the Civil Rights Act of 1871 – as one of its key provisions. The historical purpose of Section 1983 could not be more clear: it was born out of the KKK's unspeakable history and intended as a means to achieve racial equality.

Therefore, wherein Appellant relies heavily on the use of Section 1983 to bring her claims under the FAC against an array of Cook County Domestic Relations Division defendants, she has invoked one of the tried and tested tools[1] – in a manner wholly consistent with historical purpose – available to a victim of racial discrimination to seek relief in the federal courts.

V.    The two-pronged test under § 1443(1) is satisfied.

The Supreme Court has established a two-pronged test to determine whether removal pursuant to § 1443(1) is appropriate. "First, it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.' ... Second, it must appear ... that the removal petitioner is 'denied or cannot

---

[1] As an aside, the Supreme Court has determined under *City of Greenwood v. Peacock,* 384 U.S. 808 (1966) that the related and adjacent statutory authority codified under 42 U.S.C. § 1981 affirmatively qualifies as in-scope for the purposes of application under § 1443(1).

enforce' the specified federal rights `in the courts of [the] State.'" *Johnson v. Mississippi*, 421

U.S. 213, 219, (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 792 (1966)).

Furthermore, similar to the setup under *Fenton v. Dudley*, 761 F.3d 3 770, 773 (7th Cir.

2014), the state court has openly disregarded the force and effect of removal on the state court

proceedings where Judge Johnson conducted two court dates and signed two court orders whilst

the proceedings were unambiguously before the federal court. D. 15, A6. Under *Fenton*:

> [W]e note that the Cook County Circuit Court's decision to enter an injunction after the case had
> been removed to federal court is clearly contrary to 28 U.S.C. § 1446(d)... we are troubled that a
> state court would disregard § 1446's clear command, especially because the face of the injunction
> order reveals that the state court recognized that the defendants had initiated removal.

While the Seventh Circuit has not yet ruled upon how the second prong is satisfied, under *Fenton*

the court emphasized a so-called "equivalent basis exception" for satisfaction of the second

prong under 1443(1) arising under *Rachel*:

> But *Rachel* recognized an exception to this rule: "even in the absence of a discriminatory state
> enactment," the Court held, removal could be proper if "an *equivalent basis* could be shown for
> an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified
> federal rights in the state court." 384 U.S. at 804, 86 S.Ct. 1783 (emphasis added).

*Fenton* has characterized satisfaction of the equivalent basis exception under *Rachel* as

demonstrating that federal law (1) "confers an absolute right" on them to engage in the conduct

at issue, and (2) "confers immunity" from being hauled into court on such grounds (quoting from

*City of Greenwood v. Peacock*, 384 U.S. at 826–27).

Most relevant however, is that under *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d

72 (2nd Cir. 2015), the Second Circuit split from past practice and found that **retaliation for**

**filing a discrimination complaint** (as here, A1) is duly actionable under Section 1983. In doing

so, the court found that retaliation for discrimination complaints counted as a "deprivation of any

rights, privileges, or immunities" under the Equal Protection Clause of the Fourteenth

Amendment.

Here the retaliation consists in the state court continuing to insist that Marissa Girard sit for an interminable barrage of motions for sanctions and jailing directed at her AND for a nebulous "mystery trial" which keeps getting postponed but is wholly inappropriate because (a) no claims are pending against Marissa Girard, (b) no domestic relations pleadings whatsoever have been filed by Plaintiff-Appellee Jane F. Girard, and (c) Marissa Girard is being threatened with criminal contempt initiated by Jane F. Girard's attorneys as apparent "payback" for suing Cook County Judge William Yu and Jane F. Girard's attorneys under her lawsuit in the Northern District of Illinois. A1.

The state court insisting on Marissa Girard's continuing participation (going on 24+ months at this point) as a defendant in the state court proceeding is logically no different from holding a person in the squalor of Cook County Jail without charges for an extended and unreasonable period of time. There is no basis in law for Marissa's predicament in the state court: it is purely vindictive and retaliatory in nature.

For avoidance of doubt, as recounted under the FAC, Marissa Girard duly informed the state court with legal filings about her deficient joinder and jurisdictional trespasses before filing her FAC. Cook County is fully aware of the grotesque due process and jurisdictional violations against Marissa Girard, but it sustains her place as a defendant for daring to file a lawsuit seeking relief from discrimination based on her disabilities and race. A1.

VI.    The posture here does not prohibit removal.

The scenario here is far from "normal". Appellant - neither the biological mother nor the holder of parental rights – has been forced to endure dozens of motions to jail her for putative violations of a parenting agreement to which she is not a party for the last twenty-four (24)

months. Even worse, she has been forced to endure these circumstances without being actioned with a pleading at any point in time. D. 1, A2; A1.

The posture hereunder likely presents a new question for this Court. Appellant is functionally an "original defendant" but not having been actioned with any pleading by Jane F. Girard, the declaratory judgment crossclaim filed against her by Kenton Girard is likely an "original action" for the purposes of the analysis enshrined under *Home Depot USA Inc. versus Jackson*, 587 U.S. 435 (2019). Neither is Defendant-Appellant a recipient of a counterclaim or a "third party defendant" for the purposes of applying J. Thomas's logic propounded under *Home Depot*.

What's more perplexing is that despite the state proceeding being domiciled in the Domestic Relations Division of Cook County, the utter lack of pleadings by Jane F. Girard (D.1, A2 at pp. 7 - 46) implies there are no claims – in specific no domestic relations style claims – in the underlying state proceeding. Put differently, that state court proceeding is not a custody proceeding or any other sort of domestic relations style of proceeding. Therefore Judge Daniel's reasoning in response to the Motion for Compliance with Circuit Rule 50 (D. 30) and contained in the transcript from the court date of May 15 2025 (D. 36, A4) premised on Jane F. Girard's "claims" or those "claims" constituting an "original action" is flawed.

VII.    The discrimination is intersectional in nature.

As a Hispanic/Latinx person alleging racial discrimination, Appellant's complaint (FAC) falls squarely within Section 1983's historical and contemporary purpose. The federal court system has particular and broadly acknowledged expertise in civil rights matters. The federal forum is especially appropriate given Section 1983's design to address situations where state remedies may be inadequate. Section 1983 was literally created to ensure federal court access for

13

racial discrimination claims when state systems fail to provide adequate protection.

Appellant's medical conditions (PTSD and interstitial cystitis) having higher prevalence in the Hispanic/Latinx community naturally suggests the likelihood of (a) discriminatory policies that disproportionately affect Latinx individuals with these conditions, (b) stereotyping and bias based on assumptions about Latinx individuals with certain disabilities, and (c) failure to accommodate that reflects both racial and disability bias.

As here, discrimination can target multiple protected characteristics simultaneously. Courts increasingly recognize that disability discrimination can intersect with racial discrimination, especially when certain conditions disproportionately affect specific racial/ethnic communities. Section 1983 serves as the enforcement mechanism for ADA violations by state and local governments. Appellant's disabilities were used as a pretext for racial discrimination, or alternatively Appellant was discriminated against because of the intersection of her race and disabilities. Such a matter fits well within Section 1983's scope.

Here, the discrimination is not just about race **or** disability in isolation, but about the intersection of being a Latinx person with specific disabilities that are stigmatized or misunderstood, particularly within the Latinx community. This type of intersectional civil rights claim is exactly what Section 1983 was designed to address in federal court.

## CONCLUSION

Litigating this matter in federal court is consistent with Section 1983's original federalism purpose - providing federal oversight when state systems may be inadequate to address racial discrimination. The law was specifically designed to provide a federal remedy when state governments failed to protect civil rights.

The Second Circuit's reasoning in *Vega is* persuasive and provides a strong foundation to conclude the equivalent basis exception under *Rachel* is satisfied as to second prong requirement under § 1443(1), and the disability-related intersectional argument adds additional complexity that supports federal jurisdiction.

WHEREFORE, Appellant Marissa Girard hereby requests that the Court acknowledge its jurisdictional mandate to hear this appeal under 28 U.S.C. § 1443(1) and set a briefing schedule hereunder.

Dated: June 1, 2025

Respectfully Submitted,

for Appellant Marissa Girard:

/s/ Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
Email: marissadakis@gmail.com
Tel: 773-425-4393

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that this brief complies with the type-volume limitation for proportionally spaced briefs. It contains 3,802 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

In accordance with 7th Cir. R. 31(e)(1), I certify that a digital version of the foregoing Brief was generated by printing to PDF format from the original word processing file and not by scanning paper documents, and has been furnished to the court.

In accordance with 7th Cir. R. 30(d), I certify that all documents required under 7th Cir. R. 30(a) and (b) are included in the Brief and Circuit Rule 30(a) Appendix of Defendant-Appellant.

Dated this 1st day of June, 2025.

/s/ Marissa Girard

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 1, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by mailing it to: Everett McKinley Dirksen United States Courthouse, Room 2722, 219 S. Dearborn Street, Chicago, IL 60604.

Additionally, I have served the foregoing on all counsel of record via email and on Kenton Girard, who is pro se hereunder, also via email.

**Dated: June 1, 2025**

/s/ Marissa Girard
Marissa Girard, Defendant-Appellant
965 Forestway Drive
Glencoe, IL 60022
marissadakis@gmail.com
(773) 425-4393

service list

1.  Kenton Girard (Defendant-Appellee in pro se)
    965 Forestway Drive
    Glencoe, IL 60022
    kg5252@yahoo.com

2.  Karen V. Paige, Esq. (for Plaintiff-Appellee Jane F. Girard)
    Beermann LLP
    161 North Clark Street, Suite 3000
    Chicago, Illinois 60601

3.  Jeffrey R. Kivetz, Esq. (for TP Defendant Ryan McEnerney)
    The Sotos Law Firm, P.C.
    141 W. Jackson Boulevard, Suite 1240A
    Chicago, Illinois 60604

4.  Kimberly Blair (for TP Defendants Karen V. Paige and Candace L. Meyers)
    Wilson Elser
    55 W. Monroe, Suite 3800
    Chicago, IL 60603
    kimberly.blair@wilsonelser.com

5.  John Duffy, Esq. (for TP Defendant Vanessa Hammer)
    Swanson, Martin & Bell LLP
    330 N. Wabash, Suite 3300
    Chicago, Illinois 60611
    jduffy@smbtrials.com

## TABLE OF CONTENTS FOR SHORT APPENDIX

FAC under *Girard v. Fernandez*, 1:25-cv-00136, N. D. Illinois            A1 (1-74)

Notice of Removal with Exhibits (D. 1)            A2 (1-111)

Transcript from court date on May 6 2025 (D. 34)            A3 (1-10)

Transcript from court date on May 15 2025 (D. 36)            A4 (1-14)

Order as to Remand from May 6 2025 (D. 16)            A5 (1)

Notice of Cause as to Beermann LLP from May 5 2025 (D. 15)            A6 (1-9)

BC

FILED
3/10/2025

MEN

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| MARISSA A. GIRARD, | |
| Plaintiff, | Civil Action No. 1:25-cv-00136 |
| v. | District Judge Andrea R. Wood |
| JUDGE ROSSANA P. FERNANDEZ, | Magistrate Maria Valdez |
| JUDGE REGINA A. SCANNICCHIO, | |
| JUDGE GREGORY E. AHERN, | <u>First Amended Complaint and Jury Demand</u> |
| JUDGE WILLIAM YU, | |
| ELENA S. DEMOS JD, | |
| VINCENT D. WALLER JD, | |
| ADAM P. MONREAL ESQ, | |
| EBONY CHEERS, | |
| JANE F. GIRARD, | |
| ENRICO J. MIRABELLI ESQ, and | |
| MATTHEW D. ELSTER ESQ, | |
| Defendants. | |

Plaintiffs Marissa Girard, in pro se, for her First Amended Complaint against Defendants **hereby requests a trial by jury** pursuant to FRCP 38(b) and alleges as follows:

### BACKGROUND STATEMENT

1. On or around Fall 2022, Jane F. Girard – a proven sex abuser of her children – commenced an inexplicable quest to strip custody of her twin biological daughters from their father Kenton Girard under Cook County Case No. 2015D9633 ("Custody Proceedings"). Plaintiff's only connection to that matter devolves from the fact that she is Kenton Girard's wife.

2. Customarily, such proceedings do not implead successive spouses or non-parents as parties, however here Jane F. Girard and her attorneys at Beermann LLP vexatiously named

Plaintiff as a third party respondent under the Custody Proceedings in order to gain leverage over Kenton Girard by illicitly imposing stress, trauma, anxiety, distress, inconvenience and significant cost and expense on Plaintiff.

3.     The vexatious naming of Plaintiff as a third party respondent under the Custody Proceedings was masterminded by Jane F. Girard and constitutes a grave concern given Plaintiff's extremely serious mental and physical disabilities at play. To wit, Plaintiff suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home in part due to the constant need to urinate, particularly when exacerbated by stress or when the condition expresses in the format of intense and incapacitating vaginal pain. She also suffers from PTSD, which is aggravated by environmental stress and anxiety and in turn worsens her physical symptoms under interstitial cystitis.

4.     Jane F. Girard and her attorneys at Beermann LLP have launched an all-out offensive on Plaintiff using the court system, involving excessive and sham motions and papers. The abuse of the judicial proceeding to harass Plaintiff has included *inter alia* seeking judicial sanctions and jail time against Plaintiff for her apparent failure to enforce a gag order on Kenton Girard's daughters, making a mockery of her medically documented disabilities which require accommodation under the Americans with Disabilities Act of 1990 ("ADA"), playing cat-and-mouse over the scheduling and the format of her in-person deposition – devoid of any intended probative value for crafting a custody order as to Kenton and Jane's children, the making of off-channel threats against her well-being and her livelihood, and most recently goading Hons. Rossana P. Fernandez and Gregory E. Ahern to trample her rights.

5.     Jane F. Girard's attorneys at Beermann LLP apparently have a very friendly audience in the family courts of Cook County, wherein Plaintiff has been the victim of a

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

frivolous, abusive and vexatious circus of legal proceedings presided by a revolving door of eight different judicial officers, most recently Hons. Rossana P. Fernandez[1] and Gregory Ahern. Meanwhile, the Presiding Judge of the Domestic Relations Division Regina A. Scannicchio – ostensibly occupying a supervisory posture as to all family court proceedings in Cook County and the only judicial officer who has continuously overseen the Custody Proceedings from the beginning – has turned a blind eye to the corrupted and unconscionably improper proceedings.

6.      There is notably pending litigation[2] in this District ("Bribery Lawsuit") which explores accusations of bribery against various judicial officers – including Defendant Scannicchio, who is described as "owned by Beermann LLP" – connected with the Custody Proceedings. That Bribery Lawsuit also seeks relief *inter alia* from civil RICO violations by Jane F. Girard's counsel Enrico Mirabelli and his law firm Beermann LLP.

7.      The reprobate cast of characters responsible for Plaintiff's mistreatment under the Custody Proceedings also includes a Cook County lifer who has previously been the target of criminal investigation, namely Hon. Scannicchios's Chief Deputy Clerk Adam P. Monreal Esq., who has administrative duties over the entire Domestic Relations Division of Cook County.

8.      Mr. Monreal was forced to resign from the Illinois Prisoner Review Board in 2016 after former Governor Bruce Rauner discovered that he had under-reported his state salary in a bankruptcy proceeding which was closed in August 2011. At that time, Monreal was chairman of the state parole board, appointed to that position by former Governor Pat Quinn in 2010.

9.      Defendant Monreal has passively watched from the sidelines – refusing to answer innumerable email messages and telephone calls – as Plaintiff's rights have been eviscerated.

---

[1] Judge Rossana P. Fernandez has recused herself pending the adjudication of a Substitution of Judge for Cause, brought against her by Kenton Girard under the authority of 735 ILCS 5/2-1001(a)(3). Two previous Hons., William S. Boyd and Renee G. Goldfarb, resigned under suspicion of extrajudicial wrongdoing including bribery.
[2] See *Kenton Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois. The operative pleading is filed under Dkt[73] in that proceeding.

Hon. Scannicchio also relies on a number of wildly compromised judicial officers in Domestic Relations when a case is moved to Calendar 01 pursuant to a petition for substitution of judge, following an order of recusation or other circumstances wherein there is a prospect of having to change the judicial officer.

10.    One of these compromised judges is Defendant Gregory E. Ahern Jr, who has recently presided over the Custody Proceedings. Despite his Cook County salary of $260,000 resides in a palatial six-bed six-bath 6,000 square foot home in the most expensive zip code in Illinois at 465 Sunset Road in Winnetka. That residence is currently worth ~$3.5 million (per Zillow) and incurs an annual property tax bill of ~$45,000.

11.    Prior to living in Winnetka, Hon. Ahern resided at 1815 N. Honore Street in Chicago, which residence he purchased for $440,000 in 2002. Once he was appointed by the Supreme Court of Illinois to fill a vacancy as an Associate Judge on January 3 2013, Hon. Ahern's financial picture dramatically improved wherein upon information and belief he cut a backroom deal with Beermann LLP. The deal was consummated in a meeting with attorney John M. D'Arco during an in-person meeting at the LaGrange Country Club located at 620 S Brainard Ave, La Grange, IL 60525 during the summer of 2014. Under the deal, Judge Ahern agreed to accept a regular flow of cash bribes to render favorable decisions for the clients of Beermann LLP in the proceedings he presided over. Upon information and belief, he makes in excess of $25,000 per month in undeclared bribery income[3] from Beermann LLP.

12.    On September 15 2017, Hon. Ahern closed on his purchase of 465 Sunset Road in Winnetka (PIN # 05-21-409-010-0000) with the deed[4] being recorded five days later and

---

[3] Upon information and belief, Hon. Ahern is moreover a "gateway judge" – like Judge William S. Boyd – who is trusted to direct funds to bribe other Hons. within the Domestic Relations Division. See the amended pleading at Dkt[73] at ¶¶ 37, 38, 40, 89 under the Bribery Lawsuit.

[4] The ownership interest in the home is shared equally by the Gregory E. Ahern Jr. Trust Dated March 23 2011 and the Lisa Nolan Ahern Trust Dated March 23 2011.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

reflecting a purchase price of $2,165,000. To finance that purchase, Hon. Ahern got a loan for $1,515,418 with an interest rate of approximately 3.9% and he tendered $650,000 in cash to close[5]. Monthly principal and interest alone are ~ $7,200 per month. Homeowner's insurance for a replacement value of $2,165,000 would likely be ~$12,000 per year based on data from State Farm. Adding in the annual tax bill of ~$45,000 brings the monthly obligation to ~ $12,000.

13.     Utilities (water, gas, electricity, trash, internet) probably imply about $1,200 of additional monthly costs. Upkeep and maintenance is usually estimated at $6.00 per square foot per year. In this case another $36,000 per year. Therefore the monthly payment obligations on the home elevate to ~$16,000. Add in the looming college expenses for Ahern's children and the staggering monthly costs cast a long shadow over Ahern's $260,000 salary from Cook County.

14.     Recently, Hon. Ahern was taken off the bench by the Supreme Court of Illinois, **for exhibiting unacceptable racist bias** in postings on social media. On September 12 2023, the Executive Committee of Cook County vacated a previous order restricting Judge Gregory E. Ahern Jr.'s duties to the office of the Presiding Judge of the First Municipal District under Special Order 2023-121, dated August 25, 2023.

15.     The original order was issued after it was reported on August 15 2023 that Judge Ahern had used social media to express support for comments that could reasonably be interpreted as suggesting bias or prejudice based on race, gender, gender identity, or sexual orientation. Such expressions were seen to potentially undermine his judicial independence, integrity, or impartiality.

16.     It is deeply ironic that Judge Ahern – **the only judicial officer in the current Domestic Relations roster to have been suspended for misconduct out of several dozen**

---

[5] Upon information and belief, Hon. Ahern saved significantly from his undeclared bribery income from Beermann LLP during 2013-2017, which allowed him to save up $650,000 for the down payment on his Winnetka mansion. Notably, he did not have any proceeds from the sale of his previous residence at 1815 N. Honore Street in Chicago because that property did not sell until approximately one year after he purchased the Winnetka mansion.

**judicial officers** – has been hand-picked by Hon. Scannicchio to preside over the Custody Proceedings in the wake of Hon. Fernandez's recusal for exhibiting unacceptable bias and inexplicable antagonism against court watchers and Plaintiff.

17.     However, the Judicial Inquiry Board informed the court on September 11 2023 that it had concluded its investigation into the allegations against Judge Ahern. The Board reported that no further action was warranted and the matters were now closed.

18.     As a result, the Executive Committee issued Special Order 2023-126 on September 12 2023. This order vacated the previous restrictions and reassigned Judge Ahern to the Domestic Relations Division, effectively returning him to his regular judicial duties.

19.     Upon information and belief, attorney John M. D'Arco from Beermann LLP was instrumental in obtaining the reprieve from the Supreme Court of Illinois for Judge Ahern, wherein he relied on his federal felon father's deep relationship with federal felon Ed Burke[6] to obtain the favor from the Supreme Court of Illinois. Indeed, Ed Burke's wife Anne M. Burke served as a justice of the Supreme Court of Illinois until she resigned from that position on November 30 2022. Ironically after the latest intervention by John M. D'Arco, Hon. Ahern is now even more beholden to Beermann LLP and Plaintiff is hostage to these fixed proceedings.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal law. This Court also has jurisdiction under 28 U.S.C. §1343(a)(3) to redress deprivations "under color of any state law, statute,

---

[6] As is explored in much more detail in the Bribery Lawsuit, pending before District Judge Pallmeyer, John M. D'Arco's father John A. D'Arco Jr (also a former member of the Illinois Bar) represented the interests of the Chicago Outfit in his position as state senator wherein he exercised significant influence over state matters until he was convicted under consecutive indictments for bribery in the Northern District of Illinois and in addition to being remanded to prison was ordered to never again work in the employ of any state in our country in any capacity whatsoever. It is well known, furthermore, that beyond his wife being a Supreme Court justice in our state, Ed Burke's corrupt hand was deeply involved in the emplacement for appointment of many Hons. in Cook County over the years in what can only be described as a long history of extremely transparent and ostentatious pay-to-play schemes. In true Chicago tradition, Ed Burke capped his long political career with a criminal conviction in this district for *inter alia* racketeering and extortion.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States."

21.     The Court has authority to grant injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's inherent equitable powers.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants work and reside in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

23.     Venue is further proper in this district as to those claims which do not specifically raise federal and constitutional questions under 28 U.S.C. §1367(a).

24.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

25.     **Plaintiff Marissa A. Girard** is a longtime resident of Glencoe  and the wife of Kenton Girard, whose ex-wife Jane F. Girard initiated the Custody Proceeding.

26.     **Defendant Rossana P. Fernandez** is a circuit judge in the Domestic Relations Division who has recently presided over the Custody Proceeding. She is being sued in her personal capacity.

27.     **Defendant Regina A. Scannicchio** is the presiding judge over the Domestic Relations Division of Cook County. She is being sued in her personal capacity.

28.     **Defendant Gregory E. Ahern** is an associate judge in the Domestic Relations Division who has recently presided over the Custody Proceedings. He is being sued in his personal capacity.

29.     **Defendant William Yu** is an associate judge in the Domestic Relations Division who took over the Custody Proceedings after Hon. Fernandez recused herself from the proceedings. He is being sued in his personal capacity.

30.     **Defendant Elena S. Demos JD** is the Cook County Court ADA coordinator, wherein she reports to the Office of the Chief Judge Timothy Evans. She is being sued in her personal capacity.

31.     **Defendant Vincent D. Waller JD** is an HR coordinator for the Cook County Court. He is being sued in his personal capacity.

32.     **Defendant Adam P. Monreal Esq** is the Deputy Chief Clerk for Presiding Hon. Scannicchio. He is being sued in his personal capacity.

33.     **Defendant Ebony Cheers** is the courtroom coordinator for Hon. Fernandez and is being sued in personal capacity.

34.     **Defendant Jane F. Girard** is the ex-wife of Kenton Girard, in other words the opposing party in the Custody Proceedings.

35.     **Defendant Enrico J. Mirabelli** is an attorney at Beermann LLP who is one of a few attorneys actively involved on behalf of Jane F. Girard under the Custody Proceedings. He is being sued in his personal capacity.

36.     **Defendant Matthew D. Elster** is an attorney at Beermann LLP who is one of a few attorneys actively involved on behalf of Jane F. Girard under the Custody Proceedings. He is being sued in his personal capacity.

<u>The bench in Domestic Relations is full of compromised judicial officers.</u>

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

37. The stench is not limited to Hons. Fernandez, Scannicchio, Ahern, Yu and Johnson. An instructive example is Associate Judge Myron F. Mackoff, the son of retired Cook County Circuit Judge Benjamin Mackoff and who was appointed to the bench after having previously lost in a primary election. He was facing financial ruin in 2013-2014 wherein the landlord filed an eviction proceeding against his law firm and he was sued for foreclosure, which lawsuit he litigated for three years. Then Myron relied on his father's political clout to get appointed to the bench, with the aim of getting his hands on the accompanying $260,000 salary which would shore up his disastrous personal finances. Myron – like many others – was appointed to the bench after filling a temporary vacancy and then losing in the primary election.

38. Associate Judge Lori Rosen was a longtime Cook County prosecutor and upon information and belief a long-time romantic interest of Judge Gregory Ahern, during the period of time in which he has been married to his wife Lisa Nolan Ahern. Upon information and belief, Judge Ahern used his political clout to get Ms. Rosen appointed to the bench in 2018 – a few years after his own appointment.

39. Judge David E. Haracz is an associate judge of the Domestic Relations Division of the Circuit Court of Cook County. He was elected to the bench in 2005 and re-appointed in 2011, 2015, and 2019. His tenure is beset with allegations that he has a long record of wreaking tremendous destruction and damage on families and children due to his relentless illegal orders that transfer family funds to his acquaintances and prolong cases so as to enrich court appointed child representatives and attorneys.

40. Judge Michael Forti is known for incarcerating Steve Fanady in his divorce from Pamela Harnack *for going on three years*. In that matter, Beermann LLP attorney John M. D'Arco's former law firm Lake Toback represents Ms. Harnack.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

41. As recently as 2011, the Chicago Tribune reported the surest way to land an appointment to the bench in Cook County was to be recommended to former alderman Ed Burke by Michael Madigan (Speaker of the Illinois House from 1983 to 2021, with the exception of 1995–1997 when Republicans took control of the Illinois House). Ed Burke headed the Cook County Democratic committee tasked with picking judicial candidates for decades. And the Chicago Tribune further noted that one of the surest ways to receive a nod from Madigan was to donate to the campaign of his daughter, former Illinois Attorney General Lisa Madigan.

42. From 2012-2018, campaign finance records show that Michael Forti, who had gone on to work as chief counsel for the Illinois Department of Transportation, donated thousands to campaign funds run by Ed Burke and other powerful Chicago Democrats.

43. Other Domestic Relations judges recommended by Michael Madigan to Ed Burke include Judge James A. Shapiro, Judge Matthew Link, Judge Edward Arce and Presiding Judge Regina Scannicchio. All of these Hons. were delivered to their positions courtesy of Ed Burke and are moreover completely compromised.

44. Judge Michael Forti is not the only Domestic Relations judge to have come under scrutiny implementing debtor's prisons under findings of indirect civil contempt of court, for failing to pay often millions of dollars of "domestic support obligations," typically consisting largely of attorney fees racked up by the other spouse.

45. In nearly all instances, the incarcerations in Cook County Jail have come despite repeated assertions by the men that they do not have the money the courts believe they have, and despite pleas from the men that the jailing jeopardizes their ability to earn money to pay the support the court has ordered them to pay.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

46.     One such example is Judge Abbey Romanek, who famously sent River Forest real estate developer Frank "Marty" Paris to debtor's prison on three separate occasions during the divorce proceedings with his wife. Journalists from near and far decried Judge Romanek's embarrassing inability to achieve even a basic understanding of the balance sheet of a corporation and confusing its assets for the disposable income of Mr. Paris.

47.     In *IRMO Roseanne Tellez and David A. Cerda*, 2024 IL App (1st) 241866, the Illinois Appellate Court ruled on December 20 2024 that Hon. Scannicchio abused her discretion by jailing David A. Cerda for civil contempt with a cash bail set at $248,648.73. In that matter, Hon. Scannicchio – who is, *frighteningly*, the current presiding judge of the Domestic Relations Division of Cook County – recklessly disregarded the requirement to assure that a civil contemnor has the ability to pay the purge remedy. Mr. Cerda nonetheless was illegally jailed for three months all the same.

48.     On May 24 2024, Dr Kimberly Lopez was facing jail for indirect civil contempt in the courtroom of Judge Bernadette Barrett in her family law case 2011D579053 in the Fifth Municipal District in Bridgeview. Similar to the rebuke against Judge Regina Scannicchio, the Illinois Appellate Court overruled Judge Bernadette Barrett.

49.     Given the enormous critical mass of corrupted judicial officers in Domestic Relations, it is wholly unsurprising that the courts and their agents are also routinely weaponized against whistleblowers. In 2021, deceased attorney Edwin "Ted" Bush III famously came under disciplinary proceedings from the ARDC amid his encounter with Cook County's family courts, accusing Hons. and guardians ad litem of misconduct over their handling of the dispute between him and his ex-wife over custody of their three children.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

50. In his responsive pleadings under *In the Matter of Edwin Franklin Bush III*, Commission No. 2021PR00059, ARDC Case No. 6322150, filed on August 27 2021 at p. 14, Mr. Bush notably compared the conduct of the judges, lawyers and GALs involved in divorce proceedings to child trafficking: "Domestic relations courts and their surrounding cottage industries are predatory and resemble organized crime—seizing children from fit parents and then selling them back with unnecessary and unwanted 'services,'" Bush wrote. "That is none other than child trafficking."

51. Unfortunately, pancreatic cancer took the life of Mr. Bush in his mid-40s and he did not get the opportunity to vindicate his good name which was tarnished by the corrupt instrumentality of the ARDC as puppeteered by the family law community of Cook County. However, his efforts to expose the systemic corruption in the Domestic Relations Division have scored a profound impact on the court reform community in Cook County and beyond, including under the landmark ruling under *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021).

52. Domestic Relations Judge Ellen L. Flannigan is a piece of work. In a family law proceeding *IRMO Szymulanski*, Cook County Case No. 2021D008999, Judge Flannigan allowed Beermann LLP to propound a dozen separate excessive and abusive motions for fees totalling in excess of $600,000 and allowed Beermann LLP to gin up criminal charges against Mr. Szymulanski to see him arrested and the charges subsequently dropped for lack of evidence.

53. The Robing Room reviews of Cook County Domestic Relations Judge Ellen L. Flannigan are very typical for the Domestic Relations Hons.. Those reviews complain that "[her] prejudices are so obvious it only emboldens the side she favors to ask for more and be less likely to compromise. She cares not about equal protection, precedent or due process. When she takes a

side she advocates for that side… [harbors] bias against fathers, minorities … calls good people 'gangbangers', indiscriminately drug tests minorities, and breaks families up."

54.    It is therefore no surprise that the Cook County court system routinely ranks low among the various venues across our land. Domestic Relations is reputed as a judicial hellhole.

**The Custody Proceedings have exacted a heavy toll on Plaintiff.**

55.    The unreasonably lengthy nature of the Custody Proceedings – now going on three years – has caused an outrageous imposition on Plaintiff's life and work. Plaintiff has had to turn away numerous clientele from her therapy and consulting practice, due to being overwhelmed by time commitments to attend to the Custody Proceedings and to attend to her aggravated physical conditions owing to the stress caused thereby, wherein Plaintiff has already been suffering from interstitial cystitis and PTSD (both of which are qualifying disabilities under the ADA) and those conditions have become more acute and debilitating as Jane F. Girard and her attorneys refuse to relent from their sanctionable and illegal onslaught of court filings.

56.    Most recently, on October 16 2024 Plaintiff exercised her statutory right to call for removal of the presiding judicial officer du jour, namely Hon. Fernandez. She duly and properly filed her motion, at which point under the plain language of 735 ILCS 5/2-1001(a)(2) Hon. Fernandez was by operation of the statute removed from the Custody Proceedings.

57.    In open court at a court date in the Custody Proceedings on October 18 2024, attending to the first order of business, **Hon. Fernandez granted Plaintiff's petition**. However, with the goading of Jane F. Girard via her attorneys, Hon. Fernandez subsequently defiantly changed her ruling from "granted" to "stricken" and proceeded to issue numerous orders and directives under a full-blown Case Management Conference on October 18 2024. Doubling down, she issued further orders during a court date on December 6 2024, before recusing herself

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

from the proceedings on December 9 2024.

58.     By commanding the bench when Hon. Fernandez had been operatively removed – **indeed she had divested herself of jurisdiction by pronouncement in open court** – from the Custody Proceedings, Hon. Fernandez has made herself amenable to suit.

The Defendants have desecrated the First Amendment rights of Plaintiff.

59.     The October 18 2024 court date was not a closed proceeding, it was attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public.

60.     Plaintiff, as named third party respondent under the Custody Proceedings, presided jointly by Defendants Fernandez and Ahern, was set to attend the October 18 2024 court date to present her petition for substitution of judge as of right directed at Hon. Fernandez.

61.     Plaintiff was to appear via Zoom, as were a number of litigants, attorneys, and other observers. However, Plaintiff was never allowed access to the courtroom proceeding from the Zoom "waiting room". Hon. Fernandez and Ahern's courtroom coordinator Ebony Cheers personally controlled the Zoom "waiting room" wherein she refused to admit Plaintiff to the proceedings at the behest of Hons. Fernandez and Ahern.

62.     When the matter was called, Hons. Fernandez and Ahern refused to allow courtroom coordinator Ebony Cheers to admit Plaintiff from the Zoom "waiting room". Plaintiff was not permitted to present her petition or to otherwise participate or observe in the court date on October 18 2024. Moreover, at no point in time did the Court indicate that the proceedings were closed to the public. Instead, Hons. Fernandez and Ahern capriciously and inexplicably decided that Plaintiff had no business in her court and refused to admit her.

63. The Defendants failed to ensure that the Circuit Court of Cook County, Illinois was accessible to Plaintiff because *inter alia* it failed to ensure that Plaintiff was admitted to the October 18 2024 proceeding controlled by Hons. Fernandez, Ahern and Scannicchio.

64. Plaintiff has been injured as a result of the Defendants' conduct and has sustained humiliation and emotional distress, has suffered lost earnings under her private therapy and counseling practice, has suffered the indignity of discrimination, which has manifested in emotional distress, injury to her earning capacity, disrupted her personal life, and caused the loss of enjoyment of the ordinary pleasures of life.

65. Absent action protecting the rights of free access to courtrooms for the public, the judicial system's credibility will be unnecessarily tarnished by the actions of the Defendants. As a result of Defendants' refusal to allow Zoom access to court to Plaintiff, she has been denied court access and court services provided to non-disabled persons and faces risks and burdens not experienced by non-disabled persons, including:

a. Fear of dire health consequences, and possibly death.

b. Having to rely on advocacy for her interests *outside of the courtroom* from which she has been excluded.

c. Increased anxiety, frustration, and embarrassment, having been denied a voice in the courtroom proceedings under which she is a named third party respondent.

The protections of the ADA are relevant here.

66. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, et seq. Plaintiff is also a "qualified individual with a disability" as defined in 29 U.S.C. § 794 for application of the Rehabilitation Act of 1973. The Rehabilitation Act and its implementing regulations require that no qualified individual, solely by reason of her actual or perceived

**15** A1                    *Marissa Girard v. Rossana P. Fernandez et al. – FAC*

disability, be subjected to discrimination under any program or activity receiving Federal financial assistance.

67.     The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

68.     In today's tech-savvy world, Zoom is a widely used, reliable, scalable and proven technology for enabling remote court attendance over the Internet. The Zoom application may be utilized on mobile devices and home computer systems and is widely supported by various operating systems and protocols. As of April 2020, Zoom video conferencing software enjoyed use by an average of three hundred million (300,000,000) conference participants per day[7].

69.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II further prohibits the unnecessary segregation of persons with disabilities. *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999).

70.     The chief purpose of the ADA is to end discrimination against, and the isolation of, individuals with disabilities. As Congress stated in the findings and purpose section of the ADA: "[H]istorically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress further found that discrimination against individuals with disabilities persisted in education and access to public services, and that such individuals faced various forms of

---

[7] See market research about Zoom in which monthly usage statistics were reported.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

discrimination, including "segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §§ 12101(a)(3), (a)(5).

71.     Title II of the ADA therefore prohibits discrimination on the basis of disability by public entities as codified under 42 U.S.C. § 12132.  A "public entity" is any State or local government and any department, agency, or other instrumentality of a State or local government, and covers all services, programs, and activities provided or made available by public entities, including through contractual, licensing, or other arrangements.  *Id.* §§ 12131(1), 12132; 28 C.F.R. § 35.130.  Accordingly, Title II's coverage extends to the State and its agencies.

72.     Congress directed the Attorney General to issue regulations implementing Title II of the ADA.  *See* 42 U.S.C. § 12134.  The Title II regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).  "The most integrated setting" means a setting that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible . . "  Id. pt. 35, app. B at 690.

73.     Title II's regulations further prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination, including unnecessary segregation, or "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." *Id.* § 35.130(b)(3).

74.     The Supreme Court has held that Title II prohibits the unjustified segregation of individuals with disabilities in the provision of public services.  *See Olmstead*, 527 U.S. at 597. Unjustified isolation of persons with disabilities who, with reasonable modifications, could participate in an integrated setting is unlawful discrimination because (1) segregation

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

"perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life," and (2) segregation "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 600-01.

75.     Title II's regulations also address discrimination in the form of inequality in services, programs, or activities. Public entities may not (1) "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit or service;" (2) "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others;" (3) "[p]rovide a qualified individual with a disability with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;" or (4) "[o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit or service." *Id.* § 35.130(b)(1)(i)-(iii), (vii).

76.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. Further, Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.130(a).

77.     People who suffer from PTSD or interstitial cystitis - such as Plaintiff are qualified individuals with disabilities under the ADA as amended in 2008. Plaintiff is, and at all times relevant hereto has been, suffering from PTSD and interstitial cystitis, therefore, a member of a protected class under the ADA and the regulations implementing the ADA.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

78.     Section 504 of the Rehabilitation Act of 1973 prohibits a "qualified individual with a disability," solely by reason of her or his disability, from being "denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

79.     The Cook County Court System is a recipient of federal funds. Furthermore, Zoom accommodation of Plaintiff would be in keeping with the trend of virtually all proceedings in Cook County wherein Zoom participation is allowed (and moreover encouraged).

80.     While the ADA does not require the court system to take any action that would fundamentally alter the nature of court programs, services, or activities, or that would impose an undue financial or administrative burden on the courts, Title II of the ADA does prohibit discrimination on the basis of disability in state and local government programs and services. Title II incorporates the remedies available under the analogous federal law, Section 504 of the Rehabilitation Act, which prohibits disability discrimination by federally funded programs.

81.     The Defendants have hereby discriminated against persons with disabilities under their manifest failure to comply with the ADA. Hereunder, Plaintiff was denied the ability to participate in court dates under the Custody Proceedings viz Zoom, wherein only Zoom offers a tried and tested and reliable manner of participating which does not threaten aggravation of her pre-existing mental and physical conditions which have been fully diagnosed and documented by years of treatment under the care of her physician.

82.     Plaintiff has been excluded from participating and attending court dates in the Custody Proceedings via the actions and decisions of (a) Hons. Fernandez and Ahern and Courtroom Coordinator Ebony Cheers, (b) the Court Disability Coordinator Elena Demos and Vincent D. Waller, and (c) through the Domestic Relations leadership under the supervision of

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

Hon. Scannicchio and via her deputy Adam P. Monreal Esq.

83.     Plaintiff here seeks *inter alia* a court order from this District Court directing the county to comply with the ADA. Through this lawsuit, she demands that Cook County afford individuals with disabilities an opportunity to participate in the county's court proceedings that is equal to that provided to nondisabled individuals.

84.     All citizens, including those with disabilities, should have an equal opportunity to observe (and, when they are parties, to participate) in the judicial proceedings in our land. Since the onset of the Covid-19 pandemic, virtually all state courts in our land have adopted the pattern and practice of allowing observation of and participation in court dates via Zoom video conferencing. Zoom has become the normative medium for conducting state judicial proceedings in fact. Even the state courts which are not Zoom-only are typically Zoom-enabled, in a so-called "hybrid" setup wherein all are welcomed to participate in person or via Zoom[8].

85.     Similarly, most of the federal courts utilize teleconferences for conducting the vast majority of court dates. Here in the Northern District of Illinois, teleconferences are normative. Gone are the days that the Dirksen Building was over-stuffed with attorneys, parties and observers. On a random weekday at the Dirksen Building, a typical courtroom of a District Judge would typically be attended by a courtroom deputy or two. Parties, attorneys and Hons. are very typically not physically present in the courtroom.

86.     Therefore, disallowing the use of Zoom – especially when one of the parties has disabilities flatly preventing in-person court attendance – implicates material questions about compliance with Title II of the ADA.

---

[8] One great example is provided by the courtroom of (elected, not appointed) Circuit Judge Catherine A. Schneider from the Law Division of Cook County. Judge Schneider is well perceived as one of the most outstanding judges in Cook County in that she is an exemplary lifelong learner and student of the law, dedicated always to dispassionate application of the law and always with unflagging integrity. Judge Schneider welcomes all litigants in her courtroom to attend via Zoom or in person.

87. The timing of the capricious ban by Hons. Fernandez and Ahern of Zoom attendance (as ratified by Hon. Scannicchio and her Chief Deputy Clerk Adam Monreal) also appears retaliatory in response to the August 2024 filing of the Bribery Lawsuit under which lawsuit Kenton Girard seeks relief *inter alia* for violations of his civil rights by Cook County Hons. William S. Boyd and Renee G. Goldfarb and for RICO violations by opposing counsel Beermann LLP involving predicate acts of judicial bribery.

Defendants ignore the stay of proceedings and persist in their pugilistic approach.

88. Effective on November 22 2024, when Kenton Girard filed a petition for substitution of judge for cause directed at Hon. Fernandez, the Custody Proceedings were stayed pursuant to the operation of 735 ILCS 5/2-1001(a)(3), under which Hon. Fernandez was judicially sidelined and the proceedings were paused in the absence of a judicial officer.

89. The proceedings were also stayed pursuant to Cook County rules at the point at which Plaintiff timely submitted her appeal of the determination of ADA Elena Demos to ADA Vincent D. Waller. Such stay lasted until January 31 2025 when the ADA appeal was ultimately resolved by another attorney, Camela Gardner as explored *infra*.

90. In spite of this effective double stay, in the morning of December 20 2024, Defendant Karen Paige at the direction of Jane F. Girard and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern noticed Plaintiff for a deposition to take place at 1:00 pm on that very day *in person* in Room 1905 of the Richard J. Daley Center.

91. On December 17 2024, Attorney Karen Paige at the direction of Jane F. Girard and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern noticed Kenton Girard for a deposition to take place at 4:00 pm also in Room 1905.

92. On December 30 2024, Attorney Karen Paige at the direction of Jane F. Girard

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

and Enrico J. Mirabelli and with the blessing and approval of Hons. Fernandez and Ahern propounded a motion to compel the depositions of Plaintiff and her husband Kenton Girard, in their typical pugilistic fashion seeking sanctions[9] for Plaintiff's failure to attend the deposition.

93.     On January 3 2025, Attorney Candace Meyers at the direction of Jane F. Girard and Enrico J. Mirabelli penned an ex parte letter to Hon. Ahern – who has been hand-picked by Defendant Scannicchio  to preside over the Custody Proceedings in the wake of Hon. Fernandez's recusal for cause – intentionally not copying third party defendants in that matter namely Detective Ryan McEnerney, Karen Paige and Vanessa Hammer.

94.     Such ex parte communication is strictly prohibited under Cook County Rule 17.1, and Hon. Ahern is further liable for failing to rebuke Attorney Candace Meyers on the record. Because Attorney Meyers has additionally failed to serve a written summary of the contents of her ex parte communication with Hon. Ahern on all parties within two (2) days of propounding her illicit missive, she stands further in breach of Cook County Rule 17.2(b).

95.     The ostentatious violations by Beermann LLP and its attorneys – all under the direction and supervision of Jane F. Girard and Enrico J. Mirabelli – continue to mount. On January 3 2025, Attorney Elster of Beermann LLP penned an 18-page-long (not counting exhibits) opposition brief[10] to Kenton Girard's petition seeking Hon. Fernandez's removal. Under Ill. S. Ct. R. 182(a), Kenton Girard is now duly entitled to twenty-one (21) days to fashion a reply brief, thereby making his reply brief due on January 24 2025. For this reason, the hearing

---

[9] The so-called **"Beermann Motion for Fees Playbook"** is explored in detail under the amended complaint Dkt[73] under the Bribery Lawsuit in this District. By way of a high-level summary, Beermann LLP and its attorneys are well-known and well-practiced as to propounding excessive and improper motions for attorneys fees in virtually all family court proceedings in which they handle. Kenton Girard is seeking damages under the civil RICO statute, in which he exposes a pattern of predicate acts including *inter alia* violations of the Hobbs Act for the extortionate practices under which Beermann LLP seeks excessive and unreasonable attorneys fees as part of its established modus operandi in the Domestic Relations Division in Cook County.

[10] Incidentally, under the Cook County Circuit Court Rules, briefs must abide by 15 page limits.

on Kenton Girard's petition to remove Hon. Fernandez cannot take place.

96.   As to the contents of that opposition brief, the highlight appears at p. 14: "All of Kenton's arguments about the court lacking jurisdiction after it uttered the phrase 'I will grant the motion' [sic] are simply without merit and detached from reality." Attorney Elster references the following exchange between Hon. Fernandez and Kenton Girard, as memorialized in the transcript of the hearing from October 18 2024 at pp. 4-5:

> **Mr. Girard:** Mr. Girard filed an SOJ as of right yesterday.
> **The Court:** You did?
> **Mr. Girard:** Yup.
> **The Court:** I did not see that. I'm sorry.
> **Mr. Girard:** I can deliver it to you right now if you'd like.
> **The Court:** Yeah. If you have the motion, I will take it. Okay.
> **The Court:** All right. **I grant your motion.**

97.   In reality, the briefs submitted by Kenton Girard in support of his petition to remove Hon. Fernandez adopt the position that Hon. Fernandez was divested of her jurisdiction not at the moment of her grant of Plaintiff's petition for substitution of judge as of right, but rather two days earlier *when Plaintiff timely filed her petition with the clerk on October 16 2024.*

98.   Setting aside the finer legal point of whether Plaintiff's petition operated to remove Hon. Fernandez upon filing or upon her pronouncement in open court, Hon. Fernandez was unambiguously divested of jurisdiction in the Custody Proceedings no later than the moment of her grant of Plaintiff's petition seeking her removal in open court on October 18 2024.

99.   Furthermore, under application of judicial estoppel based upon her own open court ruling – and preempting the inevitable motions to dismiss – Hon. Fernandez cannot mount the argument that her jurisdiction over the Custody Proceedings was never in question.

Defendants have demonstrated an open disregard for open access to courtrooms.

100.   Hons. Fernandez and Ahern and courtroom coordinator Ebony Cheers ignored all

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

subsequent written communication and telephone calls made from Plaintiff complaining about the improper "striking" of her petition, which happened after Hon. Fernandez divested herself of jurisdiction over the Custody Proceedings. Moreover, none of the involved staff from the Domestic Relations Division – including Hon. Scannicchio, Adam Monreal, Jaime Barcas, Hon. Ahern – responded in any way.

101. Further email messages to Hon. Scannicchio and Adam Monreal after her office set a hearing date for Kenton Girard's petition to remove Hon. Fernandez were similarly unanswered. Adam P. Monreal Esq and Hon. Ahern flatly ignored Plaintiff's queries during this time. In one instance, Hon. Scannicchio's assistant Jaime Barcas responded with a condescending boilerplate email message containing instructions for pro se litigants.

102. Furthermore, communications with Hon. Fernandez's Court Coordinator Ebony Cheers were met with a scowl. Ms. Cheers on two separate occasions indicated that she personally saw no reason to allow Plaintiff to participate in court dates via Zoom. Furthermore, she indicated that there were strong countervailing reasons to not allow participation by Zoom including (a) the proceedings were "contentious", and (b) Zoom participation raised serious safety concerns as to the parties. Ms. Cheers also indicated that neither Hon. Fernandez nor Judge Ahern would allow Zoom access under any circumstances whatsoever.

103. The September 5 2024 status conference before Hon. Fernandez was not a closed proceeding, it was a general status call attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public. Similarly, the October 18 2024 case management conference was neither a closed proceeding, it was also attended by numerous litigants and attorneys with different matters before the Court – none of which were closed to the public.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

104.    Family court reform advocate Tina Swithin and investigative journalist were among the attendees of the September 5 2024 court date under the Custody Proceedings. Their purpose in attending was to obtain more first hand material and evidence to write about on their respective blogs and for the collective hundreds of thousands of followers consisting primarily in other victims of the family court system.

105.    On October 18 2024 when the SOJ as of Right matter was called, Hon. Fernandez granted the same. Subsequently goaded by objections lodged in open court by Enrico J. Mirabelli and at the direction of Jane F. Girard, Hon. Fernandez – who at that point had divested herself of jurisdiction – openly remarked "Marissa Girard is not here in person. So I am striking her motion. She knows she has to be here in person for all court dates." Those remarks were memorialized by a court reporter in attendance and reduced to a written transcript of the hearing.

106.    Hon. Scannicchio and Adam Monreal, as well as ADA personnel Elena Demos and Vincent D. Waller, collectively failed to ensure that Domestic Relations Hon. Fernandez's courtroom was accessible to Plaintiff because *inter alia* Plaintiff was actively refused egress to the proceedings from the court's Zoom waiting room during the October 18 2024 proceeding.

107.    Plaintiff has been injured as a result of the Defendants' conduct and has sustained humiliation and emotional distress. None of Hons. Fernandez, Scannicchio, Ahern or domestic relations staff Adam Monreal and Ebony Cheers enjoy either judicial nor qualified immunity because the decision to deprive Plaintiff of her constitutionally protected right was an *administrative action* and not subject to judicial immunity and the right to attend public judicial proceedings is a *well-established right* and its violation is not protected by qualified immunity.

The Defendants have concocted a counterfactual narrative.

108.    The denial letter of November 1 2024 from CDC Demos states that Plaintiff

participated or observed via Zoom during the September 5 2024 court date under the Custody Proceedings. Such participation did not take place and is controverted by Zoom logs. The denial letter's further claim that cameras were being disruptively turned on and off is refuted by thirty or more witnesses who observed the proceedings under the September 5 2024 court date.

109.    Furthermore, the notion that there was a concern that participants were recording the court date via Zoom is unsubstantiated. Moreover, that would appear to be a generic concern for all of the millions of court proceedings which take place throughout the state courts in our country every month.

110.    Finally, the actions of third-party court observers (including family court reform advocate Tina Swithin, who was present during the court date) cannot be construed as a legal foundation to permit or deny Zoom accommodations for Plaintiff. To wit, under the ADA reasonable accommodations must be based on the individual's specific disability, the feasibility of the requested accommodation and the fundamental requirements of the proceeding.

111.    As discussed, CDC cited alleged "serious safety concerns" attendant to the parties participating in court dates via Zoom. How virtual participation could lead to concerns about physical well-being has not been explained. Nor could it be explained, because it is a purely fictitious narrative.

112.    The court's threat to have Sheriff's Deputies present appears to be nothing more than an intimidation tactic, because there is no underlying safety concern other than one which might be manufactured by forcing in-person court dates under the pressure of the high-conflict Custody Proceedings. This threatening approach not only fundamentally misapprehends Plaintiff's medical and palliative needs, but appears to be calculated as a form of retaliation against Plaintiff for exercising her legal right to demand accommodation under the ADA.

113. The no-Zoom order of Hon. Fernandez constitutes a deliberate disregard for Plaintiff's safety and well-being from another perspective also. In late May 2024, Plaintiff obtained an emergency Stalking No Contact Order ("SNCO") against Jane F. Girard. By forcing Plaintiff to be physically present – feet away from – Jane F. Girard, is subjecting Plaintiff to physical danger.

114. Finally, the characterization of the proceeding as "contentious" is unreasonable. At no point during the nearly three year history of the Custody Proceedings were there any incidents whatsoever of raised voices, disruptive behavior, threats or lack of respect for the court. More to the point, there has been judicial finding or sanction handed down by any of the eight separate judicial officers who have presided over the Custody Proceedings.

115. Plaintiff has consistently provided comprehensive medical documentation underlying the need for Zoom attendance. Her attempts to share a confidential letter from her physician, under seal, have been furthermore denied. Again counterfactually, CDC Demos only asked for specifics as to Plaintiff's disabilities specifically after the conclusion of the October 18 2024 Case Management Conference. Moreover the Cook County Court has disregarded its requirements to engage in good faith dealing regarding needed accommodations.

<u>Defendants have ostentatiously and vexatiously refused to accommodate Plaintiff.</u>

116. Plaintiff has been fighting for express permission from Hons. Fernandez, Scannicchio, Ahern (and more recently, Yu) to allow her to attend court remotely via Zoom. The denial of these numerous requests appears to be based on factual inaccuracies, demonstrates apparent retaliation for protected legal actions, and has been compounded by subsequent procedural violations that further discriminate against Plaintiff based on her disabilities.

117. It is noteworthy that prior to these recent denials under the installation of Hons.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

Fernandez and Ahern over the Custody Proceedings, all of Plaintiff's previous requests for Zoom access had been granted without issue. Every single prior court date has been successfully conducted over Zoom, with no problems or incidents. Significantly, no judge who has presided over these proceedings has ever (a) expressed any concern about Plaintiff's participation via Zoom, (b) characterized the Custody Proceedings as contentious, (c ) raised any safety concerns connected with attendance of court dates via Zoom, or (d) questioned the appropriateness of allowing Plaintiff to participate in court dates via Zoom.

118.    This established history includes (a) successfully granted ADA accommodations, (b) effective remote court participation, (c) proper conduct during all previous Zoom proceedings, (d) consistent accommodation of Plaintiff's disabilities.

119.    Seven previous judges accepted and facilitated remote participation via Zoom without incident during the history of the Custody Proceedings. This makes the current spate of denials under Hons. Fernandez and Ahern are particularly puzzling and suggest the lack of any legitimate underlying evidentiary foundation. The abrupt reversal of these previously granted accommodations, which had effectively served their purpose throughout our proceedings, strongly suggests that this denial is motivated by factors unrelated to the merit of the accommodation request or any legitimate court concerns.

120.    Remote court attendance via Zoom has been successfully used previously in the Custody Proceedings, is widely implemented throughout the state courts in our land, creates no undue burden on the court and does not fundamentally alter court proceedings. Moreover Zoom decreases operating costs for the courts which employ it. Fewer bodies in the courtroom necessitates fewer courtroom deputies, security personnel and other court administrators.

121.    The about-face reversal by Hons. Fernandez and Ahern as to Zoom participation

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

implicates their impartiality as judicial officers, creates substantial concerns about their respect

for the force and effect of federal law and the Constitution, creates questions about their motives

and potential retaliatory animus and suggests a lack of consistency in their own decision-making.

A self-reinforcing cycle of harm has resulted.

122.    The denial of this accommodation, combined with threats made against Plaintiff

by Hons. Fernandez and Ahern and the apparent retaliation for filing a federal lawsuit, has

exacerbated Plaintiff's medical condition. This creates a cycle wherein the denial of

accommodation worsens Plaintiff's condition consisting of the following adverse impacts:

   **a.** The worsening of Plaintiff's condition amplifies her need for ADA accommodation.
   **b.** The threats and hostility further impact Plaintiff's health.
   **c.** The retaliatory nature of these actions causes additional stress and anxiety.
   **d.** The retaliatory timing roadblocks Plaintiff's constitutional right to seek a remedy.
   **e.** Forcing in-person attendance triggers PTSD[11] symptoms.
   **f.** These PTSD symptoms directly worsen Plaintiff's medical conditions.

123.    The Defendants' gross mishandling of these connected conditions demonstrates

their failure to understand or properly accommodate disability needs. The compounding effect of

these violations includes (a) creation of an inaccurate court record suggesting "non-appearances"

when legally proper notices and motions were filed, (b) prejudicial treatment of properly filed

legal motions based on disability status, and (c) additional psychological stress from having

rights violated while being physically unable to attend and defend against improper procedures.

124.    Investigative Journalist Michael Volpe captured this dynamic in his column on

substack in after observing the September 5 2024 court date under the Custody Proceedings:

> The action began when Tina Swithin, from One Mom's Battle, logged on. She told me she was
> about fifteen minutes late, but Hon. Fernandez quickly took notice. Tina told me that she
> routinely court watches, and her general protocol is to turn her microphone and video off, because
> having them [on] can cause a distraction. Hon. Fernandez saw it differently. She quickly

---

[11] The EEOC regulations specifically identify conditions that should easily be concluded to be disabilities. Such listing includes PTSD.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

demanded her video on, and for Tina to identify herself. Tina turned her video on and wrote that she was an observer for the Girard case. "As soon as she saw that, she was fuming," Tina told me. "She basically accused us of harassing the court." Tina called Fernandez "unhinged.

## The dialogue with CDC Elena Demos JD goes nowhere.

125.    On September 12 2024, Plaintiff emailed Defendant Demos advising her that due to her disability, she would be unable to attend the in person Case Management Conference ordered by Hons. Fernandez and Ahern and set for October 18 2024. In this email, Plaintiff specifically requested the right to participate in the upcoming court date via Zoom, in keeping with the manner in which she was previously allowed to participate in the Custody Proceeding before the half dozen other Hons. who preceded the appointment of Hons. Fernandez and Ahern thereunder.

126.    Receiving no response whatsoever from Defendant Demos, Plaintiff emailed Defendant Demos again on September 23 2024 requesting an update on her request to participate in the court date via Zoom. Defendant Demos responded the following day, reporting that Hons. Fernandez and Ahern had not yet weighed in on the matter.

127.    Another week went by without any further response from Defendant Demos, and Plaintiff again requested an update from her, wherein Defendant Demos finally got back to her after the elapse of another week on October 4 2024, stating:

> Ms. Girard,
> I have communicated your accommodation request to the judge.  There are a number of important reasons why the judge has scheduled these court dates in-person.  If you are unable to attend in-person on October 18, 2024, you can file a motion that the case be heard on a different date where you will be able to attend in-person.
> Thank you. Elena Demos, J.D.

Ironically, under the "take two" reasoning of Hons. Fernandez and Ahern on October 18 2024, no motion will be allowed by Plaintiff unless presented in person – thereby excluding her totally from the courtroom.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

128.   Plaintiff did not take long to craft her reply on the very same day, writing:

Dear Ms. Demos,
Thank you for your response. However, I must express my deep disappointment and concern regarding the handling of my accommodation requests over the past year.

As the ADA Coordinator, I expected your office to facilitate reasonable accommodations for my disability, as required by law. Instead, I've encountered repeated barriers and delays. The suggestion to file a motion for a different in-person date does not address my need for a remote attendance option due to my medical condition.

I would like to remind you that the Americans with Disabilities Act requires courts to provide reasonable accommodations to ensure equal access to justice. Remote attendance is a common and reasonable accommodation, especially given current technological capabilities.

Your response appears to prioritize the court's preference for in-person hearings over my legally protected right to accessible proceedings. This approach seems to contradict the spirit and letter of the ADA.

I formally request:

1. A detailed explanation of why remote attendance cannot be accommodated.
2. Information on how to file a complaint regarding the continued failure to provide reasonable accommodations.
3. A solution that respects both the court's needs and my rights under the ADA.

I hope we can resolve this issue promptly and ensure that the court fulfills its obligations under disability law.

129.   Again waiting a full week to respond, on October 10 2024 Defendant Demos wrote to Plaintiff indicating that after consulting Hon. Fernandez, Plaintiff's participation by Zoom was out of the question because "[t]he court proceeding is being held in person because Zoom attendance was very chaotic, and the court is considering the safety of the parties. There will be Sheriff's Deputies present in court."

130.   Indeed, after the stunning refusal by Hon. Fernandez (and duly ratified by Hon. Ahern) conveyed by Ms. Demos on October 10 2024, that very same day Plaintiff reached out to Hon. Fernandez's court coordinator, Defendant Ebony Cheers. At all times in question, Ebony Cheers served as the courtroom coordinator for Hons. Fernandez and Ahern since her installation in her courtroom at the Daley Center, which took place on or around Summer 2024 after a stint

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

on the bench in Rolling Meadows.

131. In this capacity, Defendant Cheers also had an obligation to ensure that appropriate measures were taken to reasonably accommodate Plaintiff in light of her documented mental and physical disabilities. However, Plaintiff's request for reconsideration of her accommodation by Defendant Cheers was flatly denied. Whereas Ms. Demos deferred to Hon. Fernandez as the final say on whether Plaintiff would be allowed to participate in court dates via Zoom, Defendant Cheers flatly denied Plaintiff's request stating plainly that "she was in charge of courtroom matters for Calendar 99" and she did not see any reason to grant Zoom access.

132. The "chaos" referenced by Ms. Demos was presumably a reference to the prior court date of September 5 2024 (indeed previous to the October 18 2024 Case Management Conference, the only court date presided by Hon. Fernandez in the Custody Proceeding was on September 5 2024). How participation by Zoom could imply a threat to the safety of the parties is certainly difficult to comprehend. But the remedy of ordering those very same parties who caused "chaos" via their remote attendance – **to such a degree that their physical safety was threatened** – to appear in person is absolutely nonsensical. One can only reasonably interpret the imposition of in-person attendance as a form of punishment, and the promised attendance by Sheriff's Deputies minimally an admonition or more likely outright intimidation.

133. Allowing the October 18 2024 court date to pass before replying via email again to Plaintiff, Ms. Demos appeared to backpedal stating that Hons. Fernandez and Ahern had not yet decided on whether to allow Plaintiff to participate in the remaining court dates in the Custody Proceeding via Zoom. In the same email, Defendant Demos asked Plaintiff to explain the nature of her disability preventing her from attending court in person.

134. Plaintiff responded on the very same day that she had been diagnosed by her

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

physician with interstitial cystitis as well as PTSD (post-traumatic stress disorder), and as a result of her medical conditions she suffers from chronic and debilitating pain as well as a constant need to urinate. Additionally, Plaintiff noted that she has to manage severe side effects from the pain medication which impair her motor skills.

135.    Making matters worse, Plaintiff's condition is exacerbated by stress and, under stressful situations (such as her physical presentment in court, under the high-conflict Custody Proceedings), she is at great risk for the onset of debilitating anxiety attacks, locomotive degradation and aphasia. The unnecessary stress caused by Hons. Fernandez and Ahern's refusal to allow Plaintiff to participate by Zoom was likely exacerbating her medical conditions.

136.    Plaintiff sent a follow-up email message to Defendant Demos on October 21 2024, addressing their shocking disregardment of her disability:

> I am following up on this email. My health has been severely affected by the stress of what happened Friday and the previous week, including you not communicating ANYTHING to me before the court date despite my giving you and the Judge over a MONTHS notice that I was not available and undergoing treatment due to my disability. I also made every effort to be given the opportunity to be present over Zoom which was not granted to me, with no explanation given.

> The gall of the Judge to go ahead with this hearing and then to call out my name in court, knowing FULL WELL that I would not be there due to my disability was further confirmation that she knew exactly what she was doing and was trampling over my rights - is beyond wrong and illegal. She then ignored my Substitution of Judge For Right with NO LEGAL BASIS AT ALL, as the SOJ does not require a party to be present to serve this. I filed a proper written application and it was served properly and Hon. Fernandez knowingly ignored my rights with your blessing.

Defendants Demos, as well as Hons. Fernandez and Ahern, remained silent in response.

137.    Plaintiff again wrote to Ms. Demos on October 28 2024:

> Additionally, I am extremely concerned about the threats made by Hon. Fernandez, who had Deputy Sheriffs present in an apparent attempt to intimidate me. This would have caused me even greater extreme emotional distress had I been able to attend in person and has contributed to my fear of appearing in person for any future date regardless of my health status.

> I am shocked and disappointed that as the ADA coordinator, the accommodations I require are instead being minimized, mocked, and threatened. This is unacceptable and a clear violation of my rights under the Americans with Disabilities Act.

Again Defendant Demos refused to respond to Plaintiff, in an obvious affront to proper procedures under requesting of reasonable accommodations under the ADA.

138.    Additional follow-up telephone calls to Defendant Ebony Cheers and the clerks for Hons. Fernandez and Ahern also proved futile. Ms. Cheers again reiterated that she saw "no good reason to allow [Plaintiff] to use Zoom", and she further noted that Hon. Fernandez "**does not appreciate court watchers**", so everything would be in person from that point forward.

139.    On November 1, 2024, Defendant Demos sent a written response to Plaintiff regarding the court's refusal to allow Plaintiff to attend court via Zoom, stating in relevant part:

> [T]he judge had prohibited litigants in the case from attending court hearings via Zoom due to the highly contentious nature of the proceedings, the fact that the parties would turn their Zoom cameras off and on, would address each other instead of the court, and would generally not comport with the proceedings of the court. There was also a concern that it was unable to be ascertained whether any of the parties were recording the court proceedings. As a result of the contentious nature of the proceedings, all parties were ordered to appear in person and Sheriff's Deputies were secured for each court appearance to maintain order.

140.    Of course, any dispute in court is inherently adversarial. Hereunder, the proceedings for over two years have consisted primarily in court dates conducted over Zoom. As to the position adopted by Hons. Fernandez and Ahern, multiple eyewitness accounts during the first hearing with Fernandez plainly contradict her story of the first hearing she presided over.

141.    Also in her written response to Plaintiff, Ms. Demos states "Decisions on ADA accommodation requests are made by the judge in the case. The OCJ ("Office of Chief Judge") CDC ("Court Disability Coordinator", i.e. Elena Demos) acts solely as a liaison between the individual making an ADA accommodation request and the judge in the case." This statement makes it very clear that Hon. Fernandez has personally made the statements contained in this response. Her statements are a clear distortion and misrepresentation of the facts.

142.    The "safety of the parties" requiring in-person attendance of all Court Dates (at

which Sheriff's Deputies would be present in appropriate numbers) cannot possibly be understood as a conclusion built on rational assessment of circumstances. Because there is evidently no logical reasoning which underlies this conclusion. Instead, the capricious revocation of attendance of court dates via Zoom is a barely disguised means of harassment and intimidation targeting the Plaintiff, and further calculated to distress her husband Kenton Girard who is also party to the Custody Proceedings.

143.   According to the November 1 2024 letter from Defendant Demos, furthermore, Plaintiff needs to propound her request for Zoom accommodation again. However, such request at this time appears to be mooted by the fact that Hon. Fernandez has suddenly and inexplicably allowed Zoom participation as to court dates to once again resume, per the standards which have been well-ingrained since the onset of the Covid-19 pandemic across all state courts in our land.

Domestic Relations Presiding Hon. Scannicchio's office ignores the issue.

144.   In early December 2024, Plaintiff made numerous efforts at outreach to Presiding Hon. Scannicchio's office via Executive Assistant Jaime A. Barcas, to no avail. On two instances, Mr. Barcas replied with condescending canned responses including resources for pro se litigants.

145.   In another instance Hon. Scannicchio's assistant Jaime Barcas indicated that the Office of Presiding Judge Scannichio had no involvement with accommodations for persons with disabilities, but failed to identify the proper channels for requesting the same.

146.   On December 12 2024, Plaintiff emailed Chief Deputy Clerk Adam P. Monreal Esq seeking his intervention to clarify that she would be able to participate via Zoom in all future court dates under the Custody Proceedings. Similar to her outreach to Jaime A. Barcas, Mr. Monreal has flatly ignored Plaintiff's questions and entreaties in their entirety.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

Vincent D. Waller JD handles the ADA appeal.

147.    On November 11 2024, Plaintiff filed an appeal of the November 1 2024 disposition by CDC Demos as to her request for ADA accommodation consisting in the ability to attend all court dates via Zoom.

148.    This appeal utilized a review process instituted and approved by the Supreme Court of Illinois, wherein a different Court Disabilities Coordinator ("CDC") would be responsible for reviewing the decision of CDC Demos. In this particular instance, the reviewing CDC assigned to Plaintiff's appeal was Vincent D. Waller JD[12].

149.    Extensive back-and-forth emails between Plaintiff and Mr. Waller ensued. On November 25 2024, Mr. Waller indicated that he had hoped to construct a response to her appeal that week. Mr. Waller asked for evidence of previous accommodations which had been accorded to Plaintiff, and she duly noted that she had been excused from jury duty and that prior to October 18 2024, she had been permitted to participate via Zoom at virtually all court dates.

150.    In another matter before Hon. Michael Weaver, Plaintiff was also allowed to participate via Zoom. Among other points, Plaintiff noted that she suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home, particularly when exacerbated by stress. Having her medical condition discussed in court without her presence has been both traumatic and humiliating, and as noted in her appeal, her PTSD from this ongoing case further aggravates my physical symptoms.

151.    On December 12 2024, Mr. Waller inquired about the timeline for when Plaintiff's course of medical treatment would be completed. She responded that treatment will

---

[12] While the Cook County appeal form utilized for her appeal of the ADA accommodation denial by CDC Demos lists Vincent Waller as occupying the role of another CDC in the Cook County Court, his email signature lists his official position as "Human Resources Assistant Administrator, Office of the Chief Judge, Circuit Court of Cook County".

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

continue for the foreseeable future.This response was particularly enervating because Hons. Fernandez and Ahern had the previous week ostensibly re-allowed attendance of all court dates via Zoom. However ambiguity remained because there was no court order allowing the same.

152. Because Plaintiff's appeal of the ADA accommodations denial by CDC Demos was filed within fifteen (15) days of the date of the denial, it timely operates to cause a stay of the Custody Proceedings in all respects.

153. Additionally, Plaintiff has moved for a stay of the Custody Proceedings in all respects until the adjudication of the appeal of the denial of her ADA accommodation has been completed, presumably by Vincent D. Waller. For that reason, the Custody Proceedings are currently in a kind of "Twilight Zone".

Plaintiff petitions to remove Hon. Fernandez.

154. On October 16 2024, Plaintiff filed a petition for substitution of judge ("SOJ") as of right under the authority of 735 ILCS 5/2-1001(a)(2), her first such petition in the family law proceeding hereunder. Because her application was timely presented before the evidentiary hearing and before Hon. Fernandez had ruled on any substantial issue in the case in the family law proceeding, that application operated to remove Hon. Fernandez from the proceedings[13].

155. As a consequence, the proceeding presided by Hon. Fernandez on October 18 2024 was in effect *ultra vires*. The decisions and actions by Hon. Fernandez at the October 18 2024 court date constituted nothing more than "playing judge" and therefore do implicate legal or judicial orders.

---

[13] In the court date on October 18 2024, upon receipt of Plaintiff's Petition for SOJ as of Right, Hon. Fernandez first states "So, I'm going to grant your motion". Then Mr. Mirabelli in opposition to the paper suggests that Plaintiff must be present to argue the motion, and Hon. Fernandez thereby ruled – after she had divested herself of jurisdiction – that she was striking the SOJ as of Right.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

156. Hon. Fernandez moreover does not enjoy judicial immunity post October 16 2024. Under a strict reading of the substitution of judge statutory language, it is indeed unnecessary for a judicial officer to "ratify" or indeed to expend any discretion whatsoever as to a properly presented application. The paper filed by Plaintiff hereunder represented her first request for SOJ and was accepted by the clerk, and it did not implicate timeliness concerns.

157. At best, a judicial officer targeted by a petition for SOJ as of right may perform the nominal and administrative task of confirming the effect of the petition with a docket entry. As a result, prongs (2) and (3) of *Dawson v. Newman*, 419 F. 3d 661 (7th Cir. 2005) both fail: under no colorable circumstances was Hon. Fernandez to take any action other than possibly ratifying the force and effect of the SOJ petition brought against her. Litigants from throughout our state and through the decades have come to expect that granting of their first timely SOJ petition as of right is a formality at most.

158. As a result, all actions, orders and directives of Hon. Fernandez signed or propounded after the filing of Plaintiff's petition for SOJ on October 16 2024 are void ab initio. The current status is that every single decision, order and action taken by Hon. Fernandez after approving Plaintiff's petition for SOJ as of right as the first order of business before the court on October 18 2024 – including denying pending motions for a stay and for intervention, and setting an omnibus scheduling order leading up to the ultimate evidentiary hearing – was without jurisdiction and must be wholly undone.

159. The events of the September 5 2024 court date were shameful to behold and raise significant questions about the judicial temperament and bias of Hon. Fernandez. On September 5 2024, Hon. Fernandez held her first hearing hereunder. The current custody modification proceeding has been active for over two (2) years and none of the previous judicial officers

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

(including without limitation J. William S. Boyd and J. Renee G. Goldfarb) had any issues holding Zoom hearings in this case.

160.    During this hearing, Hon. Fernandez did not allow Petitioner to speak other than when she asked him to supply truncated single word responses to questions posed (whereas opposing counsel was allowed to speak at length). She also entered a facially questionable decision that all future court dates should be in person not over Zoom, thereby (and perhaps intentionally) complicating attendance for Plaintiff who requires participation via Zoom.

161.    One of the court watchers in the September 5 2024 court date was Tina Swithin (@onemomsbattle) who made the following Instagram post highlighting what happened during this hearing. Tina stated:

> Never have I ever – this morning, I logged on to watch a public hearing in the case of @justiceforgwenandgrace. I invited a group of students who have an interest in family court advocacy and reform. I have been attending court watches for years as an advocate – both in person and online. Never have I ever seen a judge completely unhinged and visibly ANGRY that there were court watchers. Typically, it is courtesy to have cameras and microphones off, which is what I did and what I instructed the students to do. She threatened to take people out of the zoom call if cameras weren't turned on immediately, so we all complied. Then she said names needed to reflect the case you were present for: I immediately changed my name to "Tina Swithin: Observer of Girard case.'" As soon as she saw that, she was fuming and accused us of harassing the court for being present AT A PUBLIC HEARING. She then threatened to order that future court dates for this case be in-person only. Show me a judge wanting to keep things out of the public eye and I will show you a red flag.

> Show me a judge that has a problem with court observers and I will show you a red flag. Court watching is the practice of observing courtroom proceedings to ensure transparency, accountability, and fairness…As described by the American Bar Association: The right of public access to court proceedings is enshrined in the Constitution. The First Amendment to the Constitution gives the public and press a right of access to court proceedings. Requiring the work of the courts to be conducted in public view provides an important check on the potential for abuse of power, allowing observers to better understand how the justice system operates and enhancing public confidence in the courts.

Following that hearing investigative journalist Michael Volpe published an article raising serious

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

questions about Hon. Fernandez's temperament, wherein he includes material from his own interview with Tina Swithin.

The judicial authority of Hons. Fernandez and Ahern has been degraded.

162.    Plaintiff has been blindsided by additional trauma because of Hons. Fernandez and Ahern's obvious gamesmanship which has been calculated to maximize emotional distress for Plaintiff. To wit, the recent December 3 2024 court date (for presentment of a nominal motion by Beermann LLP) was affirmatively allowed over Zoom, when this Court made an extremely heated pronouncement just weeks earlier that all court dates would be in person.

163.    Indeed, ADA compliance personnel have reduced Hons. Fernandez and Ahern's commands to writing in their correspondence with Plaintiff. The arbitrary nature of these decisions regarding in-person versus remote attendance, particularly when they resulted in the improper denial of Plaintiff's statutory right to one (1) substitution of judge upon timely application, has caused Plaintiff significant additional mental anguish and emotional distress.

164.    Given her pre-existing mental impairment, documented by years of treatment by her physician, this is no trivial matter. The judiciary in our land first and foremost must honor our sacred Constitution; the ways in which Hon. Fernandez has abused her power to inflict extremely serious harm upon the rights of Plaintiff and court watchers is shocking to behold.

165.    The October 18 2024 court date was not a closed proceeding; it was attended by numerous litigants and attorneys with different matters before the Court none of which were closed to the public. However, Plaintiff was attempting to join via the Court's Zoom credentials and was actively turned away by Hons. Fernandez and Ahern and Ebony Cheers.

166.    Indeed, Plaintiff had important business before the Court, namely her first petition under these proceedings to effectuate a Substitution of Judge as of Right. However, she was never admitted access to the Court's Zoom session. Plaintiff has sustained humiliation and emotional distress as a result of Hon. Fernandez's vexatious refusal to allow Plaintiff to participate in the proceeding via Zoom.

167.    Absent action protecting the rights of free access to courtrooms for the public, the Cook County family court's credibility has been further tarnished by the actions of Hons. Fernandez and Ahern. The right to attend public judicial proceedings is a well-established right,

168.    Moreover, Hons. Fernandez and Ahern do not enjoy judicial immunity because the decision to deprive Plaintiff of her constitutionally protected rights by denying her access to the proceedings via Zoom was an administrative action. This egregious and hostile denial of access to the proceedings on October 18 2024 was an impermissible violation of Plaintiff's First Amendment rights.

169.    Hon. Fernandez expressed her discontent with the presence of court watchers at the court date on September 5 2024. Questioning of some of the court watchers in attendance has revealed Hon. Fernandez directed her courtroom staff to disable certain of the court watchers' Zoom access to the proceedings during that court date.

170.    Certain of those attendees (including family court reform advocate Tina Swithin) were there in an expression of solidarity with the minor children whose lives are at issue in the Custody Proceedings. Hon. Fernandez's grotesque disregardment of the First Amendment rights of these civic-minded court watchers is a grotesque affair from every point of view.

Kenton Girard brings SOJ for cause against Hon. Fernandez.

171.    Following Hon. Fernandez's flouting of her own subject matter jurisdiction after

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

granting Plaintiff's SOJ as of right, Kenton Girard filed his own petition for SOJ for cause against Hon. Fernandez on November 22 2024.

172.   Inexplicably, Hon. Fernandez slow-walked the processing of Kenton's petition seeking her removal for cause, inexplicably convening an additional court date[14] and issuing an amendment to the case management order (relating to written and oral discovery deadlines) which she had originally entered on October 18 2024. Ultimately, about two weeks later, she acknowledged the petition and the domestic relations matter was transferred to Calendar 1 for appointment of a judge to referee the hearing on Kenton's petition against Hon. Fernandez.

173.   Curiously, Hon. Ahern – who frankly shared culpability under many of Kenton's enumerated points against Hon. Fernandez as described in the foregoing paragraphs and is furthermore plainly not fit to be on the bench – was selected by Hon. Scannicchio to referee the hearing on his petition. The hearing date of January 9 2025 was set by Hon. Scannicchio.

174.   Soon after former President Jimmy Carter died (December 29 2024), Kenton received an invitation to attend the state funeral for Jimmy Carter at the National Cathedral in Washington DC on January 9 2025. Over his filed notice on the Cook County docket as to his unavailability on such date, Hons. Scannicchio and Ahern insisted on maintaining the court date of January 9 2025. Incredibly, all federal courts and nearly all federal offices and state courts including in Cook County were closed in honor of Jimmy Carter's memory – yet the Domestic Relations Division of Cook County decided to make a special exception for Kenton Girard.

175.   Hon. Ahern proceeded to conduct a non-hearing, in which Beermann LLP attorney Howard London was present. An observer of the court date has testified to Attorney London and Hon. Ahern belittling a) the fact that Kenton Girard would attend Jimmy Carter's

---

[14] Under the provisions of 735 ILCS 5/2-1001(a)(3) upon receipt of a petition seeking substitution of a judge for cause, the targeted judge is immediately sidelined pending adjudication of the petition at a hearing convened by a distinct judge appointed for such express purpose.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

funeral, and b) the idea that the national day of remembrance of Jimmy Carter should stand in the way of their court date, and c) the prospect that Kenton Girard would be "unavailable"[15] to attend court approximately one hour after the funeral service in Washington DC concluded.

176.    The same observer of the court date has further testified that no argument was advanced regarding Kenton's petition, and Hon. Ahern took the matter under advisement – in violation of the statute by not conducting a hearing. A few days later, Hon. Ahern denied the petition. Indeed, it is a virtual certainty that a petition to remove a Cook County judge is denied.

<u>Hon. Scannicchio transfers the matter to Calendar 51 … then 99 … then 89.</u>

177.    On January 14 2025, this matter was transferred from Calendar 1 to Calendar 51 pursuant to Hon. Scannicchio's reasoned review of a "Safe Harbor Letter"[16] filed on the docket on the previous day by Kenton Girard, and pursuant to Hon. Scannicchio's apparent consultations with Hon. Gregory E. Ahern who had just penned an inexplicable opinion absolving Hon. Fernandez of any impermissible bias.

178.    Calendar 51 is presided by Cook County Domestic Relations Judge Ellen Flannigan. However, wholly lacking a request by the parties or by Judge Flannigan, the matter was returned to Calendar 1 on ~January 23 2025. Multiple court filings between January 14 and January 23 2025 bore the stamp of "Calendar 51", however the judicial transfer orders to and from Calendar 51 were never filed on the docket in contravention of subject matter jurisdiction

---

[15] It is customary on the day of a funeral to remain in prayer for the deceased, especially under the Judeo-Christian traditions. In keeping with such customs, Kenton Girard remained in observant prayer for the passing of Jimmy Carter for several hours – physically remaining in Washington DC – after the funeral service at the National Cathedral.

[16] In his Safe Harbor Letter, Mr. Girard advised Hon. Scannicchio that he would be attending former President Jimmy Carter's state funeral at the National Cathedral in Washington DC on January 9 2025. It further underlined due process concerns with the proposed January 9 2025 court date: Beermann LLP attorney Matthew D. Elster filed an 18-page opposition brief to the petition for SOJ for cause directed at Hon. Fernandez on January 3 2025. Under Ill. S. Ct. R. 182, Plaintiff and Mr. Girard would be duly accorded 21 days within which to prepare a reply brief. As a result, convening a hearing on January 9 2025 would be manifestly against the interests of justice and fairness, and moreover a violation of due process rights enshrined under the Illinois Supreme Court Rules.

requirements[17]. Multiple requests from Plaintiff and Kenton Girard to produce said transfer orders were ignored by Hon. Scannicchio and her staff, and remain "missing" and unfiled.

179.   Things got even weirder wherein Hon. Scannicchio subsequently transferred the jurisdiction yet again back to Calendar 99/Hon. Fernandez on January 23 2025. As Plaintiff opined in her "Motion for Stay and Repair of Jurisdiction" filed on January 27 2025, Hon. Scannicchio has already been outed for accepting bribes for desired judicial outcomes from Beermann LLP for most of the last decade (see Bribery Lawsuit, Dkt[73] at ¶¶ 4, 9, 52-56).

180.   The inference that a presiding judge of an entire judicial division would be deliberately concealing a judicial transfer order from the docket and the parties would normally feel like a "bridge too far". However, given that Hon. Scannicchio is a bribed judge just like her now-recused and disgraced colleagues William S. Boyd and Renee G. Goldfarb, it is unfortunately unsurprising to see her brazenly commit perjury and take premeditated action in violation of 18 U.S. Code § 1512: (c)Whoever corruptly— (1) alters, destroys, mutilates, or **conceals a record**, document, or other object, or attempts to do so, **with the intent to impair the object's integrity or availability** for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

181.   The disgusting reality is that the Domestic Relations Division appears to be an arm of the Chicago Outfit controlled by Hon. Scannicchio's real boss: Beermann LLP managing partner and capo John M. D'Arco Esq (see Bribery Lawsuit, Dkt[73]). Hon. Scannicchio lacks a

---

[17] Subject matter jurisdiction cannot be waived. Similar to how the State of Frauds requires transfers of title to real estate to be reduced to writing and filed with the recorder, judicial transfer orders must also be reduced to writing and filed on the docket. Restarting legal proceedings before a new court without a judicial transfer order docket entry would be similar to trying to close on a real estate deal with a dirty title.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

first year law student's understanding of basic legal principles and constitutional rights, and she brazenly operates with tyrannic indifference to the rule of law. Just as Kenton Girard has painted Hon. Fernandez in recent court filings, Hon. Scannicchio also is a true cancer on the judiciary. Her exploits should be the subject of a grand jury investigation in the Northern District of Illinois and she should be removed from the bench.

182. Likely bowing to pressure from the Attorney General's Office (which is representing Hon. Fernandez hereunder), Hon. Fernandez recused herself on January 27 2025. A day later, Hon. Scannicchio transferred the matter to Calendar 89/Judge William Yu, this time recording the judicial transfer order on the docket.

### The Cook County ADA appeal continues to languish.

183. Casting more doubt about the status and likelihood of timely conferral of reasonable accommodations under the ADA to TP Respondent, Cook County Assistant State's Attorney Silvia Mercado Masters has updated Plaintiff that as of January 24 2025 (a) the Cook County ADA appeal remains fully unresolved, (b) Vincent D. Waller has been relieved of his assignment, and (c) there is no one currently handling the ADA appeal on behalf of Cook County. Indeed, it appears that Vincent D. Waller has undertaken no efforts whatsoever to responsibly administer his responsibilities viz-a-viz Plaintiff's Cook County ADA appeal.

184. Indeed, Camela Gardner from the Office of the Chief Judge of Cook County tendered a written denial as to Plaintiff's Cook County ADA appeal on January 31 2025 under the theory that allowing Plaintiff to attend court dates via Zoom would represent an inordinate and unreasonable imposition on the court. Such words are incredulous given that virtually all court dates in Cook County take place via Zoom, including the Domestic Relations courts. Indeed nearly all court dates in state courts throughout our land have adopted Zoom.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

185.     Upon information and belief, Ms. Gardner was performing the bidding of Hon. Scannicchio and the judges under her supervision on the domestic relations matter (including *inter alia* Hon. Fernandez and Judge Yu) who have taken it upon themselves to weaponize ADA accommodations against Plaintiff – instructing Ms. Gardner to deny Plaintiff's accommodations.

Judge Yu eagerly engages in ADA abuses and multiplies jurisdictional defects.

186.     The history under Judge Yu has been similarly egregious. On February 7 2025 – over the express and explicit warnings of Plaintiff, duly filed on February 4 2025 on the docket under a "Notice as to her Health and TP Claims", not to proceed because she had been ordered to observe a 75-day period of medical leave – Judge Yu aggressively struck Plaintiff's TP Claims filed thereunder and set the proceedings for a trial set for May 1-2 2025.

187.     Judge Yu's order from February 7 2025 furthermore presents clear and obvious problems on its face, because *he confirms the fact of his subject matter jurisdiction*. In reality, without the judicial transfer orders to and from Calendar 51 from January 14 2025 and January 23 2025, the ownership of subject matter jurisdiction cannot be traced.

> This cause coming before the Hon. William Yu pursuant to Jane Girard's January 30, 2025 Notice of Motion set for 10:00 a.m. via zoom, Respondent, Jane Girard, appearing individually and through counsel... Petitioner, Kenton Girard and Third-Party Respondent, Marissa Girard, having receiving [sic] proper notice of today's proceedings, but failing to appear as of approximately 10:40 a.m. either individually or through counsel, the Court **having jurisdiction over the** parties and the **subject matter** (emphasis added)

188.     Plaintiff's "Notice as to her Health and TP Claims" filed on February 4 2025 alerted the Cook County Domestic Relations Court to (a) her mandatory 75 day medical leave from the proceedings, owing to the worsening of her interstitial cystitis and PTSD, and as to (b) the fact that her TP Claims were properly before the court, having obtained leave from the previous judicial officer Hon. Fernandez and having filed the same before her time to propound responsive pleadings had tolled.

189. Plaintiff's "Notice of Defective Impleading" similarly filed on February 4 2025 alerted the Cook County Domestic Relations Court to the highly irregular circumstances that she had not been supplied with a pleading, despite the continuously repeated and high-pitched protests from Beermann LLP that she was brought into the proceedings as an absolutely indispensable third party thereunder.

190. As such, the deadline under the domestic relations matter for Plaintiff to craft TP Claims has not yet been tolled and her TP Claims filed in late 2024 are timely under 735 ILCS 5/2-406(b). Furthermore, her TP Claims were granted with leave of court. The TP Defendants, moreover, are indispensable under 735 ILCS 5/2-406(a) and 750 ILCS 5/403(d) to adjudicate the equitable custody relief allegedly sought by Jane F. Girard hereunder. Proving the TP Claims will prove that Jane F. Girard is an unfit mother and belongs in a penal institution, and is an obvious danger to the minor children Gw and Gr.

191. Under 735 ILCS 5/2-201(a), "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." The recipe here in our state wherein a proceeding starts with the first step of filing a pleading has been universally adopted by the courts throughout our land. For example, in all District Courts, pursuant to Fed. R. Civ. Pr. 3, "A civil action is commenced by filing a complaint with the court."

192. Such requirement is particularly poignant with respect to Plaintiff, who was not a party to the Girard dissolution of marriage proceedings incepted in 2015. To be specific on or around June 2023, Plaintiff became aware that a summons seeking to join her as a third party respondent was filed with the Cook County clerk on May 26 2023, and further such summons contained language "The Petitioner has filed a legal proceeding against you for one or more of the following: ["Other: Motion to Add Third Party"]. The referenced Motion to Join Third Party

was filed with the clerk on March 8 2023. Some time later, after Plaintiff's erstwhile attorney entered an appearance on her behalf on or around June 2023, she started receiving the first of a series of motions penned by Respondent's attorneys at Beermann LLP seeking to find her in contempt and to fine or jail or otherwise sanction her.

193.    Most memorably, Beermann LLP moved to find Plaintiff in contempt for failing to enforce an unconstitutional First Amendment violating gag order against the minor children Gw and Gr, which order was signed by the disgraced and now-recused Judge William S. Boyd who is now defending allegations that he took bribes from Beermann LLP to render favorable decisions for Jane F. Girard hereunder, under the Bribery Lawsuit.

194.    When Plaintiff's erstwhile attorney (Attorney Pfanenstiel) entered an appearance on Plaintiff's behalf under the Domestic Relations matter, the only paper which had been provided which was directed at her was the summons. The Motion to Join Third Party, as previously explained, specifically does not contain Plaintiff's name in the caption. Moreover, the Motion to Join Third Party – being a request transmitted to the court allow Plaintiff's joinder – cannot possibly be construed as a pleading[18].

195.    For the last ~twenty months, Plaintiff has been trying to discern why Beermann LLP repeatedly insists that her joinder in the domestic relations matter is essential and that she is an indispensable party. Plainly, Plaintiff has yet to receive notice of the claims which lie against her, or to adduce defenses thereto. Simply put, Plaintiff has not been impleaded under the Domestic Relations matter. The action against her has not commenced, irrespective of the pile of vexatious motions for contempt and sanctions which followed her defective joinder. What is

---

[18] In a lawsuit, formal writing can be divided into two categories: pleadings and motions. A pleading demands that the other party do something, while a motion requests that the judge in the case do something. Given that the Motion to Join Third Party did not even include Plaintiff in the caption, and that it was obviously calculated to obtain court permission to proceed to file a pleading against TP Respondent (which did not happen), this set of circumstances is violative of Plaintiff's fundamental rights to due process and fair notice.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

more is the Domestic Relations court is a court of equity, and the likelihood of equitable relief is rapidly eroding toward zero[19] given that the minor children Gw and Gr and nearly of majority age, are high-functioning and high-performing students and entrepreneurs filing their own lawsuit and legal papers. Indeed Gw and Gr already run a multi-million dollar business and await the adjudication of their motion for limited emancipation to sign their own business contracts under Cook County Case No. 2024COMS000016.

196. Also on or around February 4 2025, Kenton Girard filed a notice as to his own unavailability in the domestic relations matter. Kenton Girard is an executive for Old National Bank and because of the unnaturally elongated, vexatious, improper and abusive nature of the domestic relations proceedings has been putting off important business obligations which implicate fiduciary duties to tens of thousands of people including *inter alia* shareholders, investors, stakeholders and community interests in the neighborhoods where hundreds of bank branches are located throughout the Midwest. Failure to attend more diligently during each business day to these obligations threatens Kenton Girard's employment at Old National Bank.

197. Given the current status quo under which the minor children Gw and Gr reside full-time at Kenton Girard's home and Kengton Girard underwrites virtually all of their expenses, and under which Jane F. Girard has entirely stopped contributing her required share under the Joint Parenting Agreement entered in 2015, termination of Mr. Girard's employment would portend a deleterious impact on the well-being and welfare of Gw and Gr.

198. What makes this situation even more egregious is the fact that the domestic relations matter was dismissed for want of prosecution – as outlined in Kenton Girard's Notice as

---

[19] To put a final nail in the coffin in the theory of adjudicating some sort of matter relating to the Joint Parenting Agreement, Plaintiff has been informed by Gw and Gr's attorney, Toma Makedonski, that a motion to intervene by the minor children Gw and Gr shall be emplaced before the Domestic Relations court in the near future – which will easily carry this case beyond the point at which the minor children Gw and Gr attain majority age.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

to Jurisdictional Defects filed on January 29 2025, and as initially noticed in December 2024. Under Ill. S. Ct. R. 273, that dismissal operates as an adjudication on the merits and and therefore the Cook County courts have been divested of all jurisdiction over this matter.

199.    Plaintiff is representing herself pro se in the domestic relations matter and has filed a renewed request for reasonable accommodation under the ambit of Title II of the ADA 5 based on the new and dramatic worsening of her interstitial cystitis and PTSD. Under these circumstances, Plaintiff will clearly require above-normal time to prepare responsive pleadings and opposition briefs.

<u>Plaintiff requests the removal of Judge Yu for cause.</u>

200.    On February 11 2025, Plaintiff filed a petition seeking substitution of Judge William Yu for cause, wherein she set forth the following argument in support of the same.

I.      Ignoring TP Respondent's health notice shows favoritism for Beermann LLP.

On February 4 2025, TP Respondent filed her Notice as to her Health Status and TP Claims. The Notice expounds on the recent worsening of TP Respondent's health condition, under which she suffers from interstitial cystitis and PTSD, both of which are specifically recognized disabilities under the ambit of the Americans with Disabilities Act. On the strict orders of her doctor, TP Respondent is to observe a 75 day period of quiet under which she is medically unable to participate in these proceedings. Moreover, even prior to Judge Yu's arrival hereunder, Cook County has been formally warned that its vexatious refusal to reasonably accommodate TP Respondent under the ADA will not be tolerated, as per the litigation under Marissa Girard v. Rossana P. Fernandez et al., Civil Action No: 1:25-cv-00136, N. Dist. Illinois.

In the court date on February 7 2025, not only did Judge Yu proceed to conduct a hearing and rule on a stack of motions penned by Attorney Matthew D. Elster of Beermann LLP, but he did so in ostentatious disregard for TP Respondent's inability to attend the same and in violation of Cook County Rule 2.1(d) and basic due process requirements wherein TP Respondent was not allowed to prepare briefs in opposition. Such violations of TP Respondent's rights are all the more serious given that she must reasonably be allowed additional time to prepare opposition papers and cannot prepare more than a single motion per court date.

The Notice additionally sets forth that TP Respondent's TP Claims are properly before the Court because they were filed strictly within the timeline set forth under 735 ILCS 5/2-406(b) and furthermore leave of court was granted by Hon. Fernandez. Moreover the TP Defendants are indispensable under 735 ILCS 5/2-406(a) and 750 ILCS 5/403(d) because the fact of Respondent Jane F. Girard being a pattern criminal is relevant before a court order of custody is entered against her sex abuse victims, the minor children Gw and Gr.

Notwithstanding these circumstances, Judge Yu took the profoundly irresponsible action of striking the TP Claims. It is well settled that striking claims is an extreme remedy, and it is to be a last

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

resort to punish a previously sanctioned litigant. Here, there has been no finding of sanctions against TP Respondent in this litigation and moreover her TP Claims were brought properly from every point of view, including as arising under a common nucleus of facts. Moreover, just like any penal finding such as imposition of Rule 137 sanctions, a striking of claims must be based upon a precedent written finding, which the Court has not yet propounded.

II.     Judge Yu has blessed TP Respondent's deficient joinder.

On February 4 2025, TP Respondent also filed her Notice of Defective Impleading, which details the circumstances of her improper joinder hereunder. In summary, under 735 ILCS 5/2-201(a), "Every action, unless otherwise expressly provided by statute, shall be commenced by the filing of a complaint." It is furthermore a well established right to due process that a defendant be provided with adequate notice of the claims which lie against her. Otherwise, the defenses cannot be adduced and the proceedings which follow lack a legal foundation.

TP Respondent was not a party to the domestic relations proceedings hereunder, which were incepted in 2015. The papers filed with the Court under which Beermann LLP commandeered TP Respondent's joinder consisted in a summons and a "Motion to Join Third Party". The latter did not include TP Respondent in the caption, indeed sought action from the Court not an answer from TP Respondent and therefore does not conceivably constitute a pleading. To make matters even more questionable, it is highly irregular and extremely unusual to implead, as here, the new wife of a party to domestic relations proceedings wherein she is neither a biological parent nor the holder of any parental rights to the minor children.

In spite of such epic circumstances, TP Respondent has been on the receiving end of a myriad of sham papers filed by Beermann LLP including not less than (6) motions asking the court to jail her or otherwise to hold her in contempt. The situation with respect to TP Respondent is akin to a Cook County Jail detainee being subjected to the indignity of being confined for eighteen (18) months, getting physically abused by other inmates all the while, without having been charged with a crime.

Notwithstanding these circumstances of which he was made explicitly aware via the Notice, Judge Yu has approved TP Respondent's fatally defective joinder hereunder by proceeding to rule on a stack of ill-founded motions by Matthew D. Elster of Beermann LLP. At a minimum when Judge Yu was apprised of these show-stopping deficiencies, he should have paused the proceedings. Instead, after the court date of February 7 2025, Judge Yu set another court date for a fast track of just one week later on February 14 2025.

If there were any doubt about Judge Yu's external coaching by Beermann LLP or their proxies, he also completely disregarded the show-stopping fact that judicial transfers between Calendar 1 to Calendar 51 from January 14 and January 23 2025 are missing and unfiled on the docket (therefore subject matter jurisdiction for Calendar 89 remains in question).

III.     Judge Yu has moreover disregarded the ADA accommodation request.

The fact that the February 7 2025 hearing took place at all lies in offense against the stay of proceedings governing the matter at the current time, wherein TP Respondent propounded a formal updated request for reasonable accommodations under the ADA to CDC Elena Demos a few days prior on February 4 2025. Under that request, TP Respondent specifically demanded a stay of these proceedings until such time as she would be reasonably accommodated under the ADA. On Cook County's side, CDC Elena Demos handed off the task to CDC Carina Segalini. The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that he is taking orders from Beermann LLP or from Hon. Scannicchio, who is reputed to be "owned" by Beermann LLP and reputed Chicago Outfit "capo" John M. D'Arco Esq.

Moreover, the right to attend judicial proceedings is a well-established right protected by the First

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

Amendment and the grotesque violation of this right of Marissa Girard by Judge Yu signals the depravity of his impermissible bias against her.

201.     Judge Yu now faces a reckoning because by commanding the bench – in sheer absence of jurisdiction – he eviscerated his protective cloak of judicial immunity. He now is in good company with Hon. William S. Boyd and Hon. Renee G. Goldfarb and Hon. Fernandez – all of whom recused themselves from these proceedings, for allegations of taking bribes from Beermann LLP to rule favorably for Respondent and sex abuser Jane F. Girard or for violating the constitutional rights of Plaintiff with impunity.

<u>Attorney Elster belittles Plaintiff's medical conditions in legal papers.</u>

202.     In his opposition paper filed on February 12 2025 to Plaintiff's recently filed request for removal for cause directed at Judge Yu, Attorney Elster writes at p. 1 that "[Plaintiff] refuse[s] to appear or participate in the proceedings when it does not suit [her]". He goes on to aggressively assert at p. 1, n. 1 "Marissa has claimed her physician has prohibited her from participating in this litigation for a minimum of 75 days and for no more than 30 minutes at a time. [She has not] supported [her] claims with a shred of documentation." This initial outburst of anger is disturbing and misplaced because Plaintiff has carefully and diligently corresponded not only with the Court and opposing counsel (including Attorney Elster) but also on numerous occasions with the Cook County court disability coordinators (including without limitation Elena Demos and Vincent Waller) and additionally she has repaired to this District Court to seek relief from the trampling of her rights under the ADA. Moreover, Plaintiff has offered to provide the Domestic Relations Court with a copy of her medical file, including her doctor's recent command to observe a period of quiet for seventy-five (75) days, however the Court has refused to enter a protective order or otherwise seal Plaintiff's highly confidential medical records in

accordance with the requirements under the Health Insurance Portability and Accountability Act of 1996.

203.   Next, Attorney Elster describes Plaintiff at p. 2 as an "unscrupulous litigant abusing the provision of section 2-1001(a)(3)", wherein he takes direct aim at the substance of Plaintiff's recently filed petition for substitution of judge for cause directed at Judge Yu. Reviewing the substance of that petition, the primary argument advanced is that Judge Yu's deliberate refusal to provide any reasonable accommodation[20] – much less to allow a period of quiet for Plaintiff in the domestic relations proceedings – proves his unreasonable favoritism of Beermann LLP.

204.   Continuing, Attorney Elster takes aim at Plaintiff's pleadings in the domestic relations matter, referencing "Marissa's improper subpoenas/third-party complaints" at pp. 3-4. In the same breath he defends having "properly noticed up several motions before [the Domestic Relations Court] on February 7, 2025 at 10:00 a.m., providing both Kenton and Marissa **with proper and ample notice … [per] her supposed doctor's orders**" (emphasis supplied). In reality, a raft of notices of various motions to quash and to strike Plaintiff's claims were supplied to Plaintiff on February 6 2025, less than 24 hours prior to the hearing set for February 7 2025 by Judge Yu. Under Cook County rules, notices for presentment of motions must be tendered *at least two court days prior* to presentment. As always with Attorney Elster, there is one amorphous self-serving set of rules which binds his clientele and Beermann LLP, while there is a wholly different and inexplicably disfavorable set of rules for his opposing parties.

205.   Plaintiff's paper seeking the replacement for cause as to Judge Yu moreover

---

[20] Indeed, Plaintiff propounded a formal updated request for reasonable accommodations under the ADA to Cook County Courtroom Disability Coordinator ("CDC") Elena Demos a few days prior on February 4 2025. Under that request, Plaintiff specifically demanded a stay of the domestic relations proceedings until such time as she would be reasonably accommodated under the ADA. On Cook County's side, CDC Elena Demos handed off the task to CDC Carina Segalini who has yet to provide any help whatsoever to Plaintiff.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

points directly at an extrajudicial source animating his bias: "If there were any doubt about Judge Yu's **external coaching by Beermann LLP or their proxies**, he also completely disregarded the show-stopping fact that judicial transfers between Calendar 1 to Calendar 51 from January 14 and January 23 2025 are missing and unfiled on the docket (therefore subject matter jurisdiction for Calendar 89 remains in question) ... The only explanation for Judge Yu fast-tracking a hearing and setting another for a week later on February 14 2025 is that **he is taking orders from Beermann LLP or from Hon. Scannicchio**, who is reputed to be 'owned' by Beermann LLP and reputed Chicago Outfit 'capo' John M. D'Arco Esq." (emphasis added)

206.    Moving on, Attorney Elster at p. 8 states "Marissa's lack of good faith is also impossible to ignore. She does not even attempt to satisfy the legal requirements for SOJ petitions but, instead, resorts to sensational accusations of corruption coupled with **unsubstantiated disability claims.**" (emphasis added) Continuing at p. 10, Attorney Elster further writes "this Court need not—and should not—allow Marissa to further delay these proceedings through unscrupulous litigation tactics." Continuing, Attorney Elster writes "This is the second time in approximately one month that Marissa **has leveled false accusations against members of the bench and bar** in an effort to remove a sitting judge from her case... Marissa has resorted to her tried and true tactic of accusing this Court and Jane's attorneys of outright corruption." (emphasis supplied)

207.    In sum, Attorney Elster defames Plaintiff as not acting in good faith, as exercising improper litigation tactics, of advancing claims not grounded in fact. He does not even attempt to substantiate his character assassination of Plaintiff. Apparently, in Attorney Elster's world, the mere fact that Plaintiff is the opposing party in the domestic relations matter is enough to launch such an extreme ad hominem offensive against her. Or perhaps he is simply a misogynist.

Whatever the basis, his unfounded invective against Plaintiff must be disregarded by the Court.

The February 14 2025 court date presided by Judge Yu is a farce.

208.     During the February 14 2025 court date, Kenton Girard several times raised attention to the jurisdictional defects of the domestic relations matter. He points out the transfers between Calendars 1 and 51 from January 14 2025 and January 23 2025 which were not reduced to a writing, much less filed on the docket. Thereby, Mr. Girard pointed out there is currently no way to trace Calendar 89's jurisdiction over the domestic relations matter. Judge Yu's response is to simply say he'll "deal with" jurisdictional issues later.

209.     Disturbingly, Judge Yu appears to be of a single mind to move the matter to trial as quickly as possible. Attorney Robert Holstein – representing Plaintiff in the domestic relations matter for the limited scope of the SOJ for cause petition – points out there are no triable issues of fact, and Mr. Girard raises attention to the complete absence of pleadings in the post-decree proceeding. In spite of the same, Judge Yu set trial dates on May 1-2 2025 – leaving significant outcome-determinative issues hanging in the wind.

210.     Kenton Girard furthermore brings attention to the Dismissal for Want of Prosecution which he filed in December 2024 – without any opposition whatsoever from Beermann LLP or Jane F. Girard. Judge Yu simply remarks he is not interested in "getting involved" in that issue.

211.     As if the foregoing were not sufficiently alarming, Judge Yu appears furthermore committed to unequal treatment of the parties. Thereunder, he gives significant latitude to Beermann LLP attorneys, quickly accepting their characterizations in all instances wholly without critical examination. Judge Yu furthermore repeatedly cuts off Kenton Girard in the middle of and cuts off Kenton's explanations multiple times. In the same vein, he repeatedly

allows Beermann LLP attorney Enrico J. Mirabelli to make inflammatory statements and ad hominem attacks against Kenton Girard – in all instances without laying foundation for the same.

212. As to the pending petition seeking Judge Yu's removal for cause, Judge Yu treats such filing without a thorough examination or the requisite due care. He allows a comically short window (until 5 PM that very day) for Kenton Girard to amend or join the same, declares that no further requests seekings his recusal will be allowed after such time (even if, as Kenton Girard pointed out in open court, Judge Yu were to engage in additional for cause behavior) and he seems clearly predisposed to deny the same rather than set it for a fair and just hearing.

213. Moreover, the attitudes expressed with respect to the minor children Gw and Gr are alarming to say the very least. Judge Yu allows Attorney Mirabelli to dispute the children's ages without substantive investigation and he seems obviously more concerned with moving the case forward than understanding the children's situation. Such lax posture towards the voice and interests of the children also invokes procedural integrity concerns. Attorney Mirabelli falsely informs Judge Yu in open court that the minor children Gw and Gr *fired their guardian ad litem* – when in reality the GAL Vanessa Hammer sought court approval to resign from her appointment under the domestic relations proceedings in Summer 2023. Notwithstanding Mr. Mirabelli's blatantly false statement to the court, Judge Yu does not even attempt to explore the irregularity that the children would not have a voice in the domestic relations matter[21].

214. It appears as if the unfounded story promoted by Beermann LLP that Kenton Girard and Plaintiff – and the minor children Gw and Gr – are engaged in bad faith litigation tactics at every turn. Such landscape is poignantly counterfactual especially given that Jane F. Girard is an admitted child sex abuser transparently hijacking the post-decree proceedings as a

---

[21] Incidentally the child representative Joel J. Levin also resigned from the proceedings in Summer 2024. The backdrop of the Custody Proceedings is truly frightening, given that the interests of the minor children are statutorily paramount in family court in our state, and throughout our land.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

pretext to confine, starve and rape the minor children Gw and Gr again. Moreover, she has joined Plaintiff improperly WITHOUT A PLEADING for the sole purpose of harassment.

215. Finally, Judge Yu also denigrates the Plaintiff's medical conditions, under which she cannot participate in any court dates in person by specifically ordering in person attendance for Plaintiff at the May 1-2 2025 trial date in the domestic relations matter.

216. No substantive discussion of Plaintiff's documented and ADA-qualifying medical conditions took place during the February 14 2025 court date. Judge Yu completely avoided discussion of Plaintiff's needs and measures which might be required to ensure that Plaintiff has a voice in the proceedings. The mere fact by which Judge Yu set an early trial date – conflicting with Plaintiff's doctor-ordered 75 days period of quiet – indicates his sheer disregard for both the medical needs of Plaintiff and moreover his contempt for federal law.

<u>Plaintiff's Attorney Robert Holstein is also trampled by Judge Yu.</u>

217. Several times during the course of the February 14 2025 court date, Plaintiff's attorney in the domestic relations matter Robert Holstein alludes to the instant suit before this District Court. Judge Yu directs Attorney Holstein away from discussion of the same, literally saying "I don't need to hear that." In other instances, Judge Yu simply over-talked Attorney Holstein and forestalled discussion of the instant suit.

218. Astonishingly, Attorney Elster at one point describes the instant suit as "blatantly untrue" and in a manner which provides insight into the manner in which he is merely following orders from his paymasters at Beermann LLP, Judge Yu does not entertain – indeed refuses to entertain – any substantive discussion about these issues. At most, near the conclusion of the court date and upon questioning from Attorney Elster whether the May 1-2 2025 trial date was a hard date, Judge Yu indicated that such trial date might not come to pass in case of an "ADA

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

excusal". Clearly, Judge Yu views ADA accommodation as some sort of an exception to be granted, not a right which must be respected.

219. Attorney Holstein elsewhere complains there are no triable facts upon which to convene a trial, and furthermore Judge Yu gives no indication about the substance of the mystery May 1-2 2025 trial. Judge Yu shuts down Attorney Holstein's line of questioning under the theory that Attorney Holstein's appearance was limited in scope. Even under a limited scope, the issue of forcing Plaintiff to "stand trial" without a pleading having been served upon her is certainly probative for the purpose of determining whether Judge Yu is animated by an impermissible bias against Plaintiff. On the other side of the coin, forcing a person who is suffering from two ADA-qualifiying disabilities (interstitial cystitis and PTSD) to sit for a trial which should be off the docket places on display Judge Yu's contempt for Plaintiff.

The "mystery trial" is to proceed without any pleadings.

220. During the course of the February 14 2025 court date under the domestic relations proceeding Beermann LLP Attorneys Elster and Mirabelli were extremely ambiguous about what the purpose of their requested "mystery trial" would be. On the one hand, Attorney Mirabelli upon responding to Mr. Girard's grievance that there are no pleadings in the post-decree proceeding, decried Kenton Girard is repeatedly trafficking in falsehoods "without compunction." He offered that at least "three motions" had been filed. The problem with this explanation by Attorney Mirabelli is that a motion is not a pleading.

221. For his part, Attorney Enrico J. Mirabelli presented quite a strange vision for the trial in the domestic relations matter, stating:

> "Mr. Girard has not identified any witnesses thus far. He has filed no counter-petitions, no counter-motions thus far, so I don't know what his defense is going to be or how long his case is going to be. He hasn't sat for his deposition, as he told you in one of his motions, so I don't know -- I can't predict. **All I can tell you is our case will be very streamlined to make a prima fascia**

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

**case for petition for rule to show cause**[22]. Then the burden will shift to Mr. and Mrs. Girard. I don't know how long their case would take .. So if you set aside one day for us, I think we're going to complete our case in chief easily within one day." (emphasis added)

There are, of course, many serious problems with Attorney Mirabelli's vision for the "mystery trial". Setting aside the agenda for the "mystery trial", due process elements are utterly lacking.

222.    In a subsequent exchange with Judge William Yu, Attorney Elster refers to a case management order signed by a previously recused judicial officer, Hon. Fernandez. Of course, among other items that case management order stipulated dismissal for want of prosecution and a February trial. None of those items survived her recusal of course.

Plaintiff files a notice as to the ongoing constitutional violations.

223.    Hons. Scannicchio was put on notice as to the ongoing constitutional violations taking place under the domestic relations proceeding, wherein Plaintiff transmitted a letter complaining of the same on February 20 2025. In the opening, Plaintiff cautions that no court dates can take place hereunder until a) jurisdictional issues are resolved, and b) the medical treatment schedule for Plaintiff has run its course, and c) Kenton Girard makes good on his neglected work obligations at Old National Bank in early May 2025.

224.    Continuing, Plaintiff enumerates the procedural and jurisdictional quagmires which beset the domestic relations matter:

   a.    The domestic relations proceedings were terminated under "Dismissal for Want of Prosecution", as memorialized per an uncontested notice filed on December 20 2024.
   b.    Such a termination constitutes a ruling on the merits under Ill. S. Ct. R. 273.
   c.    Respondent Jane F. Girard divested herself of a right to a custody remedy wherein she asserted her Fifth Amendment right against self-incrimination under exam and questioning as to her long history of sexual abuse and rape as to the minor children Gw and Grby State's Attorney Mary Stein in late Summer 2023.

---

[22] A **Rule to Show Cause** in Illinois is a process where a) a person brings another person's failure to obey a court order to the attention of the court; b) the court can punish the person who failed to follow the order by jailing them, making them pay attorney fees, or modifying the court order; and c) the petitioner must provide proof that the judgment or order has not been followed, and the respondent can challenge the evidence.

**d.** On ~ January 14 2025 this matter was transferred from Calendar 1 to Calendar 51, wherein numerous contemporaneous court filings bore the Calendar 51 stamp. On ~ January 23 2025, this matter was transferred from Calendar 51 to Calendar 1. However, neither of these judicial orders were produced, much less filed on the docket. Because subject matter jurisdiction cannot be waived, these transfer orders must be located. Until such time, any purported subsequent judicial transfer (including to Calendar 89, under Judge William Yu) is legal fiction.

**e.** In early February 2025, before any court dates were convened by Judge Yu, Plaintiff formally requested accommodations under the ADA wherein the court (a) would respect her 75 day medical leave, (b) allow all future court participation via Zoom, (c) accord her at least 35 days to prepare opposition briefs to all motions, (d) limit court dates to presentment of a single motion, (e) stagger court dates appropriately to allow Plaintiff sufficient time to prepare and decompress between, and importantly (f) limit court dates to 30 minutes in duration.

**f.** Under Cook County rules, Marissa demanded a stay of these proceedings until Full resolution of her ADA request for accommodation and any appeal thereunder.

**g.** Per the proposed order from February 14 2025 – which to our knowledge has not been signed or approved by Judge Yu – Beermann LLP attorney Matthew D. Elster has DRAMATICALLY REDUCED the scope of the trial he would like to put on hereunder. Notably, those motions seem to constitute ONLY motions for contempt or represented moot filings, because Jane F. Girard has been divested of her right to seek a custody remedy as aforedescribed.

**h.** Incidentally, Marissa Girard has NOT been actioned with a pleading hereunder. She is in the civil analogy of a Cook County Jail detainee who has been rotting in confinement, assaulted by other detainees, without a charging bill having been filed. As a result, before any trial takes place hereunder, she must be impleaded, given appropriate time to prepare responsive pleadings, an opportunity to prepare a motion to dismiss and full hearing thereunder. Giving Respondent Jane F. Girard appropriate time to respond would easily require until on or around September 1 2025 for making it through those to-be-filed pleadings, based on the 75 day medical leave which currently prevents Marissa from engagement hereunder.

**i.** The TP Claims of Marissa Girard were filed with leave of previous judicial officer Hon. Fernandez and were timely based on the fact that she has NOT YET been impleaded hereunder. Therefore not only was the fact of Judge Yu's convening of two separate court dates outrageous and ADA violating, but also his striking of her TP Claims is an extraordinary and extreme remedy wholly without justification. These proceedings are INEXTRICABLY INTERTWINED with the TP Claims, which must be therefore un-stricken forthwith.

**j.** Kenton Girard's federal suit *Girard v. Village of Glencoe et al.*, Civil Action No. 24-cv-06882 continues to march forward. Beermann LLP is accused of running a racket in the family law court in the Domestic Relations Division wherein they own and control Hon. Scannicchio and therefore the outcomes in their clients' proceedings. Under the basic principle of federal preemption, violation of federal law is MORE IMPORTANT than violation of state law. The pause button therefore remains depressed in this Domestic Relations case.

<u>A trial cannot take place without pleadings.</u>

225.    Pleadings are the foundation of the litigation process, setting the stage for the trial by outlining the respective claims and defenses of the parties involved. The primary purpose of pleadings is to clearly define the issues in contention, enabling the court to adjudicate effectively.

226.    A pleading is defined as "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." BLACK'S LAW DICTIONARY 1270 (9th ed. 2009).

227.    The Illinois Code of Civil Procedure (Code) requires pleadings to "contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." 735 ILL. COMP. STAT. 5/2-603(a) (2012). Illinois is a fact-pleading jurisdiction. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006); *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, 26, 965 N.E.2d 1092, 1099; *Johnson v. Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1105 (Ill. App. Ct. 2004). Federal courts permit notice pleading, which is a lower standard. Under this standard, the pleader is required to set forth and allege facts that support his or her cause of action, i.e., those facts necessary for recovery pursuant to a legally recognized cause of action. *Marshall*, 856 N.E.2d at 1053; Johnson, 820 N.E.2d at 1105.

228.    A complaint is not required to set out the evidentiary facts tending to prove ultimate facts; however, it is required to allege the ultimate facts to be proved. *Chandler v. Ill. Cent. R.R. Co.*, 798 N.E.2d 724, 733 (Ill. 2003). Section 2-603(c) of the Code states, "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILL. COMP. STAT. 5/2-603(c) (2012). Section 2-612 of the Code specifies that a pleading is not substantively defective if it "contains such information [that] reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILL.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

COMP. STAT. 5/2-612(b) (2012).

229.    By contrast, Black's Law Dictionary defines a "motion" as "[a] written or oral application requesting a court to make a specified ruling or order." BLACK'S LAW DICTIONARY 1106 (9th ed. 2009); see also *Blazyk v. Daman Express, Inc.*, 940 N.E.2d 796, 799 (Ill. App. Ct. 2010) (defining motion as "'an application to the court for a ruling or an order in a pending case'" (quoting *In re Marriage of Wolff*, 822 N.E.2d 596, 601 (Ill. App. Ct. 2005))).
The Sixth Amendment has been violated.

230.    A party is in contempt of court when he or she willfully violates an order of the court. *In re Marriage of Hartian*, 222 Ill. App. 3d 566 (1991). The party that fails to comply with a judgment bears the burden of proving that compelling cause or justification for the noncompliance exists. *In re Marriage of McGuire*, 305 Ill. App. 3d 474, 484 (1999).

231.    According to the order prepared by Beermann LLP and signed by Judge William Yu on February 7 2025, the pleadings for the May 1-2 2025 trial consist in:

1.    Jane's May 25 2022 Motion to Appoint Parenting Coordinator.
2.    Jane's Aug 31 2022 Motion for Reunification Therapy.
3.    Jane's Sep 20 2022 Petition for finding of parenting time abuse directed at Kenton and Marissa.
4.    Kenton's July 11 2023 Motion to modify JPA and custody (to allow the minor children Gw and Gr to have custody of their own passports).
5.    Jane's July 13 2023 Motion to enforce JPA.
6.    Janue's Mar 13 2024 Motion to Implement the 604.10(b) report.

232.    Of particular note, the paper listed under line item (3) does not exist. Even if there were such a paper, it could not possibly implicate Plaintiff because she is not a party to any Joint Parenting Agreement and the date in question preceded her joinder by nearly a year.

233.    Neither do any of these papers seek a finding against Plaintiff, or otherwise seek relief from Plaintiff. As such the order prepared by Beermann LLP pursuant to the February 14

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

2025 court date before Judge William Yu confirms with certainty that Plaintiff is not participating in the May 1-2 2025 trial as a party in any way. Whether she is on the witness list is unknown. Kenton Girard has certainly not identified Plaintiff as a witness for the forthcoming trial, and neither has Jane F. Girard via her counsel at Beermann LLP.

234.    The order signed on February 14 2025 makes it plain that Plaintiff has no role to play in the upcoming evidentiary hearing. However, according to the testimony of Beermann LLP Attorney Enrico J. Mirabelli, the trial is calculated *to seek a finding of criminal contempt against both Kenton Girard and Plaintiff.*  Plaintiff's constitutional right to fair notice of the claims which lie against her has been violated. Moreover, under Enrico J. Mirabelli's re-casting of the trial as a *criminal contempt proceeding,* Plaintiff's Sixth Amendment rights are also being violated. Such constitutes an outrageous state of affairs and cannot be allowed to stand. Attorney Mirabelli does not get to whimsically alter the agenda for the trial. And he certainly is not a state prosecutor vested with the authority to act on behalf of the State of Illinois to bring criminal charges against Plaintiff.

235.    What is further troubling is that, pursuant to the February 14 2025 court date, Judge William Yu is content to rely on the case management order of now-recused Hon. Fernandez, dating from October 18 2024 and as amended on December 2 2024. That order references a five-day trial and identifies a much wider range of "topics", which are not overlapping with the new trial plan ordered by Judge Yu on February 14 2024.

236.    At this point in time, the "mystery trial" scope has freakishly shapeshifted. The domestic relations proceedings have been without a judicial officer – and therefore legally halted, with no one to referee the proceedings – **from November 2024 through February 2025** because of the pendency of the request for removal for cause directed to and the ultimate recusal

by Hon. Fernandez. To credit Hon. Fernandez's case management order of October 18 2024 with full force and effect would be to deny Plaintiff her constitutional rights to prepare for the "mystery trial" including propounding written discovery, issuing subpoenas, taking depositions, making prudential decisions about necessary witnesses and experts, and so forth.

237.    Plaintiff has been ordered to stand for a criminal trial – **in person**, and therefore in a calculated affront to her need for reasonable accommodations under the ADA – under a proceeding in which neither findings are levied against her nor relief is requested from her. As of this time, Plaintiff has not even been identified as a prospective witness for the "mystery trial". Suffice to say, Plaintiff's defective and unconstitutional joinder as a party in the domestic relations matter – especially in light of her established and serious ADA qualifying medical conditions – was done for an improper purpose, namely harassment. The fact that Plaintiff has been subjected to numerous motions to fine and jail her in the course of approximately twenty (20) months, seeking to improperly hold her accountable under a Joint Parenting Agreement to which she is not a party, all the while having been defectively joined in the domestic relations matter, is beyond a travesty.

238.    And now, per the February 14 2025, the scope of the "mystery trial" has morphed yet again, from the previously identified court filings (one of which does not exist) to – in the words of Beermann LLP Attorney Enrico J. Mirabelli – a contempt trial against Kenton Girard and Plaintiff. As previously analyzed, such pursuit of contempt at this late stage wherein the minor children Gw and Gr are closer than ever to attaining majority age cannot possibly be construed as coercive, but rather must be called for what it is: punitive.

239.    For sake of clarity, the minor children Gw and Gr, who are fraternal twins, are seventeen years of age, straight A honor roll students, varsity swimmers at New Trier High

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

School, run a multi-million dollar small jewelry business White Lemon Creations, and their junior year term papers recently submitted – complete with citations to law review articles – consist in a treatment of the abuses in the "pay to play" family court system including *inter alia* forced participation in "reunification" camps such as those recommended by their corrupt and disreputable Custody Evaluator Phyllis Amabile[23] under the domestic relations matter.

240. The minor children Gw and Gr have penned multiple of their own legal motions in the domestic relations matter, under which their interests are not represented by a guardian ad litem since Vanessa Hammer received court approval in the to discontinue serving in such capacity in Summer 2023. Gw and Gr appear regularly on podcasts concerning family court reform across the country. They have been pursuing a lawsuit against Beermann LLP, two Cook County judicial officers accused of taking bribes in exchange for favorable rulings for their biological mother and admitted sex abuser Jane F. Girard, and several of the family court functionaries who have harmed their interests under the Bribery Lawsuit, which has been pending before District Judge Pallmeyer since August 2024.

241. Therefore the problems besetting the "mystery trial" are beyond enumeration. For starters, criminal contempt cannot be initiated by a private party — for a defendant to receive adequate notice of the charge, due process requires that criminal contempt be initiated by the court and not by a private party. The prosecutor's office must be engaged in all steps of the process, from investigation to the preparation of a bill of charges or indictment, to the convening of pre-trial hearing and the ultimate trial.

242. At this stage, moreover, the Court has yet to issue a "Show Cause" order[24],

---

[23] Attorney Toma Makedonski, on behalf of the minor children Gw and Gr, has signaled his intention to seek injunctive relief against Phyllis Amabile and to initiate a criminal investigation via the Office of the United State Attorney General.

[24] It also goes without saying in the context of a criminal proceeding, an order to a criminal defendant to appear in court to face questioning and to be present before the fact finder, under a hearing

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

although according to Attorney Enrico J. Mirabelli, the court order from February 14 2025 setting a trial for May 1-2 2025 is just that. Furthermore, because the contempt sought concerns alleged violations of the Joint Parenting Agreement – to which Judge William Yu is not a direct witness – a full jury must be empaneled[25], a true bill of charges or an indictment must be adduced and signed off by the Cook County Prosecutor's Office, and lest we forget, Judge William Yu is not a criminal judge and the matter would necessarily have to move to a criminal court.

243. Plaintiff propounded a petition for substitution for cause directed at Judge William Yu. In turn, Judge Yu transferred the proceedings back to Calendar 1 for hearing under that matter, in accordance with 735 ILCS 5/2-1001(a)(3). However, not in keeping with statute, Judge Yu proceeded to convene another court date on February 25 2025 when the proceedings were already demonstrably transferred to Calendar 1, per Judge Yu's own signed order.

244. Acting as Judge Yu's de facto "enabler", Attorney Matthew D. Elster goaded Plaintiff to join said court date and sent a number of missives to her and Kenton Girard while Judge Yu apparently "awaited" their joining the proscribed court date on Calendar 89. Later in that day, Plaintiff and Kenton Girard jointly penned a "Notice of Jurisdictional Trespass" warning Judge Yu from (a) convening any court dates on Calendar 89 prior to the adjudication of the pending petition seeking his removal for cause, and (b) issuing any directives or signing any court orders in relation to same.

245. Duly warned, as of the date of this filing, Judge Yu has not dared sign a proposed order penned by Attorney Matthew D. Elster, under which another court date would be set in

---

in which his or her liberty is at stake requires form orders bearing the official seal of the state. Such orders for criminal process must be prepared by a prosecutor, not by a private attorney as here.

[25] Summary proceedings under a contempt charge wherein the judge acts as the fact finder are constitutionally sound only wherein the judge is a direct witness to the alleged contempt. The instant scenario is a classic "indirect criminal contempt" setup, because the judge does not have direct firsthand knowledge of whether the Joint Parenting Agreement is being followed by the parties bound thereunder.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

mid-March in order for Judge Yu to rule on a stack of pending, unresolved motions from Beermann LLP.

## COUNT I - VIOLATION OF FIRST AMENDMENT
### 42 U.S.C. § 1983; Fernandez, Scannicchio, Ahern

246.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

247.    Defendants, acting under color of state law, deprived Plaintiff of her rights under the First Amendment to the United States Constitution by denying her admission to a public court proceeding on October 18 2024.

248.    Defendants' refusal to admit Plaintiff to the October 18 2024 proceedings violated a well-established First Amendment right, the right to attend public court proceedings, and therefore Defendants are not entitled to qualified immunity.

249.    Defendants' refusal to admit Plaintiff to the October 18 2024 proceeding is not subject to judicial immunity because, inter alia, it was an administrative determination and not part of any judicial proceeding.

## COUNT II - VIOLATION OF RIGHT TO IMPARTIAL PROCEEDINGS
### 42 U.S.C. § 1983; Fernandez, Scannicchio, Ahern, Yu

250.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

251.    By accepting bribes to render specifically requested favorable decisions to Beermann LLP clients, Defendants Scannicchio and Ahern cannot claim judicial immunity here.

252.    In 1927, the Supreme Court addressed a claimed violation of the right to an impartial judge. *Tumey v. Ohio*, 273 U.S. 510 (1927) involved a challenge to a conviction in a municipal court in which the mayor presided as the judge, for violation of the state's prohibition law, which resulted in a fine, a fraction of which was allocated to the mayor "in addition to his regular salary." *Tumey*, 273 U.S. at 518–19. The Court held that this improper financial motive violated the defendant's right to an impartial judge.

253. With Defendants Scannicchio and Ahern both on the payroll of Beermann LLP, the proceedings are not impartial. Wherein Hon. Fernandez has propounded numerous orders and rulings *in the period since she divested herself of jurisdiction over the Custody Proceedings on October 18 2024*, the proceedings under her are neither impartial.

254. Plaintiff has suffered injuries, damages and losses as a result of the violation of and interference with Plaintiff's constitutionally protected right to an impartial judge including numerous adverse decisions which would not have been rendered by a fair, impartial judge.

### COUNT III - VIOLATION OF TITLE II of ADA
*42 U.S.C. § 1983; All Defendants except Jane F. Girard*

255. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

256. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disabilities which are specifically recognized under the ADAAA of 2008.

257. The ADA Title II prohibits disability discrimination by all public entities at the local level, e.g., school district, municipal, city, or county, and at state level.

258. Under 42 U.S.C. § 12132, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

259. Defendants' conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA as well as a willful and reckless disregard of Plaintiff's protected rights in violation of implementing regulation 28 C.F.R. Part 35. Plaintiff's repeated and consistent requests for Zoom access to the legal proceedings were not an undue burden on Defendants, yet Defendants intentionally refused to accommodate Plaintiff's disabilities.

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

260.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of earnings, loss of income, mental anguish, distress, physical and debilitating symptoms of PTSD and interstitial cystitis, humiliation, and loss of enjoyment of life.

## COUNT IV - VIOLATION OF THE REHABILITATION ACT OF 1973
### 42 U.S.C. § 1983; *All Defendants except Jane F. Girard*

261.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

262.    The Rehabilitation Act of 1973 and its implementing regulations require that no qualified individual, solely by reason of her actual or perceived disability, be subjected to discrimination under any program or activity receiving Federal financial assistance. 41 C.F.R. § 60-741.2(o)(1); 45 C.F.R. § 84.3(j)(2)(i).

263.    The Domestic Relations Division of the Cook County Courts receives federal grant funds to assist access to the courts by all persons. Defendants' inexplicable and cruel denial of Zoom access to Plaintiff places them in the crosshairs of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulation for recipients of federal funding.

## COUNT V - VIOLATION OF SIXTH AMENDMENT
### 42 U.S.C. § 1983; *Scannicchio, Yu, Mirabelli, Elster*

264.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

265.    Attorneys Mirabelli and Elster, as officers of the court and custodians of the post-decree Custody Proceedings which they incepted on behalf of Jane F. Girard, bear responsibility for taking action under color of state law to force Judge Yu to set the "mystery trial" – lacking pleadings altogether – to be held May 1-2, 2025.

266.    Attorneys Mirabelli and Elster – as veteran attorneys and experienced practitioners in the Domestic Relations Division – know better than to force Judge Yu to set a criminal proceeding against Plaintiff without pleadings, without a charging instrument, without

the participation of the prosecutor's office and so forth. They plainly took advantage of their posture (likely due to bribery, per the Bribery Lawsuit) before the Domestic Relations Division in which judges merely do their bidding, the Constitution be damned, in order to knowingly harass Plaintiff and improperly leverage her resulting pain and suffering in a perverse attempt to achieve a favorable result for their client, admitted child sex abuser Jane F. Girard.

267.    Judge Yu, for going along with the grotesque charade and knowingly setting a trial lacking a pleading, a trial which seeks imposition of contempt and is criminal in nature, is responsible for disregarding the Sixth Amendment rights of Plaintiff. Because he set the "mystery trial" via his courtroom in Calendar 89, fully apprised that previous judicial transfer orders were missing and unfiled on the docket, Judge Yu is amenable to suit hereunder.

268.    Hon. Scannicchio – as Hon. Yu's supervising judicial officer – also bears responsibility for Judge Yu's grotesque affront to the Constitution. Like Judge Yu, Hon. Scannicchio knowingly emplaced the Custody Proceedings on Calendar 89 without authority and thereby acted wholly without jurisdiction to get the matter before Judge Yu.

## COUNT VI - VIOLATION OF RIGHT TO FAIR NOTICE OF CLAIMS
### 42 U.S.C. § 1983; Scannicchio, Yu, Mirabelli, Elster

269.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

270.    By failing to commence action against Plaintiff with a pleading, in violation of the civil procedure rules in Illinois, Attorney Mirabelli is responsible for Plaintiff's deficient joinder.

271.    By continuously maintaining for twenty (20) months that Plaintiff is an indispensable party under the Custody Proceedings, Attorneys Mirabelli and Elster have knowingly and deliberately forced the Domestic Relations Division – notably Judge Yu and his supervisor Hon. Scannicchio – to maintain the pendency of the proceeding against Plaintiff. The proceeding has caused aggravation of her interstitial cystitis and PTSD, frustration, distress and

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

mental anguish and invaluable loss of time (including business loss for her therapy business and attorneys fees).

272.    It is axiomatic that Plaintiff is entitled to know the charges against her under the "mystery trial" set for May 1-2, 2025 in order to have any hope of preparing a reasonable defense for the fast-approaching "mystery trial" wherein her freedom is at stake.

273.    Hons. Yu and Scannicchio are amenable to suit hereunder because the proceeding was maintained on Calendar 89 and the "mystery trial" set for a date certain wholly without jurisdiction and lacking the filing of required judicial transfer orders on the docket. ,

## COUNT VII - ABUSE OF PROCESS
### *42 U.S.C. § 1983; Jane F. Girard, Mirabelli, Elster*

274.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

275.    Jane F. Girard masterminded the wrongful joinder – executed and maintained under the leadership of Attorneys Mirabelli and Elster – of Plaintiff for the ulterior purpose of causing maximum pain and suffering to Plaintiff, as a form of improper retribution for marrying Kenton Girard.

276.    When Plaintiff was "actioned" with papers under her deficient joinder, she was provided a Motion to Join Third Party on which she was neither in the caption or otherwise named. Is it neither normal or customary to commence proceedings against a new party with a motion, nor is it normal or customary to commence proceedings against a new party with a paper which does not name that party. Any subsequent papers which might be retroactively construed as pleadings against Plaintiff do not operate to cure the violations at the time of joiner under 735 ILCS 5/2-201(a), wherein Plaintiff was not actioned with a complaint/pleading.

277.    As a result, the elements of abuse of process are satisfied.

278.    Attorneys Mirabelli and Elster are also liable hereunder because they knew at all times they had no viable or conceivable claim against Plaintiff. They used their influence and clout with the Domestic Relations Division to improperly join Plaintiff, and then by filing countless motions seeking her fining or jailing, in a manner which transparently demonstrates the true purpose of her joinder: harassment and leverage against Kenton Girard. Attorneys Mirabelli and Elster cannot hide behind erstwhile judicial officer William S. Boyd's approval of their plans to join Plaintiff to avoid liability hereunder: they are solely responsible for violating the requirements of actioning Plaintiff with a complaint/pleading under 735 ILCS 5/2-201(a).

### COUNT VIII - NEGLIGENCE
*All Defendants (42 U.S.C. § 1983 only as to Cook County Defendants)*

279.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

280.    All of the Defendants hereunder owed a duty of care to Plaintiffs, including a duty to make accommodations and to provide courtroom access for Plaintiff owing to her disabilities in keeping with the requirements under Title II of The Americans with Disabilities Act of 1990.

281.    However, those duties were breached wherein the Defendants intentionally refused to accommodate Plaintiff with the ability to participate in court dates via Zoom. In the case of Judge Yu, he knowingly convened court dates adverse to Plaintiff's interests – including striking her TP Claims without legal basis – knowing that she was medically incapable of participating in a shocking affront to Plaintiff's qualifying ADA medical conditions.

282.    Those duties were further breached wherein additional staff from Domestic Relations including Hons. Scannicchio and Ahern and clerk Adam P. Monreal Esq, despite full knowledge of the fight over ADA accommodations as to Plaintiff, and the violations of Plaintiff's First Amendment Rights on October 18 2024, stayed on the sidelines of the Custody

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

Proceedings and refused to restore Plaintiff's access to the courtroom proceedings. Finally, Jane F. Girard had a duty not to abuse process by vexatiously and improperly joining Plaintiff.

283.    As a result of these breaches of duties, Plaintiff has been harmed: (a) she has been denied access to the court dates in the Custody Proceedings, (b) she has experienced severe emotional distress and mental anguish and physical worsening of her symptoms under PTSD and interstitial cystitis, (c) her therapy and counseling business has suffered a setback measured in lost revenues and clientele, and (d) she has suffered the indignity of these violations. The judicial defendants cannot claim immunity here: Hon. Fernandez/Hon. Ahern disregarded Plaintiff's ADA rights after their court divested itself of jurisdiction, and Hon. Yu's Calendar 89 never acquired jurisdiction owing to missing judicial transfer orders.

## COUNT IX - DECLARATORY RELIEF
### *All Defendants except Jane F. Girard*

284.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

285.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendants denies, that its courtroom access policies deny the full and equal access to the services and facilities of its court system, which Defendants operate and controls, fails to comply with applicable laws including, but not limited to, Title II of the Americans with Disabilities Act.

286.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## COUNT X - INJUNCTIVE RELIEF
### *All Defendants except Jane F. Girard*

287.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

288.    Plaintiff seeks injunctive relief calculated to cease the equal protection violations and other civil rights violations it is and has been committing against Plaintiff, and to establish

*Marissa Girard v. Rossana P. Fernandez et al. – FAC*

and disseminate policies and procedures that ensure that ADA accommodations are not weaponized again.

289.    These policies and procedures should include: 1) training members of the Domestic Relations Division staff to properly field requests from persons with disabilities; 2) proper screening for actionable disabilities; 3) contours of reasonable accommodations; 4) preserving investigation evidence; and 5) publishing requests for ADA accommodations in order to enhance visibility and accountability to the public.

WHEREFORE, Plaintiff prays this Court grant the following relief:

1)  Compensatory damages in an amount to be determined at trial;
2)  Attorneys fees and costs under 42 U.S.C. § 1988 and under 29 U.S.C. § 794a(b);
3)  Nominal damages for violations of constitutionally protected rights;
4)  Such other relief that this Court may deem just, equitable and proper;

Dated: March 09 2025                    Respectfully Submitted,

Marissa Girard, *In Pro Se*
/s/ Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
Email: marissadakis@gmail.com
Tel: 773-425-4393

## CERTIFICATE OF SERVICE

The undersigned certifies that this paper was electronically filed with the clerk of this Court on March 9 2025 and was provided via email to the attorneys who have filed appearances in this matter.

/s/ Marissa Girard

𝓘 𝒸

FILED

APR 28 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MN

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JANE F. GIRARD,

        Plaintiff,

        v.

KENTON GIRARD and
MARISSA GIRARD,

        Defendants.

_____

KENTON GIRARD,

        Crossclaim Plaintiff,

        v.

MARISSA GIRARD,

        Crossclaim Defendant.

_____

MARISSA GIRARD,

        Counterclaim Plaintiff &
        Third Party Plaintiff,

        v.

JANE F. GIRARD,

        Counterclaim Defendant,

VANESSA L. HAMMER,
KAREN V. PAIGE,
CANDACE L. MEYERS and
DETECTIVE RYAN MCENERNEY,

        Third Party Defendants.

Civil No.

25-cv-04586

District Judge Judge Jeremy C. Daniel
Magistrate Judge Heather K. McShain
Random Cat 2

## CROSSCLAIM DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant/Crossclaim Defendant

Marissa Girard now files this Notice of Removal ("Notice") for the action filed in the Circuit

Court of Cook County, State of Illinois, case number 2015-D-009633, styled as *Jane Girard v.*

1   A2   *Notice of Removal by Crossclaim Defendant Marissa Girard*

*Kenton Girard* ("State Court Action").

Pursuant to 28 U.S.C. § 1446(a), the process and pleadings served upon Defendant/Crossclaim Defendant Marissa Girard through April 28 2025 are attached as **Exhibit A**, and the orders served upon Defendant/Crossclaim Defendant Marissa Girard through April 28 2025 are attached as **Exhibit B.**

On May 26 2023, Jane Girard filed an alias summons (**Exhibit A**) which references a "Motion to Add Third Party". About a month later, Marissa Girard was served with said summons together with an accompanying paper entitled "Motion to Join Third Party" filed on March 8 2023 (**Exhibit A**). That "Motion to Join Third Party" is a motion – not a pleading – seeking court permission for taking the steps required to join Marissa Girard as a defendant, does not even include Marissa Girard in its caption, and therefore constitutes deficient joinder under 735 ILCS 5/2-201(a).

On April 28 2025, Defendant/Crossclaim Plaintiff Kenton Girard served a declaratory judgment pleading ("DJ Crossclaims") on Marissa Girard, which paper raises federal questions, owing to a Postnuptial Indemnification Agreement which provides for indemnification by Kenton as to Marissa's reasonable and necessary legal fees if her rights under the Constitution or federal law are *violated* owing to a course of action by Jane F. Girard and therefore raises federal and Constitutional questions.

## I. This Notice is Timely.

Removal of this action is timely under 28 U.S.C. § 1446(b), which provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" In this case,

Defendant/Crossclaim Defendant Marissa Girard has repaired to federal court on the very same day she was served with the removable pleading from Kenton Girard.

## II.  **The Northern District of Illinois is the proper venue.**

Venue in this District is proper under 28 U.S.C. § 1441(a) because the Circuit Court of Cook County, Illinois (where the State Court Action is pending) is within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice is being filed with the clerk of the Circuit Court for Cook County and will be served upon Plaintiff contemporaneously with this filing. A copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit C**.

## III.  **Federal Jurisdiction Exists.**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Crossclaim Plaintiff Kenton Girard has brought claims which raise federal questions. Because the entire pleading arises under the same "case or controversy," this Court "shall have supplemental jurisdiction over all other claims." 28 U.S.C. § 1367.

The recent Supreme Court decision under *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ___ (2019) established that 28 U. S. C. §1441(a) does not permit a third-party counterclaim defendant[1] to remove a claim. However, the posture here is noticeably different: (a) Marissa Girard is an "original defendant" under the State Court Action, which implicated a federal question only at the moment when her co defendant filed a crossclaim against her; and (b) the Federal Rules of Civil Procedure distinguish between counterclaims and crossclaims (Rule 13).

Continuing, the Domestic Relations Exception does not apply here because Marissa Girard was never actioned with a pleading, much less a pleading seeking domestic relations style

---

[1] Under Supreme Court Justice Thomas's opinion, "third-party counterclaim defendant" refers to a party first brought into the case as an additional defendant to a counterclaim asserted against the original plaintiff.

relief. To provide even more clarity, Marissa Girard has neither a biological connection nor a claim to parental responsibility as to the minor children of Kenton Girard and Jane F. Girard.

The State Court Action appears to constitute a post-decree effort to adjudicate the custody of the minor children, although it is difficult to decipher lacking pleadings filed by Plaintiff Jane F. Girard, and because of the most recent description of the trial under the State Court Action provided by Beermann LLP attorney Enrico J. Mirabelli on February 14 2025 as a "criminal contempt trial against Kenton & Marissa Girard". Moreover, the Trial Order of Hon. William Yu from the same date references a "Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa" – an alleged pleading which does not exist (and by the description, is nonsensical – Marissa Girard has no parenting rights to the minor children) and which paper has certainly not been served on Marissa Girard.

The minor children have already been identified as victims of sexual abuse at the hands of their biological mother, Jane F. Girard, who asserted her Fifth Amendment right against self-incrimination under questioning by Prosecutor Mary Stein from the Illinois State's Attorneys Office on September 7 2023. From a civil standard, Jane F. Girard is an admitted child sex abuser and **therefore divested of the right to seek a custody remedy in any court of law**. The federal government has an interest in protecting violent/sex crime victims, and parental rights under the Fourteenth Amendment are implicated.

If any questions arise as to the propriety of the removal of this action, Crossclaim Defendant Marissa Girard requests the opportunity to supplement this Notice. Crossclaim Defendant expressly reserves all objections she may have to the DJ Crossclaims.

WHEREFORE, Crossclaim Defendant Marissa Girard hereby gives notice that the State Court Action has been removed to this Court.

Dated: April 28 2025

Respectfully Submitted,

for Crossclaim Defendant Marissa Girard:

/s/ Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
Email: marissadakis@gmail.com
Tel: 773-425-4393

## CERTIFICATE OF SERVICE

The undersigned certifies that this paper and all attachments were (a) electronically filed with the clerk of this Court on April 28 2025, (b) provided via email to the attorneys who have filed appearances in this matter as indicated below, and (c) provided via email and hand-delivery to Kenton Girard, who is pro se hereunder:

kpaige@beermannlaw.com, for Jane F. Girard
jduffy@smbtrials.com, for Vanessa Hammer
kimberly.blair@wilsonelser.com, for Karen Paige and Candace Meyers
jkivetz@jsotoslaw.com, for Ryan McEnerney

*for delivery to Kenton Girard:*
965 Forestway Drive
Glencoe, IL 60022
Email: kg5252@yahoo.com

/s/ Marissa Girard

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# U.S. District Court for the Northern District Of Illinois
## Appearance Form for Pro Se Litigants

Information entered on this form is required for any person filing a case in this court as a pro se party (that is, without an attorney). **Please PRINT legibly.**

Case Title: Girard vs. Girard et al _____       Case Number: _____

An appearance is hereby filed by the undersigned as a pro se litigant:

Name: Marissa Girard _____

Street Address: 965 Forestway Drive _____

City/State/Zip: Glencoe, IL 60022 _____

Phone Number: (773) 425-4393 _____

_____          4.28.2025 _____
            Signature                                        Executed on (date)

## REQUEST TO RECEIVE NOTICE THROUGH E-MAIL

If you check the box below and provide an e-mail address in the space provided, you will receive notice via e-mail. By checking the box and providing an e-mail address, under Federal Rule of Civil Procedure 5(b)2(E) you are waiving your right to receive a paper copy of documents filed electronically in this case. You should not provide an e-mail address if you do not check it frequently.

[X]     I request to be sent notices from the court via e-mail. I understand that by making this request, I am waiving the right to receive a paper copy of any electronically filed document in this case. I understand that if my e-mail address changes I must promptly notify the Court in writing.

marissadakis@gmail.com _____
**E-Mail Address (Please PRINT legibly.)**

Rev. 06/23/2016

A2     [If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**Exhibit A**

FILED
3/8/2023 3:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 32
21782997

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF    )
                                  )
KENTON GIRARD,                    )
                  Petitioner,     )
                                  )
        and                       )    No.    2015 D 009633
                                  )
JANE GIRARD,                      )
                  Respondent.     )

### MOTION TO JOIN THIRD PARTY

NOW COMES the Respondent, JANE GIRARD ("Jane"), by and through her attorneys, BEERMANN LLP, pursuant to Section 5/2-406 of the Illinois Code of Civil Procedure (735 ILCS 5/2-406), and in support of her Motion to Join Third Party, Jane respectfully states as follows:

1.    Two (2) children, twins, were born to the parties as a result of their marriage, namely: Gwen Girard, presently fifteen (15) years old; and Grace Girard, presently fifteen (15) years old.

2.    On November 4, 2015, this Honorable Court entered a Judgment for Dissolution of Marriage. In conjunction with the entry of the Judgment for Dissolution of Marriage, this Court approved and entered the parties' Joint Parenting Agreement Custody Judgment ("JPA"). A true and accurate copy of the JPA is incorporated herein by reference only as **Exhibit A**.

3.    The JPA provided for an equal, 50/50 parenting time schedule, which was a "5-2-2-5" schedule.

4.    For approximately the past four (4) years, the parties have followed a week on-week off parenting time schedule such that the minor children are with Jane for one (1) full week and then with Kenton the next week, alternating on Fridays after school. Although the parenting time schedule in the JPA is a 5-2-2-5 schedule, the parties mutually agreed to via email to modify

A2    1

the 5-2-2-5 schedule to an alternating week schedule to meet the children's growing and changing needs and to create more consistency for the children.

5.      Since the entry of the Judgment for Dissolution of Marriage and the JPA, the Petitioner, KENTON GIRARD ("Kenton"), has remarried.[1]  Kenton and his spouse, Marissa Girard, have resided together since 2015.

6.      After entry of Judgment, Jane and Kenton had successfully co-parented the minor children for over five (5) years without major incident.

7.      Kenton, with Marissa's support and influence, has alienated the minor children from Jane beginning in mid-2020.  Upon information and belief, Marissa has been instrumental in the ongoing alienation perpetrated by Marissa and Kenton to damage the relationship between Jane and the minor children.

8.      Marissa, a *stepmother*, has muscled her way in to the children's lives as if she was their mother.  Beginning 2020, Marissa has ignored all appropriate boundaries as a stepparent.  Since approximately fall 2022, Marissa has essentially taken over Jane's role as the children's mother.  This includes not only spending time with the children – who now refuse to see their mother – but also making many day-to-day decisions.

9.      Marissa has made "significant decisions" (pursuant to 750 ILCS 5/602.5) but also

10.     Marissa, upon information and belief, has inappropriately inserted herself into parenting decisions (which should only be made by Kenton and Jane), and has manipulated the minor children's feelings/thinking.  Further, Marissa has intimidated, threatened and harassed Jane.  By way of example:

      a. Marissa has, on numerous occasions, held herself out to be the minor children's mother, including, but not limited to, the following incidents:

---

[1] Kenton married Marissa within approximately 1 month of the parties' divorce.

   i. In or about December 2021 and January 2022, Kenton and Marissa sent numerous emails to the superintendent of the minor children's school regarding the COVID vaccination and testing policies of the children's school. Gwen was a participant in the school musical, and thus was required to participate in the COVID testing. Kenton and Marissa referred to themselves as Gwen's parents and to Gwen as "our daughter." Kenton and Marissa did not include Jane on any of the email communication. Jane only discovered the email communication because the superintendent forwarded the email communication to Jane.

   ii. In or about September 2022, at Parent's Night at the minor children's school, Kenton and Marissa introduced themselves to the class of parents and children as "Grace's parents," causing confusion and an uncomfortable atmosphere as Jane was in the room and had already introduced herself as Grace's mom.

   iii. On October 21, 2022, Jane received communication from the minor child's former doctor at Kenilworth Medical Associates indicating that a woman called claiming to be Jane. Kenilworth Medical Associates forwarded a copy of a phone message which indicated that "(Mom) Jane" had called the office requesting a change in doctors. The message included a call-back number, which is Marissa's personal cell phone number. A true and accurate copy of the October 21, 2022 phone message is attached hereto as **Exhibit B.**

   iv. On October 24, 2022, Marissa emailed Kenilworth Medical Associates stating, "… - just following upon this request as **my daughter** has her appt with new provider this week." Kenton then sent an email to Kenilworth Medical Associates stating, "I am authorizing Marissa Girard … **to make any other decision needed regarding Grace Girard's medical records at Kenilworth Medical Associates**." A true and accurate copy of the October 24, 2022 email correspondence is attached hereto as **Exhibit C.**

b. On or about August 5, 2020, Marissa texted Jane individually requesting that Kenton, Jane and Marissa, together, attend family therapy. Jane then suggested meeting with Sasha Von Varga, with whom the parties have previously met and who is aware of the family history and dynamics. Marissa moved the conversation to a group text between Jane, Kenton and Marissa, whereby Marissa stated that she has "more expertise than both of you" ('you' referring to Kenton and Jane) regarding the minor children's needs and best interests. Marissa then continued to text disparaging, insulting and argumentative messages to Jane regarding the children. Thereafter, Marissa (who initially requested that the parties and Marissa engage in therapy) stated that she and Kenton would actually *not* engage in therapy. At no point did Kenton engage or put a stop to Marissa's combative and offensive behaviors and comments. A true and accurate copy of the text messages from Marissa to Jane on August 5, 2020 are attached hereto as **Exhibit D.**

c. On or about May 11, 2021, after an incident whereby Kenton had yelled and threatened Jane in relation to his demands that Jane purchase the minor children Google Chromebooks, Marissa sent an inappropriate and unsolicited text regarding child support to Jane saying "also fyi kenton has taken a significant pay cut. He is stressed. Renters aren't paying. So it's a lot right now for him. // pls read between the lines… a significant reduction in income impacts your payments. So I would not push too far on this." A true and accurate copy of the May 11, 2021 text messages from Marissa to Jane are attached hereto as **Exhibit E.**

d. On or about August 29, 2022, Marissa and Kenton verbally attacked Jane in public and in front of the minor children at Grace's art show, demanding that Jane acquiesce to Marissa and Kenton's unilaterally-determined parenting time schedule change (which was to eliminate Jane's parenting time). Marissa threatened Jane, stating that Marissa has "all the money to take [Jane] to court and make sure the girls are never with you." Marissa and Kenton further threatened that if Jane did not agree to the parenting time schedule change right in that moment, then Kenton would file to "have custody of the girls" and to keep the girls from Jane. Marissa and Kenton continuously pulled both Grace, who was presenting at the art show, and Gwen away for private conversations away from Jane. Kenton and Marissa demanded that the minor children tell Jane that the children wanted to live with Kenton and were yelling that Jane is liar and that Jane was calling the minor children liars in front of the children and other parents/children at the art show.

e. On December 9, 2022, without discussion or agreement between the parties, Marissa, , took the minor children to Jane's residence while Jane was out of town. Jane expressly told the children that she did not want them in her home unattended and to coordinate a time once she was back in town. The children disregarded their mother completely and went into the house anyway, setting off the Jane's security system. Marissa drove the children and actively encouraged and supported the children entering their mother's home to remove many of the minor children's belongings and items from Jane's residence knowing Jane was out of town. Jane viewed the garage security camera footage and saw Marissa pull up in her car, exit her car, and assist the girls in loading a majority of their belongings (clothes, blankets, stuffed animals, photos, books, posters, etc.) from Jane's residence.

f. The minor children had been treated by their pediatrician since birth. On or about January 6, 2023, Jane reviewed her insurance coverage and benefits (Jane covers the children on her health insurance policy). In reviewing the same, Jane saw that Gwen went to a new pediatrician on December 28, 2022 to be treated for an ear infection. After speaking with the new pediatrician Jane was informed that the minor children had their annual physicals scheduled. Jane was not made aware of these appointments when they were scheduled.

g. On January 16, 2023 (10 days later), both minor children were scheduled for their annual physical exams. Jane attended the appointment, as she has always done in

the past. Kenton brough Gwen to the appointment and Marissa arrived shortly thereafter with Grace. Once in the exam room, Marissa asked Kenton, loud enough for Jane and both minor children to hear, to go to the front desk to have "someone make Jane leave." In order to avoid further confrontation in front of the minor children, Jane voluntarily left the exam room and went to the waiting room. Both Kenton and Marissa remained in the exam room with both minor children for the **entirety** of their physical exams, though Marissa is *__not__* the minor children's mother nor guardian. Marissa then left with Grace, directing Grace away from Jane and did not encourage any interaction between Grace or Jane, and instead completely ignored Jane in the waiting room.

h. Upon information and belief, Marissa has repeatedly insinuated directly to the minor children that they may not be "safe" while at Jane's residence, along with telling the minor children that Jane "needs therapy," that the children are "victims," and encouraging the children to alienate themselves from Jane to protect themselves from her.

i. For the past two (2) or more years, Marissa has also actively reached out to Jane to criticize Jane, Jane's parenting, and Jane's relationship with the children. In her criticisms, Marissa refers to her educational background and her claimed professional history as a counselor in an attempt to bolster her reasonings and allegations against Jane that Jane is not a "good parent" and that Jane "needs therapy."

11. It is clear that Marissa has overstepped her role as the children's stepparent, inserting herself into decisions related to the children and has been a controlling, demanding voice in conversations relating to the children, though she **is not the children's mother.**

12. Marissa completely disregards all boundaries as a stepparent. Kenton actively encourages Marissa's behaviors.

13. Marissa and Kenton have encouraged the children to reject Jane. The children, who used to spend 50% of their time with both parents, now have spent 0 overnights with their mother since August 28, 2022, continually refuse Jane's invitations to spend time together, rarely reply to any of Jane's text messages/phone calls/emails, and simply ignore any attempt Jane makes to connect with her children.

14. Through Marissa's manipulative actions over the past two or more years, Marissa

has damaged the co-parenting relationship between Jane and Kenton and the minor children's relationship with the minor children.

15.     Marissa's behaviors, which are supported by Kenton, are causing long-lasting mental and emotional harm to the minor children through Marissa's efforts to remove Jane from the children's lives.

16.     Section 5/2-406(a) of the Illinois Code of Civil procedure provides that "[i]f a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in." 735 ILCS 5/2-406(a) (Westlaw, 2023).

17.     A party is necessary for a full determination of the issues when he/she is:

> [O]ne whose presence in the suit is required for any three reasons: (1) to protect an interest which the absentee has in the subject matter of the controversy which would be materially affected by the judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy.
>
> *In re Marriage of Schweihs*, 222 Ill.App.3d 887, 894 (1991) (Citing *Lerner v. Zipperman*, 69 Ill.App.3d 620, 623 (1979).

18.     Joining Marissa as a third party in this matter is essential to allow the Court to make a full determination of the parenting issues. Put another way, the Court must join Marissa in this action so this court can "make a complete determination of the controversy," including Marissa's actions, behaviors and influence over the minor children.

19.     Dr. Phyllis Amabile is the Court's evaluator pursuant to 750 ILCS 5/604.10(b). Dr. Amabile must also have the ability to interview Marissa.

20.     Moreover, Marissa should be joined as a third party in order for the Court to adjudicate all matters pertaining to the minor children, and ultimately for the Court to enter all appropriate orders regarding Jane, the minor children, and Kenton, as well as Marissa.

21.     Based on the foregoing, Marissa has placed herself at the center of this litigation by exerting care and exercise over the minor children, behaving in an inappropriate and controlling manner towards the children, and harassing and threatening Jane. As such, she should be formally joined in this litigation so that the Court can properly adjudicate these issues regarding the parties' minor children, and Jane's role as their mother.

**WHEREFORE**, the Respondent, **JANE GIRARD**, by and through her attorneys, BEERMANN LLP, respectfully requests the following:

A.     For entry of an Order joining Marissa Girard as an additional third-party respondent in this cause with summons to issue; and

B.     For such other and further relief as this Honorable Court deems equitable and just.

Respectfully submitted,
**BEERMANN LLP**

One of the Respondent's Attorneys

Karen V. Paige | Candace L. Meyers
Molly M. Carmody
**BEERMANN LLP**
*Attorneys for the Respondent*
161 North Clark Street – Suite 3000
Chicago, Illinois 60601
T: (312) 621-9700
Firm ID: 80095
kpaige@beermannlaw.com
clmeyers@beermannlaw.com
mmcarmody@beermannlaw.com

A2     7

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and, as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true.

JANE GIRARD

FILED
5/26/2023 2:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 32
22905247

**Summons/Alias Summons**                              **(09/09/21) CCDR 0001 A**

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☐ Legal Separation  ☐ Allocation of Parental Responsibilities
        ☐ Visitation (Non-Parent)  ☐ Support  ☐ Parentage of:  [X] Marriage

KENTON GIRARD
                                    Petitioner    Case No. __2015 D 009633__

                    and                           Calendar __32__

JANE GIRARD              Respondent
                                                  ** Please serve the Respondent at:
MARISSA GIRARD    Third Party Respondent
* Hearing/Return Date:                            Marissa Girard

_____ at _____     AM    PM              965 Forestway Drive, Glencoe, IL 60022

* Applies to Suburban Districts ONLY

2105 - Summons - Retd - Substitute Service       2221 - Alias Summons - Retd N.S.
2106 - Alias Summons - Retd - Substitute         2700 - Return of Service P.S. - Order of
         Service                                          Protection
2120 - Summons - Retd P.S.                        2702 - Return of Service N.S. - Order of
2121 - Alias Summons - Retd P.S.                          Protection
2123 - Summons Retd - Served at                   2708 - Return of Service of Order - P.S.
         Correctional Facility                    2710 - Return of Service of Order N.S.
2220 - Summons - Retd N.S.

                          ☐ SUMMONS   ☑ ALIAS SUMMONS

TO THE RESPONDENT:

The Petitioner has filed a legal proceeding against you for one or more of the following:

☐ Legal Separation  ☐ Declaration of Invalidity  ☐ Custody  ☐ Child Support
☐ Praecipe for Summons*
☑ Other: __Motion to Add Third Party__

**YOU ARE SUMMONED** and required to file your **appearance and response no later**
**than** • **thirty (30) days**    **seven (7) days after service of this summons,** not counting the
day of service.
If you fail to file your written appearance within the time stated above, a default judgment
may be entered against you and the court may grant the petitioner all or part of the relief
that s/he is requesting in her or his petition.

        **Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
                          **cookcountyclerkofcourt.org**

A2                         Page 1 of 3

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

**TO THE OFFICER:** This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed.

5/30/2023

Atty. No.: 80095

Atty Name: Beermann LLP (Karen V. Paige)

Atty. for: Respondent, Jane Girard

Address: 161 North Clark Street, Suite 3000

City: Chicago

State: IL Zip: 60601

Telephone: (312) 621-9700

Primary Email: kpaige@beermannlaw.com

Witness: _____

Date: 5/26/2023 2:21 PM IRIS Y. MARTINEZ _____

Circuit Court Clerk

Date of Service: _____
(To be inserted by officer on copy left with Respondent or other person):

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
A2 Page 2 of 3

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the apptopriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES
### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
A2    cookcountyclerkofcourt.org
Page 3 of 3

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

| STATE OF ILLINOIS, CIRCUIT COURT | PETITION FOR ORDER OF PROTECTION | FILED |
|---|---|---|
| **COOK** COUNTY | | May. 23, 2024 |

**STATE OF ILLINOIS,**
**CIRCUIT COURT**

**COOK** COUNTY

### PETITION FOR ORDER OF PROTECTION

Civil Proceeding ☒
Criminal Proceeding ☐

**FILED**
**May. 23, 2024**
Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL
DEPUTY CLERK

---

| **Instructions ▼** | |
|---|---|
| Directly above, enter the county where you filed this case. | Petitioner: **Kenton Lloyd Girard, (DOB: 07/14/1975)** *(First, middle, last name)* |
| Enter your name as Petitioner. | v. |
| Enter name of the person you are seeking protection from as Respondent. | Respondent: **Jane Girard, (DOB: 05/30/1977)** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | |

**For Court Use Only**

**2015D009633**
**Case Number**

☐ Independent
☐ Juvenile
☐ Other Civil Proceeding
☐ Criminal

---

**People to be Protected by this Order** *(check all that apply)*:

Petitioner refers to any protected person in this *Order*.

☒ Petitioner

☒ Petitioner's minor children with Respondent:

**Gwen Frances Girard and Grace Lilly Girard**

☐ Petitioner's minor children not related to Respondent:

☐ Dependent adult: _____
☐ High-risk adult: _____
☒ Other household members: **Marissa Girard**

| Check the boxes for ALL people you want to include in the *Order*. On the lines provided, enter the name for each person you are trying to protect. "Other household members" includes people living with you or working where you are staying. | |

---

| **NOTE:** | If you are completing this form for a minor child, dependent adult, or high-risk adult, insert information needed below as if you were that person. Do not use your information, except as directed at the bottom of page 10 where you will sign this form. |
|---|---|

**TYPE OF ORDER OF PROTECTION REQUESTED AGAINST RESPONDENT (check all that apply)**

☒ Emergency Order of Protection (civil case)/ Ex Parte Protective Order (criminal case)
*(These short-term Orders of Protection can be granted on the same day you file your Petition without advance written notice to Respondent because advance notice would cause more abuse).*

☐ Plenary Order of Protection (civil case)/Final Protective Order (criminal case)
*(These long-term Orders of Protection can only be granted at a court hearing after advance written notice to Respondent.)*

**BACKGROUND INFORMATION**

1. ☐ If Respondent should not know household address because it may cause more abuse, use this address for Court notices:

_____ _____ _____ ____
Street Address, Apt. #        City         State   ZIP

_____
Email

OR

☒ Respondent knows household address and it is:

**965 forestway drive, Glencoe, IL 60022**
Street Address, Apt. #        City         State   ZIP

**kg5252@yahoo.com**
Email

| Check either or both boxes for the type of order you want. If you need protection today, check the first one. | |
| In background information 1, enter the address and email (if you have one) where you want to receive Court notices. If you do not want Respondent to know where you live, enter a different address where you can get mail. If you do not want Respondent to know your email, enter a different email where you can get Court notices. If you do not have another email, leave this blank. | |

---

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

A2

| In 2, if you do not know Respondent's date of birth or Respondent's home or work address, write "do not know." |
|---|

**2.** Respondent's Information

Respondent's date of birth:  05/30/1977

Respondent's home address: 90 Linden Ave, Glencoe, IL 60022
    *Street Address, Apt #*          *City*          *State*    *ZIP*

Respondent's work information:

Abbvie                                      26525 Riverwoods Blvd, Mettawa, IL 60045
*Employer*                          *Street Address*          *City*          *State*    *ZIP*

| In 3, check all the boxes that describe your relationship to Respondent. For example, if you are requesting an *Order of Protection* against your mother, you will check the box next to "Child" because you are the child of the Respondent. |
|---|

**3.** Petitioner's Relationship to Respondent *(check all that apply)*

- [ ] Boyfriend / Girlfriend / Dating Relationship (including ex) (BG)
- [ ] Spouse (SE)
- [x] Ex-Spouse (XS)
- [ ] Have Children with Respondent (never married to Respondent) (CC)
- [ ] Sharing or Shared Home (CS)
- [ ] Child (CH)
- [x] Parent (PA)
- [ ] Brother / Sister / Sibling (SB)
- [ ] Other Family Member (OF)
- [ ] Other – Petitioner not Related to Respondent (OT)
- [ ] In-law (IL)
- [ ] Personal Caregiver to Disabled Petitioner (PC)
- [ ] Petitioner with Disability receives care from respondent (PD)
- [ ] Personal Assistant of Petitioner (PR)
- [ ] Grandchild (GC)
- [ ] Grandparent (GP)
- [ ] Step-Child (SC)
- [ ] Step-Brother / Step-Sister / Step-Sibling (SS)
- [ ] Prospective or Adoptive Child has Family or Household Relationship with Respondent
- [ ] Foster Child has Family or Household Relationship with Respondent
- [ ] Legally Appointed Guardian or Custodian of a Child who has a Family or Household Relationship with Respondent
- [ ] Step-Parent (SP)

| Answer Sections 4 and 5 the best you can. If you check 'yes' but do not know some of the information asked for, then write "do not know." If you need more room, check the box, fill out the *Additional Case Information* form, and file it with this *Petition*. |
|---|

**4.** Is there now, or has there ever been, another *Order of Protection* entered against Respondent involving Petitioner?   [ ] Yes   [x] No   [ ] Do not know

If yes, list information about the cases:

| Names of People Involved | State & County | Year |
|---|---|---|
|  |  |  |
|  |  |  |

- [ ] I have listed additional case information on the *Additional Case Information* form.

| In 5, list all other types of court cases that you have been involved in with Respondent, such as divorce, custody, child support, parentage, parenting time, guardianship, adoption, and abuse and neglect cases. |
|---|

**5.** Is there now, or has there ever been, another court case with Respondent involving Petitioner?

[x] Yes   [ ] No   [ ] Do not know   If yes, list information about the cases:

| Type of Case | State & County | Year |
|---|---|---|
| Custody | IL, Cook County | 2022 |
| Civil lawsuit - eavesdropping | IL, Cook County | 2023 |

- [ ] I have listed additional case information on the *Additional Case Information* form.

| In 6, check all boxes that are true. |
|---|

**6.** This *Petition* may be filed in this county because *(check all that apply)*:

- [x] Petitioner resides here.
- [x] Respondent resides here.
- [x] The abuse happened here.
- [ ] Petitioner fled here to avoid abuse.

A2

Case 1:25-cv-04586 Document #: 1 Filed: 04/28/25 Page 20 of 111 PageID #:20
Case 25-cv-0658  Document 1-7  Filed: 06/09/2025  Pa 2045D009633
Enter the Case Number given by the Circuit Clerk:          2045D009633

**7.** An *Order of Protection* is needed because Respondent did these things:

| | |
|---|---|
| In 7, start with what happened most recently. Enter the date and time and describe what happened.<br><br>Be as specific about dates and times as you can. You can include any past abuse and any criminal convictions that resulted.<br><br>If you don't remember exact dates of things that happened long ago, just enter the month and year. | Date: __04/05/2024__ Time: __3pm__ What happened: __My wife, Marissa, and I__ discovered an illegal airtag on our car. We and our children all received notifications that an unidentified airtag had been tracking our movements for days. We were finally able to play the sound on the airtag, and we discovered one adhered to the undercarriage of our car which all of us use. We drove straight to the police station, where they took the airtag, identified the serial number, and obtained a warrant for Apple Inc. Apple confirmed to the Glencoe Police Dept who the airtag was registered to. Jane Girard was also the only one who knew that we would be out of town and we believe she came to our property and placed it on our car between March 27th and April 1st. While waiting for the police investigation to be completed, we've all been extremely fearful.<br><br>Date: __05/09/2024__ Time: __7pm__ What happened: __Both children have been fearful of__ their mother due to her abuse, and they have explicitly asked her not to come to their school events unless invited. Jane Girard showed up to Grace's school event - a very important presentation - on May 9th. Gwen saw Jane and immediately ran to hide in a hallway. She was panicked and almost in tears. Grace became very anxious and stressed, and asked her teacher to intervene. The school is aware that both girls have requested that their mother not be allowed in their space during this time due to their fear of her erratic and unpredictable behavior. The teacher intercepted Jane and asked her to leave which she eventually did, but not before causing immense stress and fear to all of us and especially the children who are supposed to be in a safe place.<br><br>Date: __Weekly__ Time: __anytime__ What happened: __Gwen and Grace reported to the__ police in August of 2023 that they have been abused by their mother regularly for years. This has included sexual assault of Grace, sexual abuse of Gwen, denial of food and water, falsely imprisoning them multiple times, emotional and psychological abuse including verbal abuse, calling Grace a slut, calling Gwen fat, invading their privacy by entering the bathroom, pulling open the shower curtain, entering changing rooms and demanding to see them naked. Both report being yelled at for hours with no way to get away, being pushed down and grabbed, and being screamed at while sick. Both girls feel that their mother wants to harm them and they are fearful of being in her presence. Both have had nightmares about her hurting them.<br><br>Date: __February 2023__ Time: __Afternoon__ What happened: __Jane Girard illegally recording__ myself and my wife on 2 occasions, once in December of 2022 and once in February of 2023. Both times we had the expectation of privacy and did not consent to be recorded. One of these times took place in an exam room at a Doctor's office with both girls present. Jane then illegally disseminated these recordings to multiple people. We have felt extremely violated since learning that Jane is willing to break the law by recording us. We are constantly looking over our shoulder worried about what she may do next. This is not the first violation of our privacy by Jane Girard. |
| If you need more room, fill out the *Additional Incidents of Abuse* form or your own extra pages and file it with this *Petition.* | |

              ☒ I have attached the *Additional Incidents of Abuse* form or my own extra pages.

## PROTECTIONS REQUESTED BY PETITIONER

| | |
|---|---|
| In 1, check box 1 and each box below for the type of abuse you want to prevent. If you are unsure what the words after the boxes mean, you can look at definitions on the last page of this form. | ☒ **1. No Abuse**<br>Respondent be ordered not to threaten or commit the following acts of abuse towards Petitioner (*check all that apply*):<br><br>☒ Harassment       ☒ Intimidation of a Dependent<br>☒ Physical Abuse    ☐ Exploitation of a High-Risk Adult with Disabilities<br>☒ Stalking            ☐ Neglect of a High-Risk Adult with Disabilities<br>☐ Willful Deprivation   ☒ Interference with Personal Liberty |

A2

| | |
|---|---|
| **Check 2** if you want Respondent to stay away, at all times, from your home or provide you alternative housing. | [X] **2. Possession of Residence** *(check a or b)* |

These remedies do not affect who owns the property, only who gets to use or occupy it.

| | |
|---|---|
| **Check 2a** if you want Respondent to stay away from your home. If you listed your address on page 1, check the first box under 2a and enter your address. If you did not list your address on page 2a, check the second box under 2a. Under BECAUSE, check the reason why Respondent should not be allowed to stay at the place you are living. Check 2b if you want Respondent to provide you different housing. | [X] a.  Petitioner be granted exclusive possession of the residence and Respondent be ordered not to stay or be at the residence.

[X] Petitioner's residence is located at:

965 forestway drive, Glencoe, IL 60022
*Street Address, Apt #*      *City*      *State*      *ZIP*

OR

☐ Petitioner's address is undisclosed.

BECAUSE *(check one)*:

[X] Petitioner has a right to occupy the residence and Respondent has no right; OR

☐ Petitioner and Respondent both have a right to occupy the residence but it would be harder on Petitioner to leave.

OR

☐ b.  Respondent be ordered to provide, and stay away from, alternate housing for Petitioner to live in because the parties share a residence. *(available ONLY after actual notice to Respondent and/or a hearing with the judge).* |

| | |
|---|---|
| In **3**, read the information in the box below and make sure that is what you want. If so, check box **3** and check the box below that applies. | [X] **3. Stay Away from Petitioner and Certain Places** *(see box below)*

Respondent be ordered to *(check all that apply)*:

[X] Not have any communication with Petitioner.

[X] Stay away from Petitioner at all times. |

**IMPORTANT:** If ordered to stay away from Petitioner, Respondent must not have ANY physical, non-physical, direct or indirect contact with Petitioner. If ordered to not communicate with Petitioner, communication includes oral communication, written communication, sign language, telephone and cell phone calls, faxes, texts, tweets, emails, posts, or communication by any other social media, and all other communication with Petitioner. This also includes contact or communication through others who may not know about the *Order of Protection.*

| | |
|---|---|
| In **3a**, check if you want Respondent to stay away from places you need to go. | [X] a.  Respondent be ordered not to be or stay at any of the following places while Petitioner is there:

[X] Places of employment of Petitioner, located at:

Old National Bank, 8501 W. Higgens, Chicago, IL 60631
*Name*    *Street Address*    *City*    *State*    *ZIP*

New Trier Aquatics, 7 N. Happ Road, Northfield, IL 60093
*Name*    *Street Address*    *City*    *State*    *ZIP* |

| | |
|---|---|
| **NOTE:** Respondent will see these addresses. If you do not want Respondent to know where the children go to school, do not list it. Instead, check the box and fill out the *Confidential Name & Location of the School or Childcare Provider* form, and file it with the Circuit Clerk as "confidential." | [X] Schools, kindergartens, or daycare centers of Petitioner, located at:

New Trier High School, 385 Winnetka Ave, Winnetka, IL 60093
*Name*    *Street Address*    *City*    *State*    *ZIP*

 
*Name*    *Street Address*    *City*    *State*    *ZIP*

☐ I have given the name and location of the school or childcare provider on the *Confidential Name & Location of the School or Childcare Provider* form. |

[X] Other locations:

Our Home, 965 Forestway Drive, Glencoe, IL 60022
*Name*    *Street Address*    *City*    *State*    *ZIP*

 
*Name*    *Street Address*    *City*    *State*    *ZIP*

| | |
|---|---|
| Fill in **3b** only if Respondent attends the same school as Petitioner. | ☐ b.  School Restrictions

_____ is an elementary, middle, or
*School Name*

high school attended by both Respondent and Petitioner for whom protection is sought. |

---

| | |
|---|---|
| **Check 5c** and check the box for the person who takes care of the children most of the time. If the primary caretaker of the children is someone other than you or Respondent, check the box for "Other person" and enter that person's name and address. | ☐ The parties are NOT married but parentage HAS been established by one or more of the following:

1.  Both parties have signed a Voluntary Acknowledgment of Paternity (VAP) *(if both parties' names are on the birth certificate, both parties signed the VAP)*

2.  A court or administrative order

3.  Other: _____

_____

_____

[X] c.  The primary caretaker of the minor children is *(check one)*:

[X] Petitioner |

A2

Case 1:25-cv-04596 Document #: 1 Filed: 04/28/25 Page 22 of 111 PageID #:22
Case 25-4594 Document #: 1 Filed: 04/28/25 Page 22 of 111 PageID #: 2045D009633
Enter the Case Number given by the Circuit Clerk:

BECAUSE: Jane has relentlessly stalked and harassed our family and abused the children. She has illegally recorded us and most recently placed an illegal tracking device on our car in order to track us and the children. We are fearful of what she may try to do next and we believe that her erratic and unstable behavior is escalating. All of us are scared + anxious knowing that she has disregard for the law.

In 18, check if you are on Respondent's cell phone plan and you want to separate your account. Enter the provider name and telephone numbers.

☐ **18.** **Telephone Services**

A wireless telephone provider should transfer from Respondent to Petitioner the right to continue to use their own telephone numbers and be responsible for the cost of them. Petitioner, or a minor child in Petitioner's custody, uses the telephone numbers.

Provider: _____

Name of Account Holder: _____

Billing Phone #: _____

Petitioner's Phone #s: _____

Petitioner's Phone #s: _____

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**I certify that everything in the *Petition for Order of Protection* is true and correct. I understand that making a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.**

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

/s/ Kenton Lloyd Girard
*Petitioner Signature*

Kenton Lloyd Girard
*Petitioner Name*

If prepared by someone other than Petitioner, that person should enter their name, address, phone number, and email address.

Prepared by: Kenton Lloyd Girard

Street Address: 965 forestway drive

City, State, ZIP: Glencoe, IL 60022

Phone Number: (773) 575-7035

Email: kg5252@yahoo.com

Attorney # (if any): _____

A2

Enter the Case Number given by the Circuit Clerk: __2015D009633__

## DEFINITION OF TERMS USED IN THIS *PETITION*

These definitions are incorporated in and made a part of the *Petition* to which they are attached.

1. **Abuse:** "Abuse" means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person in *loco parentis*.

2. **Adult with Disabilities:** "Adult with Disabilities" means an elder adult with disabilities or a high-risk adult with disabilities. A person may be an adult with disabilities for purposes of this Act even though he or she has never been adjudicated an incompetent adult. However, no court proceeding may be initiated or continued on behalf of an adult with disabilities over that adult's objection, unless such proceeding is approved by his or her legal guardian, if any.

3. **Elder Adult with Disabilities:** "Elder adult with disabilities" means an adult prevented by advanced age from taking appropriate action to protect himself or herself from abuse by a family or household member.

4. **Exploitation:** "Exploitation" means the illegal, including tortious, use of a high-risk adult with disabilities or of the assets or resources of a high-risk adult with disabilities. Exploitation includes, but is not limited to, the misappropriation of assets or resources of a high-risk adult with disabilities by undue influence, by breach of a fiduciary relationship, by fraud, deception, or extortion, or the use of such assets or resources in a manner contrary to law.

5. **Family or Household Members:** include spouses, former spouses, parents, children, stepchildren and other persons related by blood or by present or prior marriage, persons who share or formerly shared a common dwelling, persons who have or allegedly have a child in common, persons who share or allegedly share a blood relationship through a child, persons who have or have had a dating or engagement relationship, persons with disabilities and their personal assistants, and caregivers as defined in Section 12-4.4a of the Criminal Code of 2012. For purposes of this paragraph, neither a casual acquaintanceship nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute a dating relationship. In the case of a high-risk adult with disabilities, "family or household members" includes any person who has the responsibility for a high-risk adult as a result of a family relationship or who has assumed responsibility for all or a portion of the care of a high-risk adult with disabilities voluntarily, or by express or implied contract, or by court order.

6. **Harassment:** "Harassment" means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances, would cause a reasonable person emotional distress, and does cause emotional distress to Petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:
    a.  creating a disturbance at Petitioner's place of employment or school; or
    b.  repeatedly telephoning Petitioner's place of employment, home or residence; or
    c.  repeatedly following Petitioner about in a public place or places; or
    d.  repeatedly keeping Petitioner under surveillance by remaining present outside his or her home, school, place of employment, vehicle or other place occupied by Petitioner or by peering in Petitioner's windows; or
    e.  improperly concealing a minor child from Petitioner, repeatedly threatening to improperly remove a minor child of Petitioner's from the jurisdiction or from the physical care of Petitioner, repeatedly threatening to conceal a minor child from Petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless Respondent was fleeing an incident or pattern of domestic violence; or
    f.  threatening physical force, confinement or restraint on one or more occasions.

7. **High-risk Adult with Disabilities:** "High-risk adult with disabilities" means a person aged 18 or over whose physical or mental disability impairs his or her ability to seek or obtain protection from abuse, neglect, or exploitation.

8. **Interference with Personal Liberty:** "Interference with personal liberty" means committing or threatening physical abuse, harassment, intimidation or willful deprivation so as to compel another to engage in conduct from which she or he has a right to abstain or to refrain from conduct in which she or he has a right to engage.

9. **Intimidation of a Dependent:** "Intimidation of a dependent" means subjecting a person who is dependent because of age, health or disability to participation in or the witnessing of: physical force against another or physical confinement or restraint of another which constitutes physical abuse as defined in this Act, regardless of whether the abused person is a family or household member.

10. **Neglect:** "Neglect" means the failure to exercise that degree of care toward a high-risk adult with disabilities which a reasonable person would exercise under the circumstances and includes but is not limited to:
    a.  the failure to take reasonable steps to protect a high-risk adult with disabilities from acts of abuse; or
    b.  the repeated, careless imposition of unreasonable confinement; or
    c.  the failure to provide food, shelter, clothing, and personal hygiene to a high-risk adult with disabilities who requires such assistance; or
    d.  the failure to provide medical and rehabilitative care for the physical and mental health needs of a high-risk adult with disabilities; or
    e.  the failure to protect a high-risk adult with disabilities from health and safety hazards.
    Nothing in this definition shall be construed to impose a requirement that assistance be provided to a high-risk adult with disabilities over his or her objection in the absence of a court order, nor to create any new affirmative duty to provide support to a high-risk adult with disabilities.

11. **Petitioner:** "Petitioner" may mean not only any named petitioner for the order of protection and any named victim of abuse on whose behalf the petition is brought, but also any other person protected by this Act.

12. **Physical Abuse:** "Physical abuse" includes sexual abuse and means any of the following:
    a.  knowing or reckless use of physical force, confinement or restraint; or
    b.  knowing, repeated and unnecessary sleep deprivation; or
    c.  knowing or reckless conduct which creates an immediate risk of physical harm.

13. **Stalking:** "Stalking" means knowingly and without lawful justification, on at least two (2) separate occasions, following another person or placing the person under surveillance or any combination thereof and:
    a.  at any time transmitting a threat of immediate or future bodily harm, sexual assault, confinement or restraint and the threat is directed towards that person or a family member of that person; or
    b.  placing that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint; or
    c.  placing that person in reasonable apprehension that a family member will receive immediate or future bodily harm, sexual assault, confinement, or restraint.

14. **Willful Deprivation:** "Willful deprivation" means willfully denying a person who because of age, health or disability requires medication, medical care, shelter, food, therapeutic device, or other physical assistance, and thereby exposing that person to the risk of physical, mental or emotional harm, except with regard to medical care or treatment when the dependent person has expressed an intent to forego such medical care or treatment. This paragraph does not create any new affirmative duty to provide support to dependent persons.

## A2

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS CIRCUIT COURT COOK COUNTY | ADDITIONAL INCIDENTS OF ABUSE | 2015D009633 Case Number |
|---|---|---|

| Instructions ▼ | | For Court Use Only |
|---|---|---|

**Instructions:** Enter the information as listed on the *Petition for Order of Protection.*

Petitioner  Kenton Lloyd Girard, (DOB: 07/14/1975)
*(First, middle, last name)*

People to be Protected by this order *(check all that apply)*:

[X]  Petitioner

[X]  Petitioner's minor children with Respondent:

Gwen Frances Girard and Grace Lilly Girard

[ ]  Petitioner's minor children not related to Respondent:

[ ]  Dependent adult: _____

[ ]  High risk adult: _____

[X]  Other household members:  Marissa Girard

v.

Respondent  Jane Girard, (DOB: 05/30/1977)
*(First, middle, last name)*

**For Court Use Only**

[ ]  Independent
[ ]  Juvenile
[ ]  Other Civil Proceeding
[ ]  Criminal

---

**Write the additional details of abuse** done to you or people you want to protect. Start with what happened most recently. Enter the date and time and describe what happened.

Be as specific about dates and times as you can. You can include any past abuse and any criminal convictions that resulted.

If you don't remember exact dates of things that happened long ago, just enter the month and year.

Attach this form to your *Petition.*

7.  I am requesting an *Order of Protection* because Respondent did these additional things:

Date:  August 27, 2021  Time:  afternoon  What happened:
A witness saw Jane Girard yelling at Gwen and Grace in a Walgreens. The witness stated that Jane yelled at them "I make the fucking decisions, not your father!" The witness described both girls are being incredibly fearful and in tears, pleading with their mother to stop. The witness then saw both girls run away from their mother where she subsequently locked them in a car for over an hour while yelling at them. Both girls were terrified of their mother's unstable emotional state. She denied the girls access to their phones during this incident so that they could not call for help. Jane then showed up unannounced at our home and demanded to come inside. We locked our door and waited for her to leave. Since this incident both girls have been scared to be alone with their mother.

Date:  june 25, 2014  Time:  12am  What happened:  Jane wrote an email to her sister expressing that she was stalking Marissa on social media and stating that she wanted to "start destroying" Marissa, and that she also "just wants to hurt her," referring to Marissa. Marissa has been terrified for years knowing that this person wants to harm her and has been relentless in her harassment. Marissa's own therapist of 13 years believes that Jane is dangerous and wants to harm Marissa. Friends and family have also expressed their concern to Marissa and Kenton for their safety.

Enter the Case Number given by the Circuit Clerk: _____2025D009633_____

Date: ___Fall 2023___ Time: ___weekly___ What happened: _____

Both Gwen and Grace have asked that their mother not come to their school events unless expressly invited. They have felt unsafe in her presence as she has been abusing them for years. Her presence causes them both immense anxiety and has affected their performance at swim meets and events. Jane continues to show up to their events against their wishes, and did so all this last fall and summer and the previous year. Each time the girls see her at an event they are filled with feelings of fear, their heart races, they want to hide, and they ask their friends and coaches to protect them. Their school should be a safe place where their wishes are respected, especially when they are performing.

Date: ___February 2021___ Time: ___4pm___ What happened: _____

Jane locked Grace in a bathroom and forced her to strip naked against her will. Jane then forcefully inserted a tampon into Grace without Grace's consent, and while Grace was saying "please, no, please, stop, it hurts." Jane proceeded to do this against Grace's will, and when she was done she said "Good now it's done," and walked out, leaving Grace in tears and in pain. Grace later reported this incident to myself, Marissa, her therapist, DCFS and the police. She has been through many emotions while trying to process this incident and the feeling of being violated by her own mother at age 13.

Date: ___March 2020___ Time: ___afternoon___ What happened: _____

Jane locked Gwen in the bathroom against her will. She told Gwen that she had to strip naked otherwise she could not leave. She told Gwen that she wanted to put a tampon inside of her. Gwen resisted and said no and that she already knew how. Jane would not relent, and told Gwen that if she wanted to leave the bathroom, she needed to put a tampon inside of herself while Jane watched. Gwen complied. She felt incredibly fearful and embarrassed afterwards. She was confused why her mother would do this to her against her wishes. Both girls have continued to process these incidents in therapy.



# NOTICE OF LIMITED SCOPE APPEARANCE

### IN THE STATE OF ILLINOIS, CIRCUIT COURT

*This tells the court a lawyer will provide representation in only part of the case.*

FILED
2/13/2025 4:55 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 89
31410283

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Former Marriage of Kenton Girard
*Who started the case.*          *First, Middle, and Last Name, or Business Name*

2015 D 9633
**Case Number**

**DEFENDANTS/RESPONDENTS:** Jane Girard (Respondent)
*Who the case was filed against.*

Marissa Girard (Third-Party Respondent)

*First, Middle, and Last Name, or Business Name*

1. The Lawyer **Robert Holstein** and the Client **Marissa Girard**,
   *Lawyer*                                    *Client*

   have entered into a written agreement for the Lawyer to provide **limited scope representation** to the Client

   in this court case as described in Paragraph 3 below, dated **02/10/25**
   *Month, Day, Year*

2. The Client is *(check one)*: ☐ Plaintiff/Petitioner  ☑ Defendant/Respondent.

3. The Lawyer appears pursuant to Supreme Court <u>Rule 13(c)(6)</u>. This appearance is **limited in scope to the following way(s)** in which the Lawyer will represent the Client *(check and complete all that apply)*:

   ☑ **in the court proceeding** *(describe the proceeding)*:
   Presenting Motion for Substitution of Judge

   ☑ **on the following date:** **02/14/25**
   *Month, Day, Year*
   ☑ **and in any continuance of that proceeding.**

   ☐ **at the following deposition(s):** _____

   ☐ **Other** *(specify the scope and limits of representation)*:

A2

4. The Lawyer may **withdraw after completing the limited scope representation** described in this appearance in the following ways:

   a. <u>In Open Court:</u> At a hearing attended by the Client, by presenting and filing an approved statewide *Notice of Completion of Limited Scope Appearance* with no prior notice. The Client may object if they believe that the Lawyer has not completed the limited scope representation described in this appearance. **If the Client wants to object to the withdrawal, they must do it in court right then**; or

   b. <u>Outside of Court:</u> By filing an approved statewide *Notice of Completion of Limited Scope Representation* and an approved statewide *Objection to Completion of Limited Scope Appearance*, and serving them on the Client, other lawyers of record and other parties not represented by a lawyer (unless excused by court order), and on the judge then presiding over this case. If the Client objects to the withdrawal, the Client must file an *Objection to Completion of Limited Scope Appearance* within 21 days after the date of the service of the Lawyer's *Notice of Completion of Limited Scope Appearance* and *Objection*. If the Client timely files an *Objection*, the Lawyer must notice a hearing on the *Objection*.

5. Until this Limited Scope Appearance ends, all documents must be sent to both the Lawyer and the Client listed below in accordance with Supreme Court <u>Rule 11(f)</u>.

6. By signing below, the Client being represented under this *Limited Scope Appearance*:

   a. agrees to receive court papers at the addresses listed below; and

   b. agrees to inform the court, all lawyers of record, and all parties not represented by a lawyer of any changes to the Client's address information listed below during the limited scope representation.

---

## LAWYER SIGNATURE

/s/ Robert Holstein
*Signature of Lawyer*

130 N Garland #909, Chicago, IL 60602
*Lawyer's Address*

holsteinrobert3@gmail.com
*Lawyer's Email*

_____
*Law Firm or Organization*

Robert Holstein
*Name of Lawyer*

312.443.0034
*Lawyer's Telephone Number*

01251600
*Attorney #*

---

## CLIENT SIGNATURE

/s/ Marissa Girard
*Signature of Client*

965 Forestway Dr, Glencoe, IL 60022
*Client's Address*

marissadakis@gmail.com
*Client's Email*

Marissa Girard
*Name of Client*

773.425.4393
*Client's Telephone Number*

02/10/25
*Date*

---

# PROOF OF DELIVERY

*Fill out the information below to show how you are sending this document to the other people in the case. If a person in the case has a lawyer, you must send this document to their lawyer.*

**A. I am sending this document to:**

Name: Karen Paige
　　　First　　　　　　　　　Middle　　　　　　　Last Name

Address: 2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015
　　　　　Street, Apt. #　　　　　　　City　　　　　State　　　Zip Code

Email Address: kpaige@beermannlaw.com

**By:** ☑ **Electronically to the email address in A**
　　☐ By email *(not through an EFSP).*
　　☑ **Using an approved electronic filing service provider (EFSP).**

☐ I or the person I am sending the document to do not have an email address. I am sending the document by:
　　☐ Mail or third-party carrier to the address in **A**, with postage or delivery charge prepaid.

　　　　Location of mailbox or third-party carrier: _____
　　　　　　　　　　　　　　　　　City　　　　　　　　　　　State

　　☐ Personal hand delivery at this address:
　　　*NOTE: You can only deliver to the party, party's family member over 13 at party's residence, party's lawyer, or party's lawyer's office*

　　　　Address _____
　　　　　　　Street, Apt. #, City, State, and Zip Code

　　☐ Mail to the address in **A**, from a prison or jail: _____
　　　　　　　　　　　　　　　　　Name of Prison or Jail

**This document will be sent on:** Date: _____　Time: _____
　　　　　　　　　　　　　Month, Day, Year　　　　　　　Include AM or PM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**B.** ☐ I am not sending these documents to additional people.
- OR -
☑ I am sending these documents to an additional person not listed in **A**:

Name: Kenton Girard
　　　First　　　　　　　　　Middle　　　　　　　Last Name

Address: 965 Forestway Drive, Glencoe, IL 60022
　　　　　Street, Apt. #　　　　　　　City　　　　　State　　　Zip Code

Email Address: kg5252@yahoo.com

**By:** ☑ **Electronically to the email address in B:**
　　☐ By email *(not through an EFSP).*
　　☑ **Using an approved electronic filing service provider (EFSP).**

☐ I or the person I am sending the document to do not have an email address. I am sending the document by:
　　☐ Mail or third-party carrier to the address in **B**, with postage or delivery charge prepaid.

　　　　Location of mailbox or third-party carrier: _____
　　　　　　　　　　　　　　　　　City　　　　　　　　　　　State

　　☐ Personal hand delivery at this address:
　　　*NOTE: You can only deliver to the party, party's family member over 13 at party's residence, party's lawyer, or party's lawyer's office*

　　　　Address _____
　　　　　　　Street, Apt. #, City, State, and Zip Code

　　☐ Mail to the address in **B**, from a prison or jail: _____
　　　　　　　　　　　　　　　　　Name of Prison or Jail

**This document will be sent on:** Date: _____　Time: _____
　　　　　　　　　　　　　Month, Day, Year　　　　　　　Include AM or PM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
☐ I am sending the document to more than 2 people and have completed an *Additional Proof of Delivery* form.

Case Number: **2015 D 9633**



# SIGN

Under 735 ILCS 5/1-109, your signature means that you:
1) certify that everything in this document is true and correct, and 2) understand that making a false statement on this form is perjury and has penalties provided by law.

If you are filling out this form online, sign your name by typing it. If you are filling out this form by hand, sign and print your name.

Your Signature /s/ Robert Holstein            Print Your Name  Robert Holstein

Your Address  130 N. Garland Ct, #909, Chicago, IL 60602
　　　　　　　　　Street, Apt. #　　　　　　　　　　　　　　　City　　　　　　　　　State　　Zip Code

Your Phone Number  312.443.0034            Attorney Number (if any) _____

Your Email (if you have one)  holsteinrobert3@gmail.com
Be sure to **check your email** **every day** so you do not miss important information, court dates, or documents from other parties.

A2

FILED
3/5/2025 3:01 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2015D009633
Calendar, 01
31689167

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| *IN RE THE FORMER MARRIAGE OF* | | |
| KENTON GIRARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Hon. Rossana P. Fernandez |
| vs. | ) | |
| | ) | Case No. 2015-D-009633 |
| JANE F. GIRARD, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| -   -    -     -      -      - | ) | |
| | ) | |
| MARISSA GIRARD, | ) | |
| | ) | |
| Third Party Respondent/ | ) | |
| Third Party Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JANE F. GIRARD, | ) | |
| | ) | |
| Crossclaim Defendant, | ) | |
| | ) | |
| VANESSA L. HAMMER ESQ, | ) | |
| KAREN V. PAIGE ESQ, | ) | |
| CANDACE L. MEYERS ESQ, | ) | |
| DETECTIVE RYAN MCENERNEY, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## TP PLAINTIFF MARISSA GIRARD'S CROSSCLAIMS AND TP CLAIMS

Now comes Third Party Plaintiff MARISSA GIRARD, in pro se, and in support of her

Claims against Crossclaim Defendant JANE F. GIRARD and TP Defendants VANESSA L.

HAMMER ESQ, KAREN V. PAIGE ESQ, CANDACE L. MEYERS ESQ and DETECTIVE

RYAN MCENERNEY states as follows:

# PRELIMINARY STATEMENT

1.      During the pendency of these proceedings, Respondent Jane F. Girard has engaged in numerous instances of illegal harassment, tracking, surveillance and intimidation directed at TP Plaintiff Marissa Girard.

2.      While TP Plaintiff does not seek relief from all of these numerous instances of misconduct, she zeros in on two particularly egregious instances for which she has adduced significant proof to form the basis of prosecuting this action.

3.      The misconduct of Jane F. Girard is extremely serious given the extremely serious mental and physical disabilities at play. To wit, TP Plaintiff suffers from interstitial cystitis, a debilitating condition that can render her unable to leave home in part due to the constant need to urinate, particularly when exacerbated by stress. She also suffers from PTSD, which is aggravated by environmental stress and anxiety and in turn worsens her physical symptoms under interstitial cystitis.

# PARTIES

4.      **TP Plaintiff Marissa Girard** is the wife of Petitioner Kenton Girard.

5.      **Counterclaim Defendant Jane F. Girard** (herein, "Jane") is the Respondent under these proceedings.

6.      **TP Defendant Vanessa L. Hammer** was the GAL under these proceedings until she sought court approval to resign from such appointment on July 25 2023.

7.      **TP Defendant Karen V. Paige Esq** is a member of Jane's legal team.

8.      **TP Defendant Candace L. Meyers Esq** is a member of Jane's legal team.

9.      **Detective Ryan McEnerney** at all times in question served as the lead detective for the Village of Glencoe Public Safety Department.

## THE ILLEGAL RECORDING

10.    In the last two years, TP Plaintiff has experienced extreme embarrassment and humiliation from the dissemination of the contents of private conversations she has had with various persons, both connected and unrelated to these proceedings. Upon information and belief, Jane F. Girard is responsible for a long-running campaign of eavesdropping against TP Plaintiff likely motivated by her animus against TP Plaintiff for being married to Kenton Girard.

11.    On January 16 2023, Jane F. Girard recorded an in-person conversation – lasting about 30 minutes and presumably employing Jane's iPhone – involving Marissa Girard (without TP Plaintiff's knowledge or consent) while TP Plaintiff was inside a private exam room of her doctor's office located at 542 Lincoln Ave in Winnetka.

12.    This illegal recording came on the heels of an event on December 9 2022 wherein Jane F. Girard recorded a telephone conversation with Kenton Girard and their minor children without their knowledge.

13.    The proof of the illegal recording noted above on January 16 2023 was raised wherein Jane's counsel hereunder shared on July 20 2023 the responsive documents obtained under a subpoena they had issued to the erstwhile GAL Vanessa Hammer.

14.    Under those responsive documents, in fact, TP Plaintiff came to learn that recordings of her made without her consent or knowledge and wherein she had a legal expectation of privacy had been shared by Jane with (minimally) Vanessa Hammer as well as Jane's attorneys Candace L. Meyers Esq and Karen V. Paige Esq.

15.    Upon information and belief, Defendants Hammer and Paige and Meyers proceeded to disseminate – again without the knowledge or consent of TP Plaintiff – the illicitly obtained recording of TP Plaintiff with (a) the erstwhile child representative under these

proceedings, Joel J. Levin Esq as well as other members of his practice Levin & Associates, (b) Eric Pfanestiel Esq and other members of his practice Jackson Buckley & Pfanenstiel LLP, (c) Joe O'Brien Esq and other members of his practice Opal O'Brien LLC, (d) the custody evaluator Phyllis Amabile MD, (e) Gwenn Waldman and other members of her firm Breakthrough Family Solutions, as well as other family law functionaries and other persons connected with these proceedings.

16.     The law in Illinois provides for punishment as a Class 4 or Class 3 felony. For the purposes of these claims, as codified under 720 ILC 5/14-2 et seq., Crossclaim Defendant Jane F. Girard bears civil liability for using an eavesdropping device in a surreptitious manner, and TP Defendants Hammer, Paige and Meyers also bear civil liability for sharing that recording which they knew or reasonably should have known was obtained from a private conversation.

17.     TP Plaintiff has further been harmed wherein (a) she experienced a traumatic worsening of her PTSD and interstitial cystitis symptoms after learning of the criminal eavesdropping which had victimized her, (b) she was forced to invest significantly in time and money in an overhaul of her personal security and anti-surveillance measures, and (c) she must deal with fallout from the indignity of the widespread disclosure of that illegal recording and she now lives with a sense of fear and anguish relating to the event and the prospect of having her private communications recorded and disclosed widely again.

## THE ILLEGAL ELECTRONIC VEHICLE TRACKING

18.     On or around January 2024, Jane became aware that Petitioner Kenton Girard had purchased a new Subaru automobile specifically for use both by TP Plaintiff and by Kenton's minor children Gw and Gr. Within one week of taking possession of the vehicle, the car prominently displayed a badge for the New Trier swim team (wherein the minor children Gw and

Gr are both swimmers for New Trier High School, where they are Honor Roll students) as well as a New Trier High School parking decal.

19.     On March 11 2024, Petitioner Kenton Girard emailed Jane stating that he and the girls would be out of town for a trip March 27 2024 through April 1 2024. During that trip Jane made an unauthorized visit to Petitioner Kenton Girard's home at 965 Forestway Drive in Glencoe, where he TP Plaintiff and the minor children reside. During this visit, Jane emplaced an Apple Air Tag on the undercarriage of the new Subaru near the trunk.

20.     Upon information and belief, Jane does not dispute her visit to Petitioner's home during the aforedescribed trip, having admitted to delivering belated birthday gifts for her minor children Gw and Gr, twins who share the birthday of February 15.

21.     On April 4 2024, TP Plaintiff and Petitioner and the minor children received notifications on their mobile phones that an unidentified Apple Air Tag had been tracking the movements of the new Subaru vehicle.

22.     On April 5 2024, TP Plaintiff and Petitioner received the same notification for a second time. Using an audible chirp locate feature, TP Plaintiff and Petitioner proceeded to visually locate the Apple Air Tag on the undercarriage of the new Subaru near the trunk.

23.     Immediately thereupon, TP Plaintiff and Petitioner proceeded to take the Subaru vehicle to the Village of Glencoe police station, wherein a report was filed and photo/video evidence was taken. Security camera footage from TP Plaintiff's home wherein Jane could be observed loitering in the physical vicinity of the Subaru vehicle was provided to Detective Ryan McEnerney. It seemed certain that criminal charges would be forthcoming against Jane.

24.     In the ensuing days, the minor children Gw and Gr observed Jane physically following them on their typical daily route to New Trier High School, and TP Plaintiff observed

Jane physically following her at her typically weekly run to Mariano's grocery store at 784 Skokie Blvd in Northbrook.

25.    On April 15 2024, Detective Ryan McEnerney contacted TP Plaintiff and Petitioner, stating that he had issued a warrant to Apple to obtain information about the illegally installed Air Tag from the undercarriage of the Subaru vehicle which had been placed into evidence for the criminal investigation.

26.    On April 26 2024, TP Plaintiff contacted Apple and received confirmation that identifying/billing information for the Air Tag in evidence had been provided to Detective Ryan McEnerney. Repeated attempts to stimulate Detective McEnerney to take action against Jane were made without success in the following weeks.

27.    TP Plaintiff and Petitioner hired Attorney Peter C. Godwin for the limited purpose of ensuring that Detective Ryan McEnerney followed through with criminal charges against Jane. On May 7 2024, Detective McEnerney told Attorney Godwin that he had spoken with Jane's female attorney and did not plan to charge Jane, because they were "in no danger." On May 15 2024, Detective McEnerney provided an update that Jane F. Girard refused to speak with the police about the Air Tag incident, asserting her Fifth Amendment Right against self-incrimination[1].

28.    Upon information and belief, Detective Ryan McEnerney received information under the warrant issued to Apple positively identifying Jane F. Girard as its purchaser and/or registered user. Despite such information and the security camera footage showing Jane lingering

---

[1] Crossclaim Defendant Jane F. Girard has a documented history of asserting her Fifth Amendment right against self-incrimination. When DCFS opened an investigation into Ms. Girard for a second time on July 22 2023 involving Cook County ASA Mary Stein, Jane F. Girard retained Ms. Jennifer Hansen of Hansen & Cleary LLC in Northbrook as her criminal defense counsel. On September 7 2023, Ms. Hansen informed the DCFS that Jane would be asserting her right against self-incrimination and thus not be making a statement or providing any testimony to the DCFS. For the purposes of a civil proceeding, as here, the Court must operate under the presumption that Jane has admitted to illegal surveillance via Air Tag as to TP Plaintiff.

near the Subaru vehicle at TP Plaintiff's residence during the time in question, Detective McEnerney stubbornly refused to file criminal charges against Jane F. Girard.

29.     The improper refusal by Detective McEnerney and the police in the Village of Glencoe to properly investigate and charge crimes against women and girls is already substantially explored under *Kenton Girard v. Village of Glencoe et al.*, Civil Action No. 1:24-cv-06882, N. Dist. Illinois under which Detective Ryan McEnerney is a defendant. It would appear that Detective McEnerney's improper refusal to prosecute Jane's illegal surveillance here – victimizing female victims again, namely TP Plaintiff and the minor children Gw and Gr – is part of a larger and disturbing pattern[2].

30.     Use of electronic tracking devices (such as Apple Air Tags) on vehicles is actionable as a Class A Misdemeanor, under 720 ILCS 5/21-2.5. However, under the current state of affairs, Jane F. Girard has learned that she can engage in illegal electronic tracking of TP Plaintiff and the minor children Gw and Gr without being held to account for her criminal conduct. Both the reality of Jane F. Girard's illegal conduct and the likelihood of her recidivism – thanks to Detective Ryan McEnerney's dereliction of his investigative and charging duties – has caused extreme stress and mental anguish to TP Plaintiff.

31.     In the aftermath of learning about the illegal Apple Air Tag emplacement on the Subaru vehicle she shares with minor children Gw and Gr, TP Plaintiff experienced a serious setback in her medical treatment for interstitial cystitis and PTSD, wherein she has been experiencing ongoing and debilitating symptoms under both conditions through today's date.

32.     In addition to being forced to live in a state of constant fear about being surveilled

---

[2] What is even more egregious is that Detective Ryan McEnerney is accused of taking a cash bribe from Attorney Kathryn Ciesla Esq in early August 2023 to declare that child sexual assault charges against Jane F. Girard were "unfounded". One has to wonder whether Mr. McEnerney was bribed by Jane's counsel here wherein he spoke with a "female attorney" for Jane F. Girard and directly thereafter the investigation took a proverbial "U Turn" towards the same "unfounded" disposition.

by Jane F. Girard, TP Plaintiff has incurred significant additional expense to hire electronic surveillance sweeping services, anti-surveillance technology and a robust upgrade to her home security and monitoring systems and services.

### COUNT I - EAVESDROPPING
*Jane F. Girard, Vanessa L. Hammer, Karen V. Paige, Candace L. Meyers*

33.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

34.    Under 720 ILCS 5/14-6, TP Plaintiff is entitled to injunctive relief prohibiting further eavesdropping as well as actual and punitive damages.

35.    As previously alluded, Jane F. Girard is civilly liable for doing the eavesdropping, while Defendants Hammer, Paige and Meyers are liable for disseminating the illegal recording.

### COUNT II - NEGLIGENCE
*Jane F. Girard, Detective Ryan McEnerney*

36.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

37.    Defendant Jane F. Girard breached her duty to not violate the law in our state regarding the electronic tracking of vehicles. As a result of these actions, TP Plaintiff has experienced significant economic and non-economic damages which continue to accrue through today's date.

38.    When presented with (a) identifying details for the illegal Air Tag from Apple positively identifying Jane F. Girard as the purchaser and/or the registered user returned under the warrant or subpoena issued to Apple, and (b) video footage from security camera footage from TP Plaintiff's home as to Jane F. Girard lingering near the Subaru vehicle during the family trip when no one was present at TP Plaintiff's home, Detective Ryan McEnerney had an affirmative obligation to recommend criminal charges against Jane F. Girard.

39.    As a direct result of Detective McEnerney's deliberate choice to not pursue criminal charges against Jane F. Girard thereunder, TP Plaintiff has experienced significant

economic and non-economic damages which continue to accrue through today's date.

## PRAYER FOR RELIEF

WHEREFORE, the Third Party Respondent Marissa Girard prays the Court grant the following relief:

1) Issue an injunction with a liquidated damages penalty of $10,000 per occurrence per party against the Count I Defendants from further eavesdropping against TP Plaintiff and from further dissemination of materials obtained from illegal recordings of TP Plaintiff in violation of our state's laws against eavesdropping;

2) Award TP Plaintiff compensatory damages in an appropriate amount greater than $100,000 and punitive damages;

3) Enter judgment in favor of Plaintiffs and against Defendants and for such other relief as this Court deems appropriate.

## JURY DEMAND

Third Party Respondent Marissa Girard hereby demands a trial by jury on all issues of fact and damages stated herein.

DATED: December 15, 2024

Respectfully submitted,

MARISSA GIRARD

By:  /s/ Marissa Girard
965 Forestway Drive
Glencoe, IL 60022
marissadakis@gmail.com
Tel: 773-425-4393

<u>**CERTIFICATE OF SERVICE**</u>

This undersigned certifies that a copy of the foregoing was electronically filed with the

Clerk of this Court and was served this 15th day of December 2024 by email to Petitioner and

Respondent, on their attorneys of record. A copy of the foregoing was also transmitted to the

office of Hon. Scannicchio via the below-listed points of contact.

**Hon. Regina A. Scannicchio**
Presiding Judge of Domestic Relations Division
ccc.domrelcr1905@cookcountyil.gov

**Adam P. Monreal Esq.**
Chief Deputy Clerk for Hon. Scannicchio
apmonreal@cookcountycourt.com

**Jaime A. Barcas**
Executive Assistant for Hon. Scannicchio
jaime.barcas@cookcountyil.gov

/s/ *Marissa Girard*
Marissa Girard

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| JANE F. GIRARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Calendar 1 |
| vs. | ) | |
| | ) | Case No. 2015-D-009633 |
| KENTON GIRARD and | ) | |
| MARISSA GIRARD, | ) | |
| | ) | |
| Defendants. | ) | |
| ---- ---- ---- ---- ---- ---- ---- | ) | |
| KENTON GIRARD, | ) | |
| | ) | |
| Crossclaim Plaintiff, | ) | **Crossclaims of Kenton Girard** |
| | ) | **Directed at Marissa Girard** |
| vs. | ) | **& Jury Demand** |
| | ) | |
| MARISSA GIRARD, | ) | |
| | ) | |
| Crossclaim Defendant. | ) | |
| ---- ---- ---- ---- ---- ---- ---- | ) | |
| MARISSA GIRARD, | ) | |
| | ) | |
| Counterclaim Plaintiff | ) | |
| and Third Party Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| JANE F. GIRARD, | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| VANESSA L. HAMMER ESQ, | ) | |
| KAREN V. PAIGE ESQ, | ) | |
| CANDACE L. MEYERS ESQ and | ) | |
| DETECTIVE RYAN MCENERNEY, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**CROSSCLAIMS OF KENTON GIRARD DIRECTED AT MARISSA GIRARD**

**NOW COMES** Defendant   KENTON GIRARD, in pro se, and in support of his

Crossclaims against Codefendant MARISSA GIRARD, hereby states as follows:

## INTRODUCTION

1.      Plaintiff Jane F. Girard has been divested of her parental rights and her right to seek a custody remedy because she is an admitted child sex abuser and rapist,  yet these amorphous proceedings which she improperly incepted three years ago *without pleadings[1]* appear to advance towards an effective "mystery trial". According to open court testimony on February 14 2025[2] by Beermann LLP Attorney Enrico J. Mirabelli – counsel for Jane F. Girard – the "mystery trial" (devoid of a criminal investigation, a state prosecutor, a true indictment, a bill of charges, a jury of twelve peers or even a criminal tribunal) will consist in a criminal contempt proceeding against Defendant Kenton Girard and his wife Defendant Marissa Girard, who is a disabled person.

2.      Marissa Girard is at this time litigating claims in pro se in the Northern District of Illinois under *Girard v. Fernandez et al.*, Civil Action No. 1:25-cv-00136 ("Civil Rights Lawsuit") against *inter alia* Beermann LLP attorneys Enrico J. Mirabelli and Matthew D. Elster, as well as some of the judicial officers who have presided hereunder. Among other causes of action, her claims speak to violations of her constitutional rights, including those arising under the First and Sixth Amendments, as well as her rights under federal law including Title II of the Americans with Disabilities Act ("ADA").

## PARTIES

3.      Crossclaim Plaintiff Kenton Girard is the biological father of the minor children Gwen Girard and Grace Girard, fraternal twins both now age 17.

---

[1] Numerous filings hereunder by Kenton Girard and Marissa Girard have addressed the lack of pleadings filed by Plaintiff Jane F. Girard. Egregiously, Marissa Girard  – who neither has parenting responsibilities nor any biological connection to the minor children Gwen and Grace – has been forced to endure a dozen or more inexplicable, harassing and abusive motions to hold her in contempt or to jail her filed by Beermann LLP on behalf of Jane F. Girard without ever having been actioned with a pleading at the time of her (deficient) joinder in plain violation of 735 ILCS 5/2-201(a).
[2] Notably, Mr. Mirabelli's Sixth Amendment offending testimony was reduced to a written transcript by a court reporter present on February 14 2025.

4.     Crossclaim Defendant Marissa Girard is Kenton Girard's wife of approximately ten years, and she is a disabled person who suffers from PTSD and interstitial cystitis, both of which are ADA qualifying disabilities. Kenton and Marissa are married and reside together in Glencoe full-time together with the minor children.

## THE POST-NUPTIAL INDEMNIFICATION AGREEMENT

5.     Since the inception of the marriage between Kenton and Marissa about a decade ago, Jane F. Girard has continuously interfered – whether by stalking Marissa in her automobile, saying terrible things about Marissa to the minor children, saying terrible things about Kenton to the minor children, attempting to gain access to electronic devices belonging to Kenton and Marissa and the cell phones utilized by the minor children – in order to try to create friction between Kenton, Marissa and the minor children.

6.     In the summer of 2021, Marissa Girard's disabilities started to take a turn for the worse wherein the frequency of medical consultations and doctor visits increased due to flare ups typically connected with environmental stress. Anecdotally, it seems much of this environmental stress was owing to non-stop efforts by Jane F. Girard to cause problems as described above.

7.     Indeed, at that time, Marissa strongly blamed Jane F. Girard for many of the bouts of stress – which would in turn cause debilitating flare ups under PTSD and interstitial cystitis – that she was experiencing during the summer of 2021.

8.     Accordingly, Marissa articulated her wish for a financial security blanket to kick in under the circumstances in which Jane F. Girard might potentially engage in a course of conduct (such as stalking Marissa) under which Marissa would experience stress as a result and wherein Marissa might have to resort to the legal system to end the offending course of conduct by Jane F. Girard.

9.      During the course of several conversations, Kenton gradually became incrementally more agreeable to the concept. However, in an effort to more sharply define the concept of stress-inducing course of conduct, Kenton and Marissa decided on the following language ("Legal Billings Clause"):

> If any course of action undertaken by Jane Girard proximately causes a violation of Marissa Girard's rights secured under the Constitution or under federal law, then Kenton Girard will indemnify Marissa from all necessary and reasonable legal billings incurred to address said violation(s), as long as Kenton and Marissa are married and residing together for more than seven days per month.

The purpose of this language was to ensure that not just any "trivial" everyday friction caused by Jane F. Girard would qualify for indemnification, but rather more serious interference would be captured by the agreement.

10.      There was an additional type of "peace of mind" additionally desired by Marissa Girard, namely if Marissa's disabilities were to become debilitating in the future, or to prevent her from fully engaging in normal daily life activities, she wanted to ensure that Kenton would be agreeable to subsidizing her in the case under which her earnings noticeably suffered from her disabilities. They settled on the following language ("Earnings Subsidization Clause"):

> If Marissa's earnings were to worsen in the future as a direct result of her disabilities, wherein Marissa's gross earnings were to decline below $4,000 per month then Kenton Girard would agree to subsidize her earnings to ensure Marissa received $4,000 per month, as long as Kenton and Marissa are married and residing together for more than seven days per month.

The purpose of this language was to provide a measure of financial peace of mind, without excessively burdening Kenton.

11.      Kenton and Marissa eventually executed their "Post-Nuptial Indemnification Agreement" on October 1 2021 containing the exact operative language excerpted *supra*.

**Kenton Girard Crossclaims Directed at Marissa Girard**                                    A2      4

## DISPUTES ARISE OVER THE AGREEMENT

12.    As mentioned *supra*, Marissa Girard is pursuing relief for purported violations of various of her constitutional rights and her rights to reasonable accommodation under Title II of the Americans with Disabilities Act. Marissa claims her legal filings are a direct result of Jane F. Girard joining Marissa as a defendant hereunder, pursuant to a summons dated May 26 2023.

13.    To rectify the violations of her rights, Marissa has prepared and filed pleadings under the Civil Rights Lawsuit, and she is litigating that matter capably pro se. From Kenton's point of view there is no need for an attorney to take over that litigation for Marissa. She is also handling the instant matter pro se, including her claims filed against Jane F. Girard and various third party defendants on March 5 2025 related to illegal eavesdropping and electronic tracking committed by Jane F. Girard and directed at Marissa.

14.    However, Marissa feels that it is necessary not only for an attorney to take over her Civil Rights Lawsuit but her litigation under the instant matter. Kenton and Marissa are at a stalemate on this issue and things came to a head in the last week of April 2025.

15.    Additionally Marissa's earnings have declined in accordance with the Earnings Subsidization Clause and demands subsidization as to her reduced earnings, however Kenton does not feel that such decline is directly owing to her disabilities, but rather to the time she has been spending on litigation activities.

## COUNT I – LEGAL BILLINGS CLAUSE

16.    Crossclaim Plaintiff Kenton Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

17.    The claims under the Civil Rights Lawsuit have not yet been adjudicated, so there is no finding as of yet that Marissa's constitutional rights – or her rights under the ADA – have

.

been violated. As a result, it is premature to hold Plaintiff accountable for her legal fees.

18.    Moreover, as Marissa has demonstrated, she is capable of handling pleadings, litigation and even court dates pro se. As a result, hiring attorneys to take over the Civil Rights Lawsuit and her representation hereunder is not necessary.

## COUNT II – EARNINGS SUBSIDIZATION CLAUSE

19.    Crossclaim Plaintiff Kenton Girard incorporates by reference the preceding paragraphs as if fully set forth herein.

20.    Cross Plaintiff Kenton Girard believes the decline in her earnings is directly owing to the time Marissa has spent on these proceedings.

21.    As such, the disabilities are not the proximate cause of the decline in earnings.

**WHEREFORE** Crossclaim Plaintiff Kenton Girard requests that the Court enter two declaratory judgments finding that (a) the Legal Billings Clause does not hold Kenton accountable for her legal fees, because the violations have not yet been adjudicated; nor are the legal fees necessary given that Marissa has been competently handling the litigation hereunder and under the Civil Rights Lawsuit pro se, and (b) the Earnings Subsidization Clause has not been triggered because the direct cause of Marissa's lowered earnings is the time she has spent on this litigation, not her disabilities, and for such further relief as appropriate.

DATED: April 28 2025                            Respectfully submitted,

                                                KENTON GIRARD

                                        By:    _/s/ Kenton Girard_____
                                                965 Forestway Drive
                                                Glencoe, IL 60022

*Kenton Girard Crossclaims Directed at Marissa Girard*                    A2        6

kg5252@yahoo.com
Tel: 773-575-7035

## CERTIFICATE OF SERVICE

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 28th day of April 2025 by email to the attorneys who have entered their appearances hereunder. A copy of the foregoing was also transmitted to the office of Hon. Scannicchio via the below-listed points of contact.

**Hon. Regina A. Scannicchio**
Presiding Judge of Domestic Relations Division
ccc.domrelcr1905@cookcountyil.gov

**Jaime A. Barcas**
Executive Assistant for Hon. Scannicchio
jaime.barcas@cookcountyil.gov

*/s/ Kenton Girard*
Kenton Girard

## JURY DEMAND

Crossclaim Plaintiff Kenton Girard hereby demands a trial by jury on all issues of fact stated herein.

## CONSENT TO A FEDERAL FORUM

Under penalties as provided by law pursuant to Sec. 1-109 of the Code of Civil Procedure, the undersigned certifies that he freely consents to litigating these proceedings in a federal forum, should the court or any party wish to move these proceedings to federal court.

*/s/ Kenton Girard*
April 28, 2025

*Kenton Girard Crossclaims Directed at Marissa Girard*                    A2      7

Exhibit B

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
    Petitioner, )
)
  and )   No.  2015 D 009633
)
JANE GIRARD, )
    Respondent, )
)
  and )
MARISSA GIRARD, )
    Third Party Respondent )

**ENTERED**
Judge William Stewart Boyd-1760
**MAY 31 2023**
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## ORDER

  **THIS MATTER** coming before the Court for hearing on, Kenton's Motion to Terminate Therapy and for In Camera Interview filed February 23,2023, Kenton's Motion to Enter Qualified Medical Support Order filed February 2, 2023, and Jane's Motion to Join Third Party filed on March 8, 2023; both parties present and being represented by counsel and the minor children being represented by the Guardian ad Litem, Vanessa Hammer; Marissa Girard appearing pursuant to Trial Subpoena and then her appearance being excused and placed in a breakout room by the Court; the Court having reviewed the courtesy copies of all pleadings, and case law submitted by Beermann LLP, Jane's counsel; jurisdiction over the parties and subject matter herein and being duly advised in the premises;

**IT IS HEREBY ORDERED:**

1. The requested relief in Kenton's Motion to Terminate Therapy and for In Camera Interview – Count I regarding therapy is granted in part insofar as therapy with Gwenn Waldman is <u>stayed</u> pending Dr. Amabile's investigation and report;

2. The Court reserves ruling on the requested relief in Kenton's Motion to Terminate Therapy and for In Camera Interview Count II;

3. Jane's Motion to Join Third Party is granted. Summons to Marissa Girard shall issue;

4. Jane is granted 7 days to amend her Verified Petition for Continuing Abuse of Parenting Time and Violation of the Terms of the Joint Parenting Agreement; Kenton is thereafter granted 28 days to respond; Jane is granted 14 days to reply should she choose;

5. Kenton's Motion to Enter Qualified Medical Child Support Order ("QMSCO"is resolved via agreement and the QMSCO shall be entered under separate cover;

A2

6.    All pending pleadings are entered and continued.  This matter is set for pretrial conference and status of the 601.10(b) evaluation/ report, and all pending pleadings, on August 9, 2023 at 11:30 a.m. via zoom.

ENTERED:

_____ #1766

JUDGE

Enrico J. Mirabelli
Karen V. Paige
Candace L. Meyers
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Joseph P. O'Brien
**Opal O'Brien LLC**
Attorneys for Petitioner
joe@opalobrien.com
service@opalobrien.com
Firm No. 59789

Vanessa Hammer
**Guardian ad Litem**
vhammer@hsglawfirm.com

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE

KENTON GIRARD,

          Petitioner,

and

JANE GIRARD,

          Respondent.

No. 2015 D 009633
Cal. 32

**ENTERED**
Judge William Stewart Boyd-1760
MAY 3 1 2023
IRIS D. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## QUALIFIED MEDICAL CHILD SUPPORT ORDER

    THIS CAUSE coming on to be heard pursuant to §§505 and 505.2 of the Illinois Marriage and Dissolution of Marriage Act, 750 ILCS 5/505 and 750 ILCS 5/505.2, and §609 of the Employee Retirement Income Security Act, 29 USC §1169, the Court finding that the children of the parties are eligible under the BlueCross BlueShield of Illinois health plan for continuation of coverage and that such children have designated the Petitioner, **KENTON GIRARD**, as a representative for any and all information and documents concerning the minor children of KENTON GIRARD and JANE GIRARD, and the Court having jurisdiction over the parties hereto and the subject matter hereof:

**IT IS HEREBY FOUND:**

    A.    JANE GIRARD is the Participant in a Medical Plan that covers the minor children of the parties. The Court and the parties desire to allow KENTON GIRARD access to medical information only relating to the minor children of KENTON GIRARD and JANE GIRARD. To the extent permitted by the health insurance plan, this Court is directing this QMCSO to be entered to allow KENTON GIRARD to be the Designated Representative of the Alternate Recipients identified herein, specifically GRACE GIRARD and GWEN GIRARD.

**IT IS HEREBY ORDERED:**

    1.    THIS ORDER is intended to serve as a Qualified Medical Child Support Order ("QMCSO") which orders the Medical Plan specified below to provide medical benefits to the children of the Petitioner, KENTON GIRARD, and the Respondent, JANE GIRARD ("Participant"), namely **GRACE GIRARD (DOB XX/XX/2018)** and **GWEN GIRARD (DOB XX/XX/2018)**, who are named below ("Alternate Recipients") pursuant to a Judgment for Dissolution of Marriage entered on November 4, 2015, and in accordance with Section 609 and other relevant sections of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and Section 505.2 of the Illinois Marriage and Dissolution of Marriage Act.

A2

2. The Medical Plan subject to this Order is as follows:

> BlueCross BlueShield of Illinois, Group #778092, Identification/Subscriber #AXV843787859, ("Medical Plan") for JANE GIRARD or successor plans.

> Plan Administrator:
>
>     a. Name:
>     b. Address

3. The Participant in this Medical Plan is JANE GIRARD, the Respondent.

> The Participant's Address, Social Security Number and Date of Birth is set forth on Exhibit "A" to this QMCSO which is incorporated by reference and for privacy reasons will not be entered into the court record.

4. The Alternate Recipients are **GRACE GIRARD (DOB XX/XX/2018)** and **GWEN GIRARD (DOB XX/XX/2018)**.

> The Alternate Recipients' Addresses, Social Security Numbers and Dates of Birth are set forth on Exhibit "A" to this QMCSO which is incorporated by reference and for privacy reasons will not be entered into the court record.

5. The Designated Representative of the Alternate Recipients is KENTON GIRARD. KENTON GIRARD is a custodial parent with JANE GIRARD. This Order provides KENTON GIRARD with rights as a Designated Representative in addition to those that JANE GIRARD has as the Participant; however, such rights are not to supersede those provided to the Participant.

> The Designated Representative's Address, Social Security Number and Date of Birth is set forth on an Exhibit "A" to this QMSCO which is incorporated by reference and for privacy reasons will not be entered into the court record.

6. The Alternate Recipients shall receive the following benefits by the Medical Plan: The coverage currently available to the participant or which may subsequently be available to said participant under the Medical Plan in existence at the time.

7. The plan shall notify the Alternate Recipients and the Designated Representative of any amendment or modification to the Plan, or any termination or merger of the Medical Plan, which would result in this coverage becoming unavailable to the Alternate Recipients.

8. The period to which the order applies shall be from the date of the entry of this Order to the first to occur of the Alternate Recipients completing their post-secondary education or reaching their 25th birthday.

9. The Designated Representative is deemed to have been appointed by the Alternate Recipients to receive copies of notices, explanation of benefits, health insurance policies, explanation booklets, plan descriptions, or any modifications or amendments thereto, insurance identification cards, provide directories, claims forms, and any other documentation necessary for the Designated Representative to utilize said health insurance

A2

coverage for the benefit of the Alternative Recipients.

10. **Representative Duties.** Both the Participant and the Designated Representative of the Alternate Recipients may submit claims for reimbursement to the Plan and the Plan shall reimburse that party directly for any payment of benefits made pursuant to this Order in reimbursement of expenses actually paid. Both parties shall submit requests for reimbursement pursuant to plan provisions, and the party receiving reimbursements shall divide all reimbursements received from the Plan pursuant to the terms of the Judgment for Allocation of Parental Responsibilities Incorporating Agreed Parenting Plan where applicable.

11. This Order does not require the Medical Plan (or any successor Medical Plan) to provide any type or form of benefit, or any option, not otherwise provided under the Medical Plan (or any successor Medical Plan).

12. It is intended by the parties that this Order will qualify as a Qualified Medical Child Support Order pursuant to ERISA Section 609 (29 U.S.C.A. Section 1169), and subsequent amendments, and that it will be interpreted and administered as such.

The Court retains jurisdiction to amend this Order for the purpose of establishing or maintaining the Order as a Qualified Medical Child Support Order; and further, the Court may amend this Order to revise or conform its terms so as to effect the expressed provisions of the Order, the parties' Judgment or Supplemental Judgment previously entered, as well as to enforce this Order against successor medical insurance plans, to provide coverage for a child who moves out of the service area, or to modify this Order to comply with the requirements of ERISA section 609 (29 U.S.C.A. Section 1169).

13. Copies of this QMCSO shall be forwarded to the Plan Administrator by counsel for **JANE GIRARD**. The Plan Administrator shall follow procedures consistent with Section 609(a) of ERISA for determining the qualified status of this Order.

Attorney No. 59789
**Opal O'Brien LLC**
Attorneys for Petitioner
310 S. County Farm, Suite D
Wheaton, IL 60187
(630) 384-0165
joe@opalobrien.com

Attorney No. 80095
**Beermann LLP**
Attorneys for Respondent
161 N. Clark, Suite 3000
Chicago, Illinois 60601
(312) 621-9700
kpaige@beermannlaw.com

Attorney No. 64937
**Vanessa L. Hammer, Esq.**
*Guardian Ad Litem*
77 W. Wacker, Suite 4500
Chicago, Illinois 60601
(312) 372-6058
vhammer@hsqlawfirm.com

ENTERED:

#1766

JUDGE
DATE:

In re Former Marriage of Girard, 2015 D 9633
Qualified Medical Child Support Order
Page 3 of 3

A2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
                Petitioner, )
)
   and )    No.    2015 D 009633
)
JANE GIRARD, )
            Respondent, )
)
   and )
MARISSA GIRARD, )
       Third Party Respondent )

> **ENTERED**
> Judge William Stewart Boyd-1760
>
> **JUN 16 2023**
>
> IRIS Y. MARTINEZ
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL

**ORDER**

THIS MATTER coming before the Court for presentment of Respondent's *Motion to Compel Compliance with Discovery*; the parties being represented by their counsel; the Court having jurisdiction over the parties and subject matter herein and being duly advised in the premises;

**IT IS HEREBY ORDERED:**

1.   Petitioner is granted twenty-eight (28) days to respond to Respondent's *Motion to Compel Compliance with Discovery.*

2.   The *Motion to Compel Compliance with Discovery* is set for hearing on August 9, 2023 at 11:30 a.m.

ENTERED:

_____ #1760

JUDGE

Enrico J. Mirabelli
Karen V. Paige
Candace L. Meyers
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Joseph P. O'Brien
**Opal O'Brien LLC**
Attorneys for Petitioner
joe@opalobrien.com
service@opalobrien.com
Firm No. 59789

Vanessa Hammer
Guardian ad Litem
vhammer@hsqlawfirm.com

A2

4217 - Continued - Allowed
4208 - Appoint Guardian Ad Litem - Allowed                                    (Rev. 12/01/20) CCDR 0008 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE:  ■ Marriage  ❑ Civil Union  ❑ Legal Separation  ❑ Allocation of Parental Responsibilities
❑ Visitation (Non-Parent)  ❑ Support  ■ Parentage of:

KENTON GIRARD
_____
                                        Petitioner

and

JANE GIRARD
_____
                                        Respondent

MARISSA GIRARD          Third Party Respondent

No.: 2015 D 9633

Calendar: _____

❑ Prejudgment
❑ Post Judgment - Enforcement
■ Post Judgment - Modification
❑ Other _____

### ORDER APPOINTING CHILD'S REPRESENTATIVE, GUARDIAN AD LITEM OR ATTORNEY FOR MINOR CHILD(REN)

On motion of the Court _____ and pursuant to 750 ILCS 5/506 and the inherent power of the Court, the Court being fully advised in the premises FINDS THAT:

A.  There are issues within the family affecting the minor child(ren):

| Child(ren)'s Name(s) | Date of Birth | Resides with | Child(ren)'s Name(s) | Date of Birth | Resides with |
|---|---|---|---|---|---|
| Gwen Girard | 02/15/2008 | Petitioner | | | |
| Grace Girard | 02/15/2008 | Petitioner | | | |

B.  It is in the best interest of the child(ren) to have a legal representative appointed to protect and preserve their interests.

**IT IS HEREBY ORDERED THAT:**

1.  Name: Joel Levin
    Address: 10 South LaSalle Street, Suite 1420, Chicago, IL 60603
    Telephone: 312-546-5100          Facsimile: _____
    Email: jlevin@levinfamilylaw.com

    is appointed  ■ CHILD'S REPRESENTATIVE  ❑ GUARDIAN AD LITEM  ❑ ATTORNEY FOR THE MINOR CHILD(REN)
    Issues: decision-making, parenting time, parental alienation, social media

ENTERED
Judge William Stewart Boyd-1760
JUL 18 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

2.  During the proceedings the court may appoint an additional attorney to serve in another of the enumerated capacities on its own motion or that of a party only for good cause shown and when the reasons for the additional appointment are set forth in specific findings.

3.  Within seven (7) days of the entry of this order, attorney for ■ Petitioner ■ Respondent ❑ other _____ shall send the child's representative, guardian ad litem, or the attorney for the minor child(ren) copies of this order, and all notices, pleadings, orders and reports relative to this cause.

4.  The child's representative, guardian ad litem, or the attorney for the minor child(ren) shall be kept fully informed by counsel for all parties as to the status of this cause and shall have the full assistance of counsel in obtaining any waivers (e.g. for school or medical records, etc.) appropriate to the representation of the minor child(ren).

4234
5.  ■ An appearance shall be filed on behalf of the minor child(ren) within seven (7) days of receipt of this order and any appropriate pleadings within twenty-eight (28) days from the date of this order.

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 2

A2

4217 - Continued - Allowed
4208 - Appoint Guardian Ad Litem - Allowed                                    (Rev. 12/01/20) CCDR 0008 B

6A.   The child's representative, guardian ad litem, or the attorney for the minor child(ren) shall serve pro bono; OR

      4636
6B.   ☑ The child's representative, guardian ad litem, or the attorney for the minor child(ren) shall be entitled to reasonable temporary
      and permanent fees and costs pursuant to statute. Without prejudice to the right of either party for an accounting and an ap-
      portionment among the parties, the parties shall pay to the child's representative, guardian ad litem, or the attorney for the minor
      child(ren) as and for temporary prospective fees, within 7 days, the following amounts:

      Hourly Rate: _____
      Petitioner: $ 50% _____        Respondent: $ 50% _____
      Other: $ Retainter- $5,000 _____

7A.   ☐ This appointment shall terminate thirty (30) days after entry of final judgment without further order of court; OR

7B.   ☑ This appointment shall terminate only upon further order of court.

8.    "Unless otherwise ordered by the court at the time fees and costs are approved, all fees and costs payable to an attorney,
      guardian ad litem, or child's representative under this Section (750 ILCS 5/506) are by implication deemed to be in the nature of
      support of the child and are within the exceptions to discharge in bankruptcy under 11 U.S.C.A.523. The provisions of Section
      501 and 508 of this Act shall apply to fees and costs for attorneys appointed under this Section."
      (750 ILCS 5/506)

9.    Next Court Date: 08/09/2023 at 11:30 a.m. _____
      Petitioner's Name: Kenton Girard _____
      *Address: (Home) 965 Forestway Dr, Glencoe, IL 60022 _____        Telephone: (Home) _____
      *Address: (Work) EMAIL - kg5252@yahoo.com _____        Telephone: (Work) _____

      Petitioner's Attorney:  Joseph P. O'Brien- Opal O'Brien LLC        Primary Email: joe@opalobrien.com
      Address: 310 South County Farm Rd, Suite D, Wheaton, IL 60187      Secondary Email: service@opalobrien.com
      Telephone: 630-384-0165 _____        Other: Eric R. Pfanenstiel at service@jbpfamilylaw.com
      Facsimile: _____        for Marissa Girard

      Respondent's Name: Jane Girard _____
      *Address: (Home) 90 Linden Ave, Glencoe, IL 60022 _____        Telephone: (Home) 847-372-6736 _____
      *Address: (Work) EMAIL - janeous@yahoo.com _____        Telephone: (Work) _____

      Respondents Attorney: BEERMANN LLP _____        Primary Email: kpaige@beermannlaw.com
      Address: 161 North Clark Street, Suite 3000, Chicago IL 60601      Secondary Email: clmeyers@beermannlaw.com
      Telephone: 312-621-1219 _____        Other: ejmirabelli@beermannlaw.com
      Facsimile: _____

      *If a party has not disclosed an address, that party shall designate an alternative address for the purpose of notice.

      Atty. No.: 80095 _____               ENTERED:
      Name: BEERMANN LLP _____
      Atty. for: Respondent _____
      Address: 161 North Clark Street, Suite 3000 ____              Dated: _____
      City/State/Zip Code: Chicago, IL 60601 _____
      Telephone: 312-621-1219 _____                _____ #1720
      Primary Email: kpaige@beermannlaw.com _____                Judge                    Judge's No.
      Secondary Email: clmeyers@beermannlaw.com ____
      Other Email: ejmirabelli@beermannlaw.com _____

              IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                                          Page 2 of 2

                                            A2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF )
                                   )
KENTON GIRARD, )
              Petitioner, )
                                     )
       and                               )   No.    2015 D 009633
                                       )
JANE GIRARD, )
               Respondent, )
                                     )
       and                               )
MARISSA GIRARD, )
              Third Party Respondent )

**ENTERED**
Judge William Stewart Boyd-1760

**JUL 18 2023**

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### ORDER

       THIS MATTER coming before the Court for Respondent's oral presentment of Motion for Temporary Restraining Order, Motion to Appoint a Child Representative, Petitioner's Motion to Modify the Joint Parenting Agreement and Custody Judgment, Respondent's Motion to Enforce the Joint Parenting Agreement and Custody Judgment, Respondent's Motion for Service by Special Order of Court; the parties being represented by their counsel and appearing on zoom, GAL appearing on zoom; the Court having jurisdiction over the parties and subject matter herein and being duly advised in the premises;

**IT IS HEREBY ORDERED:**

     1.     Petitioner's Motion to Modify the Joint Parenting Agreement and Custody Judgment and Respondent's Motion to Enforce the Joint Parenting Agreement and Custody Judgment are entered and continued;

     2.     Respondent's Motion for Service by Special Order of Court is resolved as Eric Pfanenstiel filed his Appearance on behalf of Marissa Girard;

     3.     The Court, *sua sponte*, appoints Joel Levin as the Child Representative pursuant to separate order of court.

A2

Case: 23-1894   Document: 17   Filed: 06/08/2023   Pages: 238

4.     Respondent's oral presentment of Motion for Temporary Restraining Order is pending filing of written Motion and continued to July 19, 2023 at 10:45 a.m. via zoom.

ENTERED:

JUDGE

Enrico J. Mirabelli
Karen V. Paige
Candace L. Meyers
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095  .
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Eric Pfanenstiel
epfanenstiel@jbpfamilylaw.com

Joseph P. O'Brien
**Opal O'Brien LLC**
Attorneys for Petitioner
joe@opalobrien.com
service@opalobrien.com
Firm No. 59789 .

Vanessa Hammer
**Guardian ad Litem**
vhammer@hsqlawfirm.com

A2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF )
                                 )

KENTON GIRARD, )
        Petitioner, )
                                   )

     and                        )    No.    2015 D 009633
                                   )

JANE GIRARD, )
         Respondent, )
                                   )

     and )
MARISSA GIRARD, )
        Third Party Respondent )

ENTERED
Judge William Stewart Boyd-1760
JUL 25 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### ORDER

     THIS MATTER coming before the Court for status on July 19, 2023, pursuant to the Court's Order on July 14, 2023; the Court having reviewed courtesy copies of Respondent's *Emergency Motion for Temporary Restraining Order and For Other Relief*, Kenton's *Response to Emergency Petition for TRO*, and Third-Party Respondent's *Response to Emergency Petition for Temporary Restraining Order, and for Other Relief*, the parties each present on Zoom; each party's counsel, the Guardian Ad Litem and the Child Representative appearing via Zoom; the Court having met with all counsels in a breakout room and having heard argument from counsels, a status from the Child Representative of his upcoming appointments with Kenton and Jane, and a report from the GAL, between 10:45 a.m. and 11:45 a.m., at the conclusion of which the Court made the order set forth herein; the Court having jurisdiction over the parties and subject matter herein and being duly advised in the premises;

### IT IS HEREBY ORDERED:

     1. Respondent's *Emergency Motion for Temporary Restraining Order and For Other Relief* is granted in part, specifically as to the deletion of social media postings as set forth herein and not allowing any further posting as set forth herein; and denied in part, specifically as to paragraphs c. – f on page 8 of said pleading, including Jane's requested relief for the Court to order the children's cell phones and other electronic devices to be placed with the Child Representative.

     2. Kenton Girard, Petitioner (hereinafter "Kenton"), and Marissa Girard, Third Party Respondent (hereinafter "Marissa"), shall oversee the

A2

deletion of all of the minor children's social media postings which relate to the instant litigation/ case, including but not limited to postings that relate to this case on: Instagram accounts (including but not limited to ), TikTok accounts, Facebook accounts, and/or any other social media accounts, platforms and/or web sites. Kenton and Marissa shall oversee that the children delete all such postings within 24 hours of this Court's Order.

3. Kenton Girard, Petitioner, and Marissa Girard, Third Party Respondent, shall instruct the minor children, and shall oversee, that neither child shall post any social media postings related to the instant litigation.

4. The Court finds that the children have the relationship with Kenton and reside solely with Kenton and Marissa (though not via Court Order); as such, Kenton shall inform the children of the appointment of the Child Representative, Joel Levin, prior to the children's first meeting with him.

5. Kenton and Marissa shall oversee and shall instruct the children not to communicate with or be interviewed by any reporters, media personalities, and the like. ~~Likewise, no party to this case shall communicate with or be interviewed by any reporters, media personalities and the like.~~ *WJG*

6. Pre Trial date of August 9, 2023 at 11:30 a.m., previously set by the Court, stands. All pending Motions of the parties, including but not limited to Kenton's Motions for In-Camera Interview, are entered and continued to said Pre-Trial.

ENTERED:

_____
JUDGE

Enrico J. Mirabelli
Karen V. Paige
Candace L. Meyers
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Joseph P. O'Brien
**Opal O'Brien LLC**
Attorneys for Petitioner
joe@opalobrien.com
service@opalobrien.com
Firm No. 59789

Vanessa Hammer
**Guardian ad Litem**
vhammer@hsqlawfirm.com

A2

Eric Pfanenstiel
Attorney for Third Party Respondent
epfanenstiel@jbpfamilylaw.com

Joel Levin, Children's Representative
jlevin@levinfamilylaw.com
service@levinfamilylaw.com

Page 3 of 3

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
      Petitioner, )     No. 15 D 009633
)      Cal. 45
     and )
)
JANE GIRARD, )
      Respondent, )
)
     and )
)
MARISSA GIRARD, )
      Third-Party Respondent. )

> **E N T E R E D**
> Judge William Stewart Boyd-1760
> **AUG 07 2023**
> IRIS Y. MARTINEZ
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL

**ORDER**

     This matter coming before the Court upon Third-Party Respondent, MARISSA GIRARD's, oral motion for leave to amend her Response to Emergency Petition for Temporary Restraining Order, and for Other Relief; Petitioner and Respondent being represented by counsel and the minor children being represented by the Guardian ad Litem, Vanessa Hammer, and Child Representative, Joel Levin; the Court having jurisdiction over the parties and subject matter herein and being duly advised in the premises;

     **IT IS HEREBY ORDERED:**

1. Marissa Girard's oral motion for leave to amend scrivener's error in her Response to Emergency Petition for Temporary Restraining Order is granted.

Dated: <u>July 19, 2023</u>

ENTER:

_____ #1760

JUDGE

JACKSON BUCKLEY & PFANENSTIEL, LLP
Attorney for Third-Party Respondent
1044 N. Western Avenue, Suite F
Lake Forest, Illinois 60045
Telephone No. (847) 457-4848
Service: Service@jbpfamilylaw.com

A2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION
FIRST MUNICIPAL DISTRICT – DALEY CENTER, CHICAGO

**IN RE THE FORMER MARRIAGE OF:**

KENTON GIRARD,
                Plaintiff,      )
                                )
vs.                             )     No. 2015 D 009633
                                )     Calendar 32
JANE GIRARD,                    )
                Defendant.      )

*(handwritten: 5246P, 4215P/R, 4406, 4806)*

```
E N T E R E D
Judge William Stewart 3-1760
AUG 16 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK CO., IL
```

**ORDER AUGUST 9, 2023**

This matter coming before the Court for Pre-Trial Conference, and for presentment of Jane's Petition for Indirect Civil Contempt, and presentment of Kenton's Motion to Stay, the attorneys appearing, the child representative Joel Levin appearing, the Court conducting a Pre-Trial Conference; and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED AS FOLLOWS:**

1) Dr. Amabile's 604.10(b) Report shall not be released to any party, attorney, or the attorney for the children, or the previously appointed Guardian ad Litem, or to any individual, until further Order of Court.

2) The attorney for the children, Joel Levin, shall contact Dr. Amabile to inform Dr. Amabile that she is not to release her report until further Order of Court.

3) Joel Levin's oral motion to seal the file is denied.

4) The attorneys are ordered to participate in a settlement conference before the next Court date.

5) This matter is set for status of settlement on September 14, 2023 at 3:00 p.m. on ZOOM.

_____          _____
DATED                                     COURT  *(signature #1760)*

**Joseph P. O'Brien**
joe@opalobrien.com
**OPAL O'BRIEN LLC #59789**
310 S. County Farm Road, Suite D
Wheaton, Illinois 60187
(630) 384-0165
Electronic Service: **service@opalobrien.com**



A2

No. 1-23-1372

## IN THE APPELLATE COURT OF ILLINOIS, FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN RE: THE FORMER MARRIAGE OF | ) | |
| | ) | |
| KENTON GIRARD, | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | On appeal from the Circuit Court |
| | ) | of Cook County |
| JANE GIRARD, | ) | Domestic Relations Division |
| Respondent/Appellee, | ) | No. 2015 D 009633 |
| | ) | Honorable Judge William Stewart Boyd |
| and | ) | Judge Presiding |
| | ) | |
| MARISSA GIRARD, | ) | |
| Third-Party Respondent/Appellant. | ) | |

### ORDER

This matter coming before the Appellate Court of Illinois, First Judicial District, on Jackson Buckley & Pfanenstiel LLP's Motion to Withdraw as Counsel for Appellant/Third-Party Respondent, *Instanter* pursuant to Illinois Supreme Court Rule 13, proper notice having been given to the Appellant/Third-Party Respondent, and the court being advised in the premises, IT IS HEREBY ORDERED:

1.     Jackson Buckley & Pfanenstiel LLP's Motion to Withdraw as Counsel for Appellant/Third-Party Respondent, *Instanter*, is granted.

2.     Ms. Girard shall file an Appearance either through counsel or as a *pro se* litigant with the Appellate Court of Illinois, First Judicial District, by September 4, 2023.

ENTERED:

Terrence Lavin

JUSTICE

Prepared by:
JACKSON BUCKLEY & PFANENSTIEL, LLP
ARDC No. 6300551
1044 N. Western Avenue, Suite F
Lake Forest, Illinois 60045
Telephone No. (847) 457-4848
Service: Service@jbpfamilylaw.com

**ORDER ENTERED**

**AUG 2 8 2023**

APPELLATE COURT FIRST DISTRICT

A2

No. 1-23-1361

## IN THE APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

IN RE THE FORMER MARRIAGE OF:

| | |
|---|---|
| KENTON GIRARD<br>    Petitioner/Appellant,<br><br>and<br><br>JANE GIRARD,<br>    Respondent/Appellee.<br><br>and<br><br>MARISSA GIRARD,<br>    Third-Party Respondent/Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Appeal to the Appellate Court of Illinois<br>from the Circuit Court of<br>Cook County, Illinois<br>Domestic Relations Division<br><br>No. 2015 D 009633<br><br>The Honorable William S. Boyd,<br>Judge Presiding |

### ORDER

This matter coming before the Appellate Court of Illinois, First Judicial District, on OPAL O'BRIEN LLC's Motion to Withdraw as Counsel for Appellant/Petitioner, *Instanter* pursuant to Illinois Supreme Court Rule 13, proper notice having been given to the Appellant/Petitioner, and the court being advised in the premises, IT IS HEREBY ORDERED:

1. OPAL O'BRIEN LLC's Motion to Withdraw as Counsel for Appellant/Petitioner, *Instanter*, is granted.

2. Mr. Girard shall file an Appearance either through counsel or as a *pro se* litigant with the Appellate Court of Illinois, First Judicial District, on or before September 5, 2023.

ENTERED: **Terrence Lavin**
_____
JUSTICE

Prepared by:
Joseph P. O'Brien
OPAL O'BRIEN LLC
Attorneys for Appellant/Petitioner
310 S County Farm Road, Suite D
Wheaton, Illinois 60187
Telephone No. (630) 384-0165
ARDC # 6297312

## ORDER ENTERED

AUG 2 9 2023

**APPELLATE COURT FIRST DISTRICT**

A2

Order Regarding Substitution of Judge or Recusal

(Rev. 12/01/20) CCDR 0634

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☑ Marriage ☐ Civil Union ☐ Legal Separation ☐ Allocation of Parental Responsibilities ☐ Visitation (Non-Parent) ☐ Support ☐ Parentage of:

KENTON GIRARD

No.: 2015 D 009633

Petitioner

and

JANE GIRARD

Calendar: C

Respondent

MARISSA GIRARD

Third Party Respondent

### ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL

THIS CAUSE being properly before the Court, and Court being advised in the premises:

☐ IT IS ORDERED THAT: pursuant to a Petition for Substitution of Judge filed by the

☑ Petitioner ☐ Respondent 4100☐    8283☑ for cause, the above entitled cause is

hereby transferred to the 8282 ☑ PRESIDING JUDGE 4201 ☐ PRELIMINARY JUDGE OF

Team _____ for reassignment <u>for hearing on Petitioner's Motion to Recuse.</u>

☐ IT IS ORDERED THAT: the assigned judge having recused himself/herself pursuant to Supreme Court Rule 63(c)

4110 and having withdrawn from further proceedings in this cause, the above entitled cause is hereby transferred to

the 8282 ☐ PRESIDING JUDGE 4201 ☐ PRELIMINARY JUDGE of

Team _____ for reassignment.

Atty. No.: 80095

Name: Karen V. Paige / Beermann LLP

Attorney for : Respondent, Jane Girard

Address: 161 North Clark Street, Suite 3000

City/State/Zip Code: Chicago, IL 60601

Telephone: (312) 621-9700

Primary Email Address:
kpaige@beermannlaw.com

Secondary Email Address:
parice@beermannlaw.com

Other Email Address:

ENTERED:

Dated: _____

_____ #1766

Judge                                    Judge's No.

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

IN RE MARRIAGE OF:

Kenton Girard,

      Petitioner,

      v.

Jane Girard,

      Respondent

Case No.: 15D9633

*ENTERED*
*Judge Regina Scannicchio-2059*
*OCT 18 2023*
*IRIS Y. MARTINEZ*
*CLERK OF THE CIRCUIT COURT*
*OF COOK COUNTY, IL*

**Hearing Order**

This matter comes before this court on a trial assignment for Substitution of Judge for cause and the court being fully advised in the premises;

IT IS HEREBY ORDERED this matter shall be heard in person on Friday, October 27, 2023 at 11:00am before the Honorable Naomi Schuster, Calendar 22, Room 3007. The hearing date of October 17, 2023 is stricken.

Copies of this order shall be sent to: kpaige@beermannlaw.com, mdelster@beermannlaw.com, jlevin@levinfamilylaw.com, kg5252@yahoo.com and marissadakis@gmail.com

DATE:
October 18, 2023

Acting Presiding Judge Regina Scannicchio

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

| | | | |
|---|---|---|---|
| IN RE: THE FORMER MARRIAGE OF | ) | | |
| | ) | | |
| KENTON GIRARD, | ) | | |
|      Petitioner, | ) | | |
| | ) | | |
|    and | ) | No. | 2015 D 009633 |
| | ) | | |
| JANE GIRARD, | ) | Cal. 22 | |
|      Respondent, | ) | | |
| | ) | | |
|    and | ) | | |
| | ) | | |
| MARISSA GIRARD, | ) | | |
|     Third Party Respondent. | ) | | |

**ENTERED**

Oct. 31, 2023

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK

**ORDER**

THIS MATTER coming before the Hon. Naomi H. Schuster for hearing on Petitioner's *Motion to Recuse the Hon. William S. Boyd,* all parties appearing in person, Respondent also appearing through counsel, the Court having considered the parties' respective filings and argument, and being fully advised in the premises, IT IS HEREBY ORDERED THAT:

1.    For the reasons stated on the record, Petitioner's *Motion to Recuse the Hon. William S. Boyd* is DENIED.

2.    Respondent is granted leave to file, within 7 days, a motion seeking fees and costs incurred in her defense of Petitioner's *Motion to Recuse* pursuant to Supreme Court Rule 137 and section 508(b) of the IMDMA. Said Motion shall be heard by Judge Boyd.

3.    This mater shall be transferred back to Calendar C by separate order.

ENTERED:

s\ *Naomi H. Schuster* 1966
JUDGE

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

A2

**4201/4282 – Transfer to Judge  4295 – Close Discovery – Allowed**
**8201 – Return for Random Assignment**
**Orders of Transfer, Assignment and Reassignment**                    **(06/16/21) CCDR 0014 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☑ Marriage  ☐ Civil Union  ☐ Legal Separation  ☐ Allocation of Parental Responsibilities
☐ Visitation (Non-Parent)  ☐ Support  ☐ Parentage of:

| | |
|---|---|
| KENTON GIRARD | **ENTERED** |
| Petitioner | **Oct. 31, 2023** |
| Case No. 2015 D 9633 | **Iris Y. Martinez** |
| and | **Clerk of the Circuit Court of Cook County, Il** |
| Calendar 22 | |
| JANE GIRARD | **DEPUTY CLERK** |
| Respondent | |

### ORDERS OF TRANSFER, ASSIGNMENT AND REASSIGNMENT

This Cause being properly before the Court, and the Court being advised in the premises:

I.  Transfers (Temporary)

☐  That this cause is transferred to the  ☐ 4852 - Reconciliation Calendar  ☐ 4853 - Military Calendar.

All existing orders shall remain in full force and effect except _____.

☐  That this cause is transferred to the Collaborative Process Calendar. All prior orders of court, including access to the court for enforcement and discovery, shall be considered suspended, and all proceeding shall be stayed , unless other wise expressly provided by law, agreement of the parties, or order by the court.

☐  That this cause be returned from the  ☐ 4752 - Reconciliation Calendar  ☐ 4753 - Military Calendar
☐ Collaborative Process Calendar.

☐  4282  IT IS ORDERED that the above entitled cause is transferred to Judge _____

Calendar _____ for _____.

☐  Pretrial  ☐ Contested Motion for _____
all other matters being retained by the Preliminary Judge.

☑  4201  IT IS ORDERED that this cause is returned to Judge  William S. Boyd

Calendar  C _____ for further proceedings, the transferred matter being concluded.

II.  Assignment (Trial)

☐  It is Ordered that:

☐  4295  Discovery is closed as of _____ .

☐  4482  This cause is set for Trial before Judge _____

Calendar _____
Instanter. All parties or their counsel shall proceed immediately to courtroom _____ .

Note: Cases set for trial can only be continued for cause, on motion pursuant to Supreme Court Rule and Domestic Relations General Order 86 D-1.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 2

A2

Orders of Transfer, Assignment and Reassignment                    (06/16/21) CCDR 0014 B

III. Reassignments to or from Presiding Judge

    [ ] 8282  This Cause coming before the court for reassignment, IT IS HEREBY ORDERED that this is

          assigned to the Presiding Judge for:  [ ] Hearing;  [ ] Consolidation within the

          Division: Case Number _____    Calendar _____ ;

          or [ ] Other _____ .

    [ ] 8201  Clerk for the Circuit Court for random electronic assignment to a calendar:

          [ ] Preliminary   [ ] Individual   [ ] Post-Judgment   [ ] Expedited Child Support

          [ ] Excluding Calendar(s) _____

ENTERED:

Dated: __10/27/23__

s\ *Naomi H. Schuster 1966*
_____
        Judge                    Judge's No.

Atty. No.: __80095__

Atty Name: __Matthew Elster/Beermann LLP__

Atty. for: __Respondent__

Address: __161 N Clark Street #3000__

City: __Chicago__                    State: __IL__

Zip: __60601__

Telephone: __3126219700__

Primary Email: __kpaige@beermannlaw.com__

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
        Petitioner, )
)
    and )    No.   2015 D 009633
)
JANE GIRARD, )
        Respondent, )
)    CAL: C
    and )
)
MARISSA GIRARD, )
        Third Party Respondent. )

> E N T E R E D
> Judge William Stewart Boyd-1760
> **NOV 17 2023**
> IRIS Y. MARTINEZ
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL

## ORDER

**THIS MATTER** coming before the Court for Status and presentation of Respondent's Motion for 137 Sanctions and 508(b) Fees filed 11/6/2023 and Motion to Release Dr. Amabile's Report filed 11/6/2023, due notice given; Jane Girard represented by counsel appearing on zoom, Petitioner and Third Party Respondent having filed pro se Appearance, Petitioner appearing on Zoom; and the minor children being represented by Joel Levin who appeared on Zoom; and the Court having jurisdiction over the parties and subject matter herein and being duly advised in the premises;

**IT IS HEREBY ORDERED:**

1.    Kenton Girard shall pay his outstanding balance in full to Dr. Amabile by December 8, 2023.   The parties reserve the right to review the billing statements and thereafter pose questions regarding same.

1

A2

2.    This matter is set for hearing on Respondent's Motion for 137 Sanctions and 508(b) Fees filed and Motion to Release Dr. Amabile's Report **January 10, 2024 at 8:30 a.m.** via Zoom (Meeting ID: 864 6297 1874 Passcode: 672037)- Calendar C.

3.    This matter is set for hearing on Respondent's Second Petition for Indirect Civil Contempt of Court on **February 9, 2024 at 1:00 p.m., in person 1605,** if rule issues it shall be returnable *instanter.* All parties shall appear.

4.    Petitioner and Third Party Respondent are granted 21 days to respond to the Respondent's Second Petition for Indirect Civil Contempt of Court (if not already responded), Respondent's Motion for 137 Sanctions and 508(b) Fees filed and Motion to Release Dr. Amabile's Report.

ENTERED:

_____

JUDGE

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

2

A2

Order Regarding Substitution of Judge or Recusal                    (Rev. 12/01/20) CCDR 0634

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☑ Marriage ☐ Civil Union ☐ Legal Separation ☐ Allocation of Parental Responsibilities
☐ Visitation (Non-Parent) ☐ Support ☐ Parentage of:

**KENTON GIRARD**

Petitioner

and

**JANE GIRARD**

Respondent

No.: **2015 D 9633**

Calendar: **34**

E N T E R E D
Judge Dominique Ross-2008

FEB 29 2024

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL

THIS CAUSE being properly before the Court, and Court being advised in the premises:

☑ IT IS ORDERED THAT: pursuant to a Petition for Substitution of Judge timely filed by the

☐ Petitioner ☑ Respondent 4100 ☑ as of right 8283 ☐ for cause, which has been granted, the above entitled cause is

hereby transferred to the 8282 ☐ PRESIDING JUDGE 4201 ☒ PRELIMINARY JUDGE OF

Team _____ _C1_ _____ for reassignment.

☐ IT IS ORDERED THAT: the assigned judge having recused himself/herself pursuant to Supreme Court Rule 63(c)

4110 and having withdrawn from further proceedings in this cause, the above entitled cause is hereby transferred

to the 8282 ☐ PRESIDING JUDGE 4201 ☐ PRELIMINARY JUDGE of

Team _____ for reassignment.

Atty. No.: **80095**
Name: **BEERMANN LLP**
Attorney for : **Jane Girard**
Address: **161 North Clark St. , Suite 3000**
City/State/Zip Code: **Chicago, IL 60601**
Telephone: **(312) 627-9700**
Primary Email Address:
**kpaige@beermannlaw.com**
Secondary Email Address:

_____

Other Email Address:

_____

_DRoss 2008_

ENTERED:

Dated: _____

_____
Judge                                        Judge's No.

## IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 1

A2

4201/4282 – Transfer to Judge   4295 – Close Discovery – Allowed
8201 – Return for Random Assignment
Orders of Transfer, Assignment and Reassignment                    (06/16/21) CCDR 0014 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE:  ☐ Marriage  ☐ Civil Union  ☐ Legal Separation  ☐ Allocation of Parental Responsibilities
☐ Visitation (Non-Parent)  ☐ Support  ☐ Parentage of:

Kenton Girard

_____ Petitioner

and

Jane Girard

_____ Respondent

Case No. _____ 2015d9633 _____

Calendar _____ C _____

**ENTERED**

**MAR 0 1 2024**

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### ORDERS OF TRANSFER, ASSIGNMENT AND REASSIGNMENT

This Cause being properly before the Court, and the Court being advised in the premises:

I.  Transfers (Temporary)

☐  That this cause is transferred to the  ☐ 4852 - Reconciliation Calendar  ☐ 4853 - Military Calendar.

All existing orders shall remain in full force and effect except _____ .

☐  That this cause is transferred to the Collaborative Process Calendar. All prior orders of court, including
access to the court for enforcement and discovery, shall be considered suspended, and all proceeding shall
be stayed , unless other wise expressly provided by law, agreement of the parties, or order by the court.

☐  That this cause be returned from the  ☐ 4752 - Reconciliation Calendar  ☐ 4753 - Military Calendar
☐ Collaborative Process Calendar.

☑  4282  IT IS ORDERED that the above entitled cause is transferred to Judge _____ Trowbridge _____

Calendar _____ 31 _____  for _____ all post decree matters _____ .

☐  Pretrial  ☐ Contested Motion for _____
all other matters being retained by the Preliminary Judge.

☐  4201  IT IS ORDERED that this cause is returned to Judge _____

Calendat _____ for further proceedings, the transferred matter being concluded.

II.  Assignment (Trial)

☐  It is Ordered that:

☐  4295  Discovery is closed as of _____ .

☐  4482  This cause is set for Trial before Judge _____

Calendar _____

Instanter. All parties or their counsel shall proceed immediately to courtroom _____ .

Note: Cases set for trial can only be continued for cause, on motion pursuant to Supreme Court Rule and
Domestic Relations General Order 86 D-1.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 2

A2

**Orders of Transfer, Assignment and Reassignment**              (06/16/21) CCDR 0014 B

III. Reassignments to or from Presiding Judge

☐ 8282 This Cause coming before the court for reassignment, IT IS HEREBY ORDERED that this is
assigned to the Presiding Judge for: ☐ Hearing; ☐ Consolidation within the

Division: Case Number _____ Calendar _____;

or ☐ Other _____

☐ 8201 Clerk for the Circuit Court for random electronic assignment to a calendar:

☐ Preliminary ☐ Individual ☐ Post-Judgment ☐ Expedited Child Support

☐ Excluding Calendar(s) _____

ENTERED:

Dated: _____

Judge Judge Jill Rose Quinn          Judge's No.

MAR 01 2024

Circuit Court - 2286

Atty. No.: _____

Atty Name: _____

Atty. for: Order of Court _____

Address: _____

City: _____ State: _____

Zip: _____

Telephone: _____

Primary Email: _____

Order Regarding Substitution of Judge or Recusal                         (Rev. 12/01/20) CCDR 0634

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE:  ☑ Marriage  ☐ Civil Union  ☐ Legal Separation  ☐ Allocation of Parental Responsibilities
        ☐ Visitation (Non-Parent)  ☐ Support  ☐ Parentage of:

**KENTON GIRARD** _____        No.: **2015 D 9633**

Petitioner
                        and

**JANE GIRARD** _____          Calendar: **31**

Respondent

### ORDER REGARDING SUBSTITUTION OF JUDGE OR RECUSAL

THIS CAUSE being properly before the Court, and Court being advised in the premises:

☑ IT IS ORDERED THAT: pursuant to a Petition for Substitution of Judge timely filed by the

☑ Petitioner ☐ Respondent 4100 ☑ as of right 8283 ☐ for cause, which has been granted, the above entitled cause is

hereby transferred to the 8282 ☐ PRESIDING JUDGE 4201 ☑ PRELIMINARY JUDGE OF

Team **C** _____ for reassignment.

☐ IT IS ORDERED THAT: the assigned judge having recused himself/herself pursuant to Supreme Court Rule 63(c)

4110 and having withdrawn from further proceedings in this cause, the above entitled cause is hereby transferred

to the 8282 ☐ PRESIDING JUDGE 4201 ☐ PRELIMINARY JUDGE of

Team _____ for reassignment.

Atty. No.: **80095** _____
Name: **BEERMANN LLP** _____
Attorney for : **Jane Girard, Respondent**
Address: **161 North Clark St. , Suite 3000**
City/State/Zip Code: **Chicago, IL 60601**
Telephone: **(312) 627-9700**
Primary Email Address:
**kpaige@beermannlaw.com**
Secondary Email Address:
**clmeyers@beermannlaw.com**
Other Email Address:
_____

*Judge Bradley R. Trowbridge*

*APR 05 2024*

*Circuit Court - 2331*

ENTERED:

Dated: _____

_____
Judge                                    Judge's No.

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 1

A2

**ENTERED**

Apr. 12, 2024

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE: THE FORMER MARRIAGE OF )
                                     )
KENTON GIRARD,               )
              Petitioner,      )
                                       )
     and                              )    No.    2015 D 009633
                                         )
JANE GIRARD,                 )
                Respondent,    )
                                         )
     and                              )
                                         )
MARISSA GIRARD,         )
              Third Party Respondent. )

### ORDER

**THIS MATTER** coming before the Court for presentment of Respondent's Motion to Set Trial and Case Management Conference and Motion to Enforce 604.10(b) recommendations and presentation of Petitioner's Motion for Substitution of Judge as of Right (Judge Trowbridge) and Motion for 604.10(c) Evaluation; this matter being reassigned to Judge Goldfarb, Calendar 35, Kenton Girard present having filed his *Pro se* Appearance, attorneys for Jane Girard Beermann LLP present, Joel Levin representing the minor children present all via zoom, the third party respondent not appearing; this Court in Cal. 35 having conducted a pretrial conference;

**IT IS HEREBY ORDERED:**

     1)     Respondent is granted 21 days to respond to Petitioner's Motion for 604.10(c), should she choose;

     2)     Petitioner is granted 21 days to respond to Respondent's Motion to Set Trial and Case Management Conference and Motion to Enforce 604.10(b) Recommendations if not already responded to;

     3)     Within 7 days Kenton shall reach out to Dr. Robert Shapiro to determine the timeline Dr. Shapiro requires for Kenton's 601.10(c) evaluation. On April 26, 2024, Kenton shall report to the Court if he wants to move forward with the 604.10(c) evaluation at his sole cost;

     4)     Kenton and the children's request for an in-camera interview with the Court is agreed to take place at a later agreed-upon date, time, and

A2

protocol.  The 604.10(b) report shall be hand- delivered to the Court in Room 2805 in advance of the in-camera interview.  The parties shall discuss protocol surrounding the in-camera interview at the April 26, 2024 court date.  The parties will schedule the date to exchange proposed protocol on April 26, 2024.

5)  In addition to Paragraph 4 and 5 above, this matter is set for status of Kenton's payment of Joel Levin's fees and for the setting of a 218 Case Management conference on April 26, 2024 at 9:00 a.m. via zoom.

ENTERED:

*Renee Goldfarb*

Judge Renee Goldfarb

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

2

A2

# Exhibit - C

**ENTERED**

**May. 14, 2024**

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF )
　　　　　　　　　　　　　　　　　　 )
KENTON GIRARD, )
　　　　　　　　Petitioner, )
　　　　　　　　　　　　　　　　　　 )
　　and )　No.　　2015 D 009633
　　　　　　　　　　　　　　　　　　 )
JANE GIRARD, )
　　　　　　　　Respondent, )
　　　　　　　　　　　　　　　　　　 )
　　and )
　　　　　　　　　　　　　　　　　　 )
MARISSA GIRARD, )
　　　　　　　Third Party Respondent. )

## ORDER

　　**THIS MATTER,** coming before the Court for status of protocol surrounding the children's in-camera interview and 218 Case management conference;　Kenton Girard present having filed his *Pro se* Appearance, attorneys for Jane Girard, Beermann LLP, present, Joel Levin representing the minor children present all via zoom, the third party respondent not appearing; and the Court being duly advised in the premises;

**IT IS HEREBY ORDERED:**

1)　The children's in camera interview is set for June 10, 2024 at 2:00 p.m. at the Daley Center, Room 2805 with the following protocol;

　　a. Joel Levin, the Children's Representative, shall report to the Court the children's willingness to allow his presence;
　　b. Counsel for Respondent, Petitioner (pro se), and Third Party Respondent (pro se) have waived their right to be present for the interview;
　　c. The Court shall conduct the in-camera interview in chambers with each child separately;
　　d. The Court shall arrange for an official Court reporter. The entire interview shall be recorded and the transcript of the interviews shall be filed under seal and released only upon order of court
　　e. The parties and the Child's Representative may submit questions for the in-camera interview to the Court. The questions shall remain confidential with the Court. The questions do not have to be copied

A2

to the other parties.  The Court shall determine what questions she asks the children.

2)  ·  Petitioner's Motion for 604.10(c) is denied. Pursuant to the prior Order of Court, Respondent stated that Dr. Shapiro could not complete a report within 60 days and it is in the best interest of the children to have no more delays in this case.

3)  This matter shall proceed to immediate trial on outstanding pleadings on August 26, 2024 9:00 a.m.- 5:00 p.m.; August 27, 2024 1:00 p.m. – 5:00 p.m.; August 28, 2024 1:00 p.m.- 5:00 p.m.; August 29, 2024 9:00 a.m.- 5:00 p.m. at the Daley Center room 2805;

4)  The parties shall work together on a Case Management Order setting specific deadlines and discovery closure dates;

ENTERED:          5/14/24

*Renee Goldfarb*  1905
Judge Renee Goldfarb

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
           Petitioner, )
)
   and )    No.   2015 D 009633
)
JANE GIRARD, )
           Respondent, )
)
   and )
)
MARISSA GIRARD, )
           Third Party Respondent. )

> **ENTERED**
> Jun. 4, 2024
> Iris Y. Martinez
> Clerk of the Circuit Court
> of Cook County, IL
>
> DEPUTY CLERK _____

### ORDER

    **THIS MATTER** coming before the Court pursuant to the appearance of Petitioner, Kenton Girard (hereinafter "Kenton"), before the Honorable William Stewart Boyd via Zoom regarding a Petition for Order of Protection filed by Kenton Girard which was denied on an emergency basis on some prior date by another judicial officer; no notice having been given to Respondent, Jane Girard, or her counsel; the Court having requested that counsel for Respondent appear; Petitioner, Kenton Girard, and Respondent's counsel, Karen V. Paige of Beermann LLP having appeared via Zoom before the Court on May 30, 2024;

THE COURT FINDS:
> A) Petitioner, Kenton Girard, provided no notice to Respondent or her counsel of the Petition for Order of Protection previously or for the appearance before Judge Boyd;
> B) This matter has been permanently assigned to Judge Renee Goldfarb.

**IT IS HEREBY ORDERED:**

> 1) Petitioner, Kenton Girard's, oral motion for the Court to hear the Petition for Order of Protection is denied;

> 2) Petitioner, Kenton Girard, shall provide the Petition for Order of Protection (and any other pleadings filed with said Petition), along with all exhibits; Orders from the Petition for Order of Protection; and any correspondence to the Court, via email to the attorneys at Beermann LLP at the email addresses below within 24 hours;

A2

3) Petitioner, Kenton Girard's, Petition for Order of Protection is entered and continued to Trial in this matter before Judge Renee Goldfarb on the previously-set dates (pursuant to Judge Goldfarb's Order of May 14, 2024) beginning August 26, 2024 in person.

ENTERED:

*William Stewart Boyd #1760*

Judge William Stewart Boyd

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com
jsteele@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

2

A2

ENTERED
Jun. 14, 2024
Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL
DEPUTY CLERK_____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF )
                                )
KENTON GIRARD,                  )
                 Petitioner,    )
                                )
       and                      )   No.   2015 D 009633
                                )
JANE GIRARD,                    )
                 Respondent,    )
                                )
       and                      )
                                )
MARISSA GIRARD,                 )
       Third Party Respondent.  )

*5246 P*
*4246*
*4406 R*
*4801 PR*

### <u>ORDER</u>

**THIS MATTER** coming before the Court for hearing on Child

Representative Joel Levin's *Emergency Motion to Cancel In-Camera Interview by*

*the Child Representative* and Respondent Jane Girard's Response to same, and

Petitioner Kenton Girard's *Motion to Remove Third-Party Respondent Marissa*

*Girard* and Respondent Jane Girard's Response to same; Kenton Girard present

appearing *Pro se*, counsel for Jane Girard, Beermann LLP, and Joel Levin

representing the minor children present all via Zoom; the third party

respondent not appearing; the Court hearing argument on both pleadings and

their respective responses; the Court being duly advised in the premises;

A2

**IT IS HEREBY ORDERED:**

1) Petitioner's *Motion to Remove Third-Party Respondent Marissa Girard* is Denied.

2) Child Representative's Emergency *Motion to Cancel In-Camera Interview by the Child Representative* is Granted.

3) This matter is set for status on settlement negotiations between the parties on July 3, 2023 at 12:00 p.m. via Zoom. Meeting ID: 971 5226 9618; PW: 718655.

ENTERED:    **6/14/24**

*Renee Goldfarb*
Judge Renee Goldfarb

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

2

A2

ENTERED

Jul. 18, 2024

Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE: THE FORMER MARRIAGE OF   )
                                  )
KENTON GIRARD,                  )
           Petitioner,      )
                                  )
    and                    )   No.   2015 D 009633
                                    )
JANE GIRARD,               )
            Respondent,   )
                                    )
    and                    )
                                    )
MARISSA GIRARD,        )
           Third Party Respondent.  )

<u>**ORDER**</u>

      **THIS MATTER** coming before the Court pursuant the Order of June 12, 2024; appearing in Court via zoom were: Jane Girard, Respondent; Counsels for Jane Girard; Joel Levin, Children's Representative; and Kenton Girard (pro se); Third Party Respondent Marissa Girard (pro se) not appearing; the Court having inquired about the status of visits between Jane and the children, and having conducted a Pre Trial Conference;

**IT IS HEREBY ORDERED:**

    1)    Kenton Girard shall provide deposition dates for his deposition and Marissa's deposition to Jane's counsels by email on or before July 15, 2024;

    2)    Pre Trial Conference is set via Zoom on August 15, 2024, at 12 p.m.

                   ENTERED:        7/18/24

*Renee Goldfarb*
_____
          Judge Renee Goldfarb

A2

Order Prepared By
**BEERMANN LLP**
Attorneys for Respondent
161 N. Clark St., Ste. 3000
Chicago, IL 60601
Tel: 312-621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com
clmeyers@beermannlaw.com
jsteele@beermannlaw.com

Copies to
jlevin@levinfamilylaw.com
service@levinfamilylaw.com
kg5252@yahoo.com
marissadakis@gmail.com

2

A2

**Order for Recusal** _____ **(03/06/24) CCDR 0124**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE:  ☑ Marriage  ☐ Civil Union  ☐ Allocation of Parental Responsibilities
 ☐ Support  ☐ Parentage  ☐ Visitation (Non-Parent)  ☐ Other

_Kenton Girard_ _____
                       **Petitioner,**   Case No. _2015 D 009633_

         and                            Calendar: _35_

_Jane Girard_ _____
                       **Respondent.**
     _and_
_Marissa Girard, Third Party Respondent_
**ORDER FOR RECUSAL**

**ENTERED**

**AUG 1 4 2024**

(4110) This cause coming to be heard on the Court's own Motion for Recusal Pursuant to Canon 2.11 of
the Illinois Code of Judicial Conduct of 2023 and 735 ILCS 5/2-1001(a)(1), and the Court being
fully advised in the premises,

IT IS HEREBY ORDERED:

(4201) ☑ A Trial Judge having recused themselves, this cause is hereby transferred to Preliminary Calendar
Judge ☑ C  ☐ D  ☐ E for reassignment. This Order shall be sent to the Preliminary Judge.

(8282) ☐ An Individual Calendar Judge/Preliminary Judge having recused themselves, this cause is hereby
transferred to the Presiding Judge of the Domestic Relations Division, Calendar 01, for random
reassignment. This Order shall be sent to DRDdivorderscal01@cookcountycourt.com.

ENTERED:  Dated: _8/14/2024_     _[signature]_ #_1905_
                                    **Judge**          **Judge's No.**

Prepared by: _____

Attorney for:  ☐ Petitioner  ☐ Respondent  ☐ Child(ren)  Attorney #: _____  **OR**
               ☐ I do not have an attorney (Self-Represented Litigant)  Attorney #: 99500

Telephone: _____  Email: _____

Address: _____
         Street, Apt. #                        City          State      Zip

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 1

**A2**

Case: 1:25-cv-04586 Document #: 17 Filed: 04/28/25 Page 263 of 11 PageID 2386

**Order for Recusal**          **(03/06/24) CCDR 0124**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE: ☐ Marriage   ☐ Civil Union   ☐ Allocation of Parental Responsibilities
           ☐ Support   ☐ Parentage   ☐ Visitation (Non-Parent)   ☐ Other

_Kenton Girard_
            Petitioner,     Case No. _2015 D9633_

    and                 Calendar: _C_

_Jani Girard_
            Respondent.

Marissa Girard, _and_ third party Respondent

**ENTERED**

**AUG 16 2024**

### ORDER FOR RECUSAL

(4110) This cause coming to be heard on the Court's own Motion for Recusal Pursuant to Canon 2.11 of the Illinois Code of Judicial Conduct of 2023 and 735 ILCS 5/2-1001(a)(1), and the Court being fully advised in the premises,

IT IS HEREBY ORDERED:

(4201) ☐ A Trial Judge having recused themselves, this cause is hereby transferred to Preliminary Calendar Judge ☐ C   ☐ D   ☐ E for reassignment. This Order shall be sent to the Preliminary Judge.

(8282) ☐ An Individual Calendar Judge/Preliminary Judge having recused themselves, this cause is hereby transferred to the Presiding Judge of the Domestic Relations Division, Calendar 01, for random reassignment. This Order shall be sent to DRDdivorderscal01@cookcountycourt.com.

ENTERED: Dated: _8/16/24_              _____     _____
                                          Judge                 Judge's No.

Prepared by: _____

Attorney for: ☐ Petitioner   ☐ Respondent   ☐ Child(ren) Attorney #: _____ **OR**
             ☐ I do not have an attorney (Self-Represented Litigant) Attorney #: 99500

Telephone: _____    Email: _____

Address: _____
          Street, Apt. #                     City         State     Zip

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 1

A2

4201/4282 Transfer to Judge, 4295 Close Discovery Allowed,
8201 Return for Random Assignment

(Rev. 02/04/16) CCDR 0014

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: ☐ Marriage ☐ Civil Union ☐ Legal Separation ☐ Allocation of Parental Responsibilities
☐ Visitation (Non-Parent) ☐ Support ☐ Parentage of:

**KENTON GIRARD**

Petitioner

and

No.: **2015D 009633**

JANE GIRARD, MARISSA GIRARD, MATTHEW ELSTER, JOEL LEVIN, KAREN PAIGE

Calendar: **01**

Respondent

**ENTERED**
PRESIDING JUDGE REGINA SCANNICCHIO - 2059
**Aug. 19, 2024**
Iris Y. Martinez
Clerk of the Circuit Court
of Cook County, IL

### ORDERS OF TRANSFER, ASSIGNMENT AND REASSIGNMENT

THIS CAUSE being properly before the COURT, and the Court being advised in the premises:

DEPUTY CLERK

I. TRANSFERS (Temporary)
  ☐ That this cause is transferred to the 4852 ☐ Reconciliation Calendar 4853 ☐ Military Calendar. All existing orders
  shall remain in full force and effect except _____.
  ☐ That this cause be returned from the 4752 ☐ Reconciliation Calendar 4753 ☐ Military Calendar.

4282 ☑ IT IS ORDERED that the above entitled cause is transferred to Judge **FERNANDEZ**
  Calendar **99** for **ALL FUTURE MATTERS**

  ☐ PRETRIAL ☐ CONTESTED MOTION for _____
  all other matters being retained by the Preliminary Judge.

4201 ☐ IT IS ORDERED that this cause is returned to Judge_____
  Calendar _____ for further proceedings, the transferred matter being concluded.

II. ASSIGNMENT (Trial)
  ☐ IT IS ORDERED that:
  4295 ☐ Discovery is closed as of _____.
  4482 ☐ This cause is set for Trial before Judge_____ Calendar _____
    INSTANTER. ALL PARTIES OR THEIR COUNSEL SHALL PROCEED IMMEDIATELY TO COURTROOM _____.
  NOTE: CASES SET FOR TRIAL CAN ONLY BE CONTINUED FOR CAUSE, ON MOTION PURSUANT TO SUPREME COURT RULE AND
  DOMESTIC RELATIONS GENERAL ORDER 86 D-1.

III. REASSIGNMENTS TO OR FROM PRESIDING JUDGE
  8282 ☐ THIS CAUSE coming before the court for reassignment, IT IS HEREBY ORDERED that this is assigned to the
    Presiding Judge for: ☐ Hearing; ☐ Consolidation within the Division: Case Number _____
    Calendar _____; or ☐ Other **RECUSAL**
  8201 ☑ Clerk for the Circuit Court for random electronic assignment to a calendar ☐ Preliminary ☐ Individual
    ☐ Post-Judgment ☐ Expedited Child Support ☑ Excluding Calendar(s) **C, 35, 34,31**

Atty. No.: _____
Name: **ORDER OF COURT**

Atty. for:_____

Address: _____

City/State/Zip: _____

Telephone: _____

Primary Email: _____

Secondary Email: _____

Tertiary Email: _____

ENTERED:

Dated: _____

_Feannockio #2059_

Judge                 Judge's No.

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**DOMESTIC RELATIONS DIVISION, THIRD DISTRICT**

Kenton Girard _____ )
        Petitioner )    Court No. **2015 D 9633**
Jane Girard _____ )   [ ] Pre-Decree or [✔] Post-Decree
        Respondent )
Marissa Girard, Third-Party. )

**ENTERED**
Judge Rossana P. Fernandez-2141
**SEP  5 2024**
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**IN PERSON**
**REMOTE STATUS/ CASE MANAGEMENT ORDER**

This cause coming to be heard for REMOTE STATUS. Petitioner/ Respondent filed a [ ] Petition for Dissolution of Marriage OR [✔] Petition for _Case Mgt, Motion to Compel, Motion to WD_ filed on _9/4, 8/27, 8/28_

The parties share **2** minor children. Notice to all parties. The Court being fully advised in the premises.

**IT IS HEREBY ORDERED:**

1. **FINANCIAL AFFIDAVITS** have been Completed and Exchanged by the parties as of _____.

2. **FINANCIAL AFFIDAVITS** have NOT been completed but <u>shall</u> be Exchanged/ Updated (with all attachments) by the parties no later than the next _____ days, on or before _____.

3. **ALLOCATION OF PARENTAL RESPONSIBILITIES** ("Parenting Plan") has been Entered by Agreement of the parties on _11/4/2015_____.

4. **ALLOCATION OF PARENTAL RESPONSIBILITIES** ("Parenting Plan") has NOT been entered. Therefore, this matter is referred to Mediation (per separate order) _____ YES _____ NO _____ N/A

5. **WRITTEN DISCOVERY** shall be Propounded no later than _____, or shall be waived.

6. **WRITTEN DISCOVERY** shall be Completed by the Parties no later than _____.

7. **WRITTEN DISCOVERY** has been Completed by the Parties as of _____.

8. **ORAL DISCOVERY** shall be Completed by the Parties no later than _____.

9. This matter is continued to _October 18, 2024_____, at _1_ : _30_ AM/ PM FOR REMOTE:
   _____ STATUS ____ PRETRIAL _X_ HEARING : via "Zoom" Video Conferencing
   (a) _____ Service (b) _X_ Settlement (c) _____ Remaining Trial issues (d) _____ Allocation JGMT
   (d) _____ Petitioner/ Respondent Motion(s) for _____
   (e) _X_ Other: _30 min. case mgt. conf. All parties required to be present, Joel Levin granted leave to withdraw_

Kenton Girard, Marissa Girard
_____
Petitioner/ Petitioner's Attorney
kg5252@yahoo.com, marissadakis@gmail.com
_____
Email for Notices (print)

Beermann LLP, E. Mirabelli, C. Meyers
_____
Respondent/ Respondent's Attorney
clmeyers@beermannlaw.com
_____
Email for Notices (print)

**ATTORNEY NAME/ CODE:** 80095
**ATTORNEY FOR:** Jane Girard
**ADDRESS:** 161 N. Clark, #3000
**CITY/STATE:** Chicago, IL 60601
**PHONE:** 312-621-9700

**ENTERED:**
_signature_ #2141
**JUDGE**

**OTHER SIDE MUST BE COPIED ON ALL EMAILS**
* ALL EMAIL "SUBJECT" LINES SHALL CONTAIN: (PETITIONER LAST NAME) & (COURT NO.) & (FUTURE DATE) *
* Courtesy Copies 7 Days in advance TO: cbc.DomRelCR3009@CookCountyIL.Gov

A2

IN THE CIRCUIT COURT OF THE COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:              )
                                    )
KENTON GIRARD,                      )
            Petitioner,             )
                                    )
      and                           )      No. 2015 D 009633
                                    )
JANE GIRARD,                        )      Cal. 99
            Respondent.             )
                                    )
MARISSA GIRARD,                     )
                                    )
            Third Party Respondent. )


ENTERED
Judge Rossana P. Fernandez-2141
OCT 18 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

## ORDER

This case coming before the Court for Case Management Conference pursuant to the Order entered September 5, 2024; Petitioner, KENTON GIRARD, present in Court, *Pro Se*; Respondent, JANE GIRARD, present in Court with her counsels, Enrico J. Mirabelli and Karen V. Paige of Beermann LLP; Third Party Respondent, MARISSA GIRARD, not appearing in Court; the Court having heard argument regarding Petitioner, KENTON GIRARD's, Motion to Stay Proceedings, and having conducted a Case Management Conference; the Court Orders:

1.    Petitioner (Kenton) present in court, pro-se.

2.    Respondent (Jane) present in court with her Attorneys, Mirabelli and Paige.

3.    Third-Party Respondent (Marissa) failed to appear.


#2141

A2

4. The Court has reviewed a copy of the file-stamped Motion for Substitution of Judge (as a Matter of Right) filed by Third Party Respondent, Marissa Girard (file stamped 10-16-24 08:19 pm). The Court inquired if Third Party Respondent Marissa Girard was present, or if any counsel was present on her behalf, but Marissa Girard did not appear personally nor through counsel on her behalf. Third Party Respondent Marissa Girard's Motion for Substitution of Judge (as a Matter of Right) is *stricken*.

5. Minor Child's Motion to intervene (filed 08-12-24) is *Stricken and denied* for lack of legal capacity.

6. After reviewing Petitioner, Kenton Girard's, Motion for Stay of Proceedings, and Respondent, Jane Girard's, Response to Motion to for Stay of Proceedings, and *after hearing* argument of counsel and Petitioner, Kenton Girard, the Motion to Stay of proceedings is *Denied.*

7. The Court conducted a Case Management Conference and set Trial dates pursuant to the Court's Trial Order entered contemporaneously herewith.

ENTERED: 10-18-24

JUDGE

ENTERED
Judge Rossana P. Fernandez-2141
#214 OCT 18 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Karen V. Paige
Enrico J. Mirabelli
**BEERMANN LLP**
Attorneys for Respondent, Jane Girard
161 North Clark Street, Suite 3000
Chicago, Illinois 60601
T: (312) 621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com

Kenton Girard
**Petitioner (Pro-se)**
KG5252@Yahoo.com

Marissa Girard
**Third-Party Respondent**
MarissaDakis@Gmail.com

-2-

A2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### DOMESTIC RELATIONS DIVISION, THIRD DISTRICT

KENTON GIRARD )
_____ )
    Petitioner )  Court No. __15 D 9633__

)
JANE GIRARD )  Calendar **"99"**
_____ )
    Respondent )

)

**ENTERED**
Judge Rossana P. Fernandez-2141

**OCT 18 2024**

**IRIS Y. MARTINEZ**
**CLERK OF THE CIRCUIT COURT**
**OF COOK COUNTY, IL**

### TRIAL ORDER
### IN PERSON

THIS CAUSE COMING TO BE HEARD FOR TRIAL ASSIGNMENT. Notice to all parties.

The court being fully advised in the premises. **IT IS HEREBY ORDERED:**

1 All issues, including Contribution of Attorneys' Fees, shall be heard at the Trial for this cause,

  Unless otherwise ordered by the court.

2 **TRIAL** is scheduled to proceed on

| | | |
|---|---|---|
| **FEBRUARY 18** | , 2025 | at 11:00 AM |
| **FEBRUARY 19** | , 2025 | at 01:30 PM |
| **FEBRUARY 20** | , 2025 | at 01:30 PM |
| **FEBRUARY 21** | , 2025 | at 01:30 PM |

**WRITTEN DISCOVERY CLOSES (11-08-24)**
3 **ORAL (Non-Expert) DISCOVERY CLOSES (11-08-24)** _____ *(any claims or documents not*
 **ORAL (Expert) DISCOVERY CLOSES (12-31-24)**
  *disclosed timely shall be barred).*

4 Counsel of Record and/or the Parties *shall* exchange the following Documents no later than

  **FEBRUARY 04, 2025** **:**

   a. Updated Financial Affidavits (if any pending financial issues)
   b. Witness Lists;
   c. Written Stipulations;
   d. Updated Discovery;
   e. Trial Exhibits (and shall provide the court copies *via ONE EMAIL* with a numerical list of
    proposed Exhibits as **PDF** files and labeled (numerically) no later than *14 days prior to trial.*
   f. All Motions in Limine.

A2

5  Counsel of Record and/or the Parties *shall* provide to the Court **VIA ONE (1) EMAIL SUBMISSION,** and to each other, Courtesy Copies of the following, *within fourteen (14) days prior to trial,* on or before   **FEBRUARY 04, 2025**   :

*(All Exhibits shall be Marked in <u>Numerical Order</u> and attached as <u>separate</u> PDF files to one (1) Email to the Court):*

   a.  Updated Financial Affidavits (If any pending financial issues)
   b.  All Exhibits, including a list of stipulated Exhibits;
   c.  Any objections (in writing) to the opposing party's Exhibits;
   d.  Witness Lists;
   e.  Written Stipulations;
   f.  Petitions for Contribution to Attorneys' Fees;
   g.  List of all other Exhibits <u>not</u> stipulated to; and
   h.  ***Proposed Judgment Order from each party, including a separate Allocation Judgment, if applicable.***

6  Failure to submit appropriate Fee Petition(s) on the day of Trial *shall* be deemed a waiver of contribution to Attorney's Fees.

7  Witnesses not identified on a Witness List *shall* be barred from testifying at trial.

8  The parties must provide a court reporter at their own expense.

9  All Settlement discussions between the parties shall take place <u>prior to</u> the day of trial and *No Pretrial Request will be entertained on the day of trial.*

10  The case *shall* be ***Dismissed for Want of Prosecution*** if the Petitioner fails to appear and/or fully comply with this Order.

11  An ***Order of Default shall*** be entered against the Respondent if the Respondent fails to appear and/or does not fully comply with this Order/ Likewise for any Third-Party.

**KENTON GIRARD (Petitioner)**                **ENRICO MIRABELLI (Attorney)**

**Petitioner/ Petitioner's Attorney (print)**       **Respondent/ Respondent's Attorney (print)**

KG5252@Yahoo.com                             EJMirabelli@BeermanLaw.com

**Email for Notices (print)**                      **Email for Notices (print)**

** Third-Party (Marissa Girard) MarissaDakis@Gmail.com

**ATTORNEY CODE:**
**ATTORNEY NAME:**
**ATTORNEY FOR:**        **O/C**
**ADDRESS:**
**CITY/STATE:**
**PHONE:**
**EMAIL:**

**ENTERED:** 10-18-24

_____ JUDGE

<table>
<tr><td>E N T E R E D<br>Judge Rossana P. Fernandez-2141<br>#2141  OCT 1 8 2024<br>IRIS Y. MARTINEZ<br>CLERK OF THE CIRCUIT COURT<br>OF COOK COUNTY, IL</td></tr>
</table>

**OPPOSING SIDE MUST BE COPIED ON ALL EMAILS**
*ALL EMAIL "SUBJECT" LINES SHALL CONTAIN: (LAST NAME OF PETITIONER) AND (COURT NO.) *
** Courtesy Copies 7 Days in advance TO: ccc.DomRelCR3009@CookCountyIL.Gov

**A2**

IN THE CIRCUIT COURT OF THE COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                    )
                                          )
KENTON GIRARD,                            )
                    Petitioner,           )
                                          )
         and                              )        No. 2015 D 009633
                                          )
JANE GIRARD,                              )        Cal. 99
                    Respondent.           )
                                          )
MARISSA GIRARD,                           )
                                          )
           Third Party Respondent.    )

**ENTERED**
Judge Rossana P. Fernandez-2141

**OCT 18 2024**

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

### ORDER

This case coming before the Court for Case Management Conference pursuant to the Order entered September 5, 2024; Petitioner, KENTON GIRARD, present in Court, *Pro Se*; Respondent, JANE GIRARD, present in Court with her counsels, Enrico J. Mirabelli and Karen V. Paige of Beermann LLP; Third Party Respondent, MARISSA GIRARD, not appearing in Court; the Court having heard argument regarding Petitioner, KENTON GIRARD's, Motion to Stay Proceedings, and having conducted a Case Management Conference; the Court Orders:

   1.   Petitioner (Kenton) present in court, pro-se.

   2.   Respondent (Jane) present in court with her Attorneys, Mirabelli and Paige.

   3.   Third-Party Respondent (Marissa) failed to appear.

*signature* #2141

A2

4.     The Court has reviewed a copy of the file-stamped Motion for
Substitution of Judge (as a Matter of Right) filed by Third Party Respondent, Marissa
Girard (file stamped 10-16-24 08:19 pm). The Court inquired if Third Party
Respondent Marissa Girard was present, or if any counsel was present on her behalf,
but Marissa Girard did not appear personally nor through counsel on her behalf.
Third Party Respondent Marissa Girard's Motion for Substitution of Judge (as a Matter
of Right) is *stricken.*

5.     Minor Child's Motion to intervene (filed 08-12-24) is *Stricken and denied*
for lack of legal capacity.

6.     After reviewing Petitioner, Kenton Girard's, Motion for Stay of
Proceedings, and Respondent, Jane Girard's, Response to Motion to for Stay of
Proceedings, and *after hearing* argument of counsel and Petitioner, Kenton Girard, the
Motion to Stay of proceedings is *Denied.*

7.     The Court conducted a Case Management Conference and set Trial dates
pursuant to the Court's Trial Order entered contemporaneously herewith.

ENTERED: 10-18-24

**ENTERED**
Judge Rossana P. Fernandez-2141

#214/ OCT 1 8 2024

JUDGE

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Karen V. Paige
Enrico J. Mirabelli
**BEERMANN LLP**
Attorneys for Respondent, Jane Girard
161 North Clark Street, Suite 3000
Chicago, Illinois 60601
T: (312) 621-9700
Firm No. 80095
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com

Kenton Girard
**Petitioner (Pro-se)**
KG5252@Yahoo.com

Marissa Girard
**Third-Party Respondent**
MarissaDakis@Gmail.com

-2-

A2

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## DOMESTIC RELATIONS DIVISION, THIRD DISTRICT

KENTON GIRARD _____ )
               Petitioner     )
                             )

JANE GIRARD _____ )
               Respondent   )

MARISSA GIRARD _____ )
        Third-Party Respondent )

Court No. **15 D 9633**

Calendar **"99"**

**E N T E R E D**
Judge Rossana P. Fernandez-2141

**DEC 03 2024**

**IRIS Y. MARTINEZ**
**CLERK OF THE CIRCUIT COURT**
**OF COOK COUNTY, IL**

## TRIAL ORDER
## IN PERSON

THIS CAUSE COMING TO BE HEARD FOR TRIAL ASSIGNMENT. Notice to all parties.

The court being fully advised in the premises. **IT IS HEREBY ORDERED:**

1   All issues, including Contribution of Attorneys' Fees, shall be heard at the Trial for this cause,

    Unless otherwise ordered by the court.

2   **TRIAL** is scheduled to proceed on

| | | |
|---|---|---|
| **FEBRUARY 18** | **2025** at **11:00 AM** |
| **FEBRUARY 19** | **2025** at **01:30 PM** |
| **FEBRUARY 20** | **2025** at **01:30 PM** |
| **FEBRUARY 21** | **2025** at **01:30 PM** |

   **PRETRIAL** is scheduled to proceed on

3   **DISCOVERY CLOSES ON** ____see below_____ (*any claims or documents not*

    *disclosed timely shall be barred*). **Written Discovery Closes: 11-08-24**

    Oral (Non-Expert) Discovery Closes: 12-31-24; Oral (Expert) Discovery Closes: 1-31-25

    **FEBRUARY 4, 2025** :

4   ~~Counsel of record and/or the parties~~ *shall* exchange the following Documents no later than

    b.  Witness Lists;

    c.  Written Stipulations;

    d.  Updated Discovery;

    e.  Trial Exhibits (and shall provide the court copies *via ONE EMAIL* with a numerical list of

       proposed Exhibits as **PDF files** and labeled (numerically) no later than *14 days prior to trial*.

    f.  All Motions in Limine.

** Respondent's Motion to correct the Trial Order deadlines, nunc pro tunc to 10-18-24 is GRANTED.

A2

5     Counsel of Record and/or the Parties *shall* provide to the Court **VIA ONE (1) EMAIL**

       **SUBMISSION,** and to each other, Courtesy Copies of the following, *within fourteen (14) days*

       *prior to trial,* on or before __FEBRUARY 04,_____:

       *(All Exhibits shall be Marked in <u>Numerical Order</u> and attached as <u>separate</u> PDF files to one (1) Email to the Court):*

         a.   Updated Financial Affidavits;
         b.   All Exhibits, including a list of stipulated Exhibits;
         c.   Any objections (in writing) to the opposing party's Exhibits;
         d.   Witness Lists;
         e.   Written Stipulations;
         f.   Petitions for Contribution to Attorneys' Fees;
         g.   List of all other Exhibits <u>not</u> stipulated to; and
         h.   *Proposed Judgment Order from each party, including a separate Allocation Judgment, if applicable.*

6     Failure to submit appropriate Fee Petition(s) on the day of Trial *shall* be deemed a waiver of contribution to Attorney's Fees.

7     Witnesses not identified on a Witness List *shall* be barred from testifying at trial.

8     The parties must provide a court reporter at their own expense.

9     All Settlement discussions between the parties shall take place <u>prior to</u> the day of trial and *No Pretrial Request will be entertained on the day of trial.*

10    The case *shall* be *Dismissed for Want of Prosecution* if the Petitioner fails to appear and/or fully comply with this Order.

11    An *Order of Default shall* be entered against the Respondent if the Respondent fails to appear and/or does not fully comply with this Order.

**KENTON GIRARD (Pro Se)**          **ENRICO J. MIRABELLI**
_____     _____
**Petitioner/ Petitioner's Attorney (print)**     **Respondent/ Respondent's Attorney (print)**

**KG5252@Yahoo.com**            **EJMirabelli@beermannlaw.com**
_____     _____
**Email for Notices (print)**           **Email for Notices (print)**

**ATTORNEY CODE:**
**ATTORNEY NAME:**    **O/C**
**ATTORNEY FOR:**
**ADDRESS:**
**CITY/STATE:**
**PHONE:**
**EMAIL:**

**ENTERED:**

_____ 
**JUDGE**

**ENTERED**
Judge Rossana P. Fernandez-2141
#2141
DEC 03 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**OPPOSING SIDE MUST BE COPIED ON ALL EMAILS**
**\*ALL EMAIL "SUBJECT" LINES SHALL CONTAIN: (LAST NAME OF PETITIONER) AND (COURT NO.) \***
**\*\* Courtesy Copies 7 Days in advance TO: ccc.DomRelCR3009@CookCountyIL.Gov**

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

IN RE THE FORMER MARRIAGE OF )
)
KENTON GIRARD, )
         Petitioner, )
)
    and )    No.    2015 D 009633
)
JANE GIRARD, )
         Respondent, )    **Associate Judge**
)    **Gregory Emmett Ahern, Jr.**
    and )    **JAN 1 4 2025**
MARISSA GIRARD, )
         Third Party Respondent. )    **Circuit Court-2090**

**ORDER ON PETITION FOR SUBSTITUTION OF JUDGE FOR CAUSE**

This cause coming before the Hon. Gregory E. Ahern for hearing on January 9, 2025, on Kenton Girard's ("Kenton") November 22, 2024 Petition for Substitution of Judge Rosanna Fernandez for Cause and December 5, 2024 Supplement to Petition for SOJ for Cause (hereinafter collectively referred to as the "Petition"), Jane Girard ("Jane"), by and through her attorneys Beermann LLP, having filed a Response to Petition for Substitution of Judge for Cause and Supplement to Petition for SOJ for Cause on January 3, 2025, following Kenton's Motion to Accommodate Petitioner's Unavailability filed on December 12, 2024, and Kenton's email notice of his personal attendance as a spectator at President James Carter's funeral service in Washington D.C. on January 9, 2025, this Court accommodated Kenton by scheduling the hearing via Zoom several hours after the conclusion of the funeral service, Jane, appearing personally and through her attorneys, Kenton and Third-Party Respondent Marissa Girard ("Marissa"), both having received notice of the proceedings and receiving additional emails during the proceedings failing to appear by 2:45 p.m. and neither party appearing by 4:30 p.m. on the Court's open Zoom, the Court having reviewed the pleadings, proposed orders, statutes, and case law, and now being fully advised in the premises, **HEREBY FINDS:**

    A. In summary, Kenton's Petition raises five arguments in favor of a Substitution of Judge for Cause: (i) Judge Fernandez improperly denied a Motion for Substitution of Judge as a Matter of Right filed by Marissa and a Motion to Stay Proceedings filed by Kenton, (ii) Judge Fernandez is not entitled to judicial immunity, (iii) Judge Fernandez inappropriately handled affairs in her courtroom by denying Kenton the ability to speak unless asked direct questions and ordering future proceedings to occur in person, (iv) Judge Fernandez violated the Americans with Disabilities Act as it relates to, and the First Amendment rights of Marissa Girard; and (v) Judge Fernandez is a "cancer on the judiciary."

B. Notably, many of Kenton's arguments are made on behalf of Marissa Girard, who neither joined in the Petition nor filed a Response.

C. This matter was assigned to Calendar 99 on August 19, 2024. In the proceeding five months, Judge Fernandez entered a continuance order following a remote status (9/5/24), entered a trial order following a case management conference (10/18/24), struck Marissa's Motion for Substitution of Judge as of Right after Marissa failed to appear in court to prosecute her Motion (10/18/24), and denied Kenton's Motion to Stay Proceedings (10/18/24).

D. Substitution of judge for cause is governed by section 2-1001 of the Code of Civil Procedure. 735 ILCS 5/2-1001. Specifically, the statute states:

> (3) Substitution for cause. When cause exists.
>> (i) Each party shall be entitled to a substitution or substitutions of judge for cause.
>>
>> (ii) Every application for substitution of judge for cause shall be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The petition shall be verified by the affidavit of the applicant.
>>
>> (iii) Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition. The judge named in the petition need not testify but may submit an affidavit if the judge wishes. If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition.

735 ILCS 5/2-1001(a)(3).

E. To succeed on a substitution of judge for cause petition, a party bears the high burden of showing actual prejudice. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 30.

F. "Allegedly erroneous findings and rulings by the trial court are insufficient reasons to believe that the court has a personal bias for or against a litigant." *O'Brien*, 2011 IL 109039, ¶ 31. Previous rulings may only do so "if they reveal an opinion that derives from an extrajudicial source or [display] such a high degree of favoritism or antagonism as to make fair judgment impossible." (Internal quotation marks omitted.) *Petalino v. Williams*, 2016 IL App (1st) 151861, ¶ 36.

G. Kenton's Petition does not allege or establish that Judge Fernandez has exhibited actual prejudice against Kenton or Marissa Girard. Judge Fernandez's previous rulings and discretion over her courtroom do not arise to the level of actual bias or prejudice contemplated under section 2-1001 of the Code of Civil Procedure.

**IT IS HEREBY ORDERED THAT:**

1. Kenton's Petition is DENIED;

2. This matter shall be returned to Calendar 99 (Hon. Rosanna Fernandez) by separate order of the Presiding Judge.

ENTERED:

_____

**Date**

Hon. Gregory Ahern

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION**

| | | | |
|---|---|---|---|
| IN RE THE FORMER MARRIAGE OF | ) | | |
| | ) | | |
| KENTON GIRARD, | ) | | |
| Petitioner, | ) | Case No. | 2015 D 009633 |
| | ) | | |
| and | ) | | |
| | ) | | |
| JANE GIRARD, | ) | | |
| Respondent, | ) | | |
| | ) | | |
| and | ) | | Judge William Yu |
| | ) | | FEB 14 2025 |
| MARISSA GIRARD, | ) | | |
| Third Party Respondent. | ) | | Circuit Court-2:221 |

**ORDER**

This cause coming before the Court pursuant to the Court's February 7, 2025 order and for presentment of (i) Third-Party Respondent, Marissa Girard's Petition for Substitution of Judge for Cause; (ii) Third-Party Respondent, Marissa Girard's Motion for Substitution of Judge as a Matter of Right; (iii) Kenton Girard's Motion to Perfect DWP; (iv) Jane Girard's Motion to Restrict Communication with the Court, Kenton Girard appearing in person, Marissa Girard appearing through counsel, Robert Holstein (who represented he has field a limited scope appearance with respect to the pending petition for substitution of judge), Jane Girard appearing individually and through counsel, the Court having heard argument of counsel with respect to Marissa Girard's Petition for Substitution of Judge for Cause, having jurisdiction over the parties and the subject matter, and being fully advised in the premises, IT IS HEREBY ORDERED THAT:

1.     This matter is set for trial on May 1 and 2, 2025 starting at 10:30 a.m. in person in Courtroom 3005 on the following pleadings:

   a. Jane's May 27, 2022 Motion to Appoint a Parenting Coordinator and Compel Use of Our Family Wizard

   b. Jane's August 31, 2022, Motion to Compel Enrollment in Therapy (seeking reunification therapy for the family)

   c. Jane's September 20, 2022 Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa.

A2

    d.  Kenton's July 11, 2023 Motion to Modify Joint Parenting Agreement and Custody Judgment,

    e.  Jane's July 13, 2023 Motion to Enforce the Joint Parenting Agreement;

    f.  Jane's March 13, 2024 Motion to Modify the Joint Parenting Agreement and to Implement the 604.10(b) Recommendations.

Said proceedings may be conducted in a hybrid manner and any party/witness who wishes to appear remotely may seek leave to do so. Said trial dates shall not be continued absent compelling circumstances.

    2.    This matter is continued for **status** on resetting hearings on other pending motions to **February 25, 2025 at 10:30 a.m. via Zoom**.

    3.    Petitioner, Kenton Girard, shall have **until 5:00 p.m. on February 14, 2025** to either join Marissa Girard's Petition for Substitution of Judge for Cause, or file his own such petition. In the event he fails to do so, he shall be deemed to have waived his right to seek a for-cause substitution of judge for any alleged bias occurring up to and including today's court proceedings.

    4.    Third-Party Respondent, Marissa Girard's Petition for Substitution of Judge for Cause shall be transferred to Calendar 01 for reassignment via separate order.

ENTER:

_____

Dated: February 14, 2025

Order Prepared by
**BEERMANN LLP** (Firm No. 80095)
Attorneys for Respondent
161 N. Clark St., Suite 3000
Chicago, IL 60601
312.621.9700
mdelster@beermannlaw.com

Copies to
kg5252@yahoo.com
marissadakis@gmail.com
holsteinrobert3@gmail.com

A2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

Kenton Girard

    v.

Jane Girard

15D9633

**ENTERED**
PRESIDING JUDGE REGINA SCANNICCHIO 2059
**Mar. 12, 2025**
Mariyana T. Spyropoulos
Clerk of the Circuit Court
of Cook County, IL

DEPUTY CLERK _____

**Hearing Order**

This matter comes before this court on a trial assignment for Substitution of Judge for Cause and the court being fully advised in the premises;

IT IS HEREBY ORDERED this matter shall be set for an in person hearing before Judge Robert Johnson on Thursday, April 24, 2025 at 11:00am in Courtroom 2108.

A copy of this order shall be sent to: ejmirabelli@beermannlaw.com, mdelster@beermannlaw.com, kg5252@yahoo.com and marissadakis@gmail.com

Date: March 12, 2025

_Scannicchio #2059_

**Judge's Signature**

A2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

In re the Former Marriage of:                    )
                                                 )
Kenton Girard,                                   )
                Petitioner,                      )
                                                 )
and                                              )
                                                 )
Jane Girard,                                     )    Case No. 2015D009633
                Respondent.                      )
                                                 )
and                                              )
                                                 )
Marissa Girard,                                  )
                Third-Party Respondent.          )

**ENTERED**
Presiding Judge Regina Scannicchio-2059
APR 01 2025
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL.
Deputy Clerk

## **ORDER**

THIS CAUSE coming before the Court on the Court's own motion; Respondent Jane Girard, by and through her attorneys Beermann LLP, having filed a Motion to Disqualify Attorney Robert Allan Holstein ("Motion to Disqualify") on March 18, 2025, and also filing a Notice of Motion on March 19, 2025, in connection to the Motion to Disqualify setting the matter before Judge Robert Johnson on April 11, 2025, for immediate hearing; this Court having previously set a hearing on Marissa Girard's February 11, 2025, Petition for Substitution of Judge for Cause on Thursday, April 24, 2025, at 11:00 am in person before Judge Robert Johnson; and the Court now being fully advised in the premises, HEREBY FINDS:

    1.    Robert Holstein filed a Limited Scope Appearance to present Marissa Girard's Motion for Substitution of Judge on February 13, 2025;

    2.    The Motion to Disqualify is directly related to the pending Substitution of Judge for Cause hearing scheduled before Judge Robert Johnson; and

    3.    The Motion to Disqualify should be heard before the hearing on the Substitution of Judge for Cause.

**IT IS HEREBY ORDERED:**

    A.    The April 11, 2025, presentment date and on Respondent Jane Girard's Motion to Disqualify is stricken;

    B.    The Motion to Disqualify shall be heard by Judge Robert Johnson on April 24, 2025, at 11:00 am via Zoom (Meeting ID: 934 9022 2003 Passcode: 543296); and

    C.    Judge Robert Johnson shall determine how to proceed on the pending Substitution of Judge for Cause hearing following his ruling on the Motion to Disqualify.

ENTERED: 4/1/2025

*[signature]* #2059

Hon. Regina A. Scannicchio

A2

Order                                                    (12/01/24) CCG 0002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IRMO

NEWTON   GIRARD

v.                                        No.  15   D   9633

JANE   GIRARD                                          CAL. 23
(MARISSA GIRARD, T? Respond)

ORDER

This cause coming to be heard on (1) Marissa Girard's 2/11/2025 Petition for SOJ for Cause,
(2) Newton Girard's Petition to Join said Petition, (3) Jane Girard's Motion to Disqualify Robert
Holstein, all parties appearing, Respondent appearing through counsel, IT IS HEREBY ORDERED THAT:

1. FOR the reasons stated on the record, Jane's Motion to Disqualify
Robert Holstein is GRANTED.

2. Hearing on the pending petition's for substitution of judge Yu for
Cause is continued to April 29, 2025 at 8:00am in person in Courtroom
2108. Marissa Giard may appear remotely.

3. The Court finds that Newton + Marissa have known of Mr. Holstein's unauthorized
lack of authorization to practice law since March 17, 2025 at the latest, but
waited until April 14, 2025 to seek a continuance.

ENTERED
Judge Robert Johnson-2156

APR 2 4 2025

CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
Deputy Clerk

Attorney No.: 80095                         ENTERED:
Name: M. Elster / Freeman
Atty. for: Respondent                       Dated: APRIL  24  , 2025
Address: 161  N  Clark  # 3000
City/State/Zip: Chicago  IL  60601          _____  2156
Telephone: 312-621-7700                     Judge              Judge's No.

**Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois**

A2

Exhibit C

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| JANE F. GIRARD, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Calendar 1 |
| | ) | |
| KENTON GIRARD and | ) | Case No. 2015-D-009633 |
| MARISSA GIRARD, | ) | |
| | ) | |
| Defendants. | ) | |
| KENTON GIRARD, | ) | |
| | ) | |
| Crossclaim Plaintiff, | ) | **NOTICE OF FILING:** |
| vs. | ) | **NOTICE OF REMOVAL** |
| | ) | **TO THE NORTHERN DISTRICT** |
| MARISSA GIRARD, | ) | **OF ILL., EASTERN DIVISION** |
| | ) | |
| Crossclaim Defendant. | ) | |
| MARISSA GIRARD, | ) | |
| | ) | |
| Counterclaim Plaintiff | ) | |
| and Third Party Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| JANE F. GIRARD, | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| VANESSA L. HAMMER ESQ, | ) | |
| KAREN V. PAIGE ESQ, | ) | |
| CANDACE L. MEYERS ESQ and | ) | |
| DETECTIVE RYAN MCENERNEY, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## NOTICE OF FILING: NOTICE OF REMOVAL

Please take notice that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446,

Defendant/Crossclaim Defendant Marissa Girard has filed contemporaneously with this filing a

Notice of Removal in the United States District Court for the Northern District of Illinois,

Eastern Division, a copy of which is attached as **Exhibit 1**, and that said matter shall proceed hereafter in the United States District Court for the Northern District of Illinois, Eastern Division.

DATED: April 28 2025

Respectfully submitted,

MARISSA GIRARD

By: _/s/ Marissa Girard_
965 Forestway Drive
Glencoe, IL 60022
marissadakis@gmail.com
Tel: 773-425-4393

## **CERTIFICATE OF SERVICE**

This undersigned certifies that a copy of the foregoing was electronically filed with the Clerk of this Court and was served this 28th day of April 2025 by email to the attorneys who have entered their appearances hereunder. A copy of the foregoing was also transmitted to the office of Hon. Scannicchio via the below-listed points of contact.

**Hon. Regina A. Scannicchio**
Presiding Judge of Domestic Relations Division
ccc.domrelcr1905@cookcountyil.gov

**Jaime A. Barcas**
Executive Assistant for Hon. Scannicchio
jaime.barcas@cookcountyil.gov

_/s/ Kenton Girard_
Kenton Girard

Case: 25-1854    Document: 7    Filed: 06/03/2025    Page: 200    Page ID #:38107

# EXHIBIT 1
## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JANE F. GIRARD, | |
| Plaintiff, | Civil No. _____ |
| v. | District Judge _____ |
| KENTON GIRARD and MARISSA GIRARD, | |
| Defendants. | |

----------------------------------------

KENTON GIRARD,

      Crossclaim Plaintiff,

      v.

MARISSA GIRARD,

      Crossclaim Defendant.

----------------------------------------

MARISSA GIRARD,

      Counterclaim Plaintiff & Third Party Plaintiff,

      v.

JANE F. GIRARD,

      Counterclaim Defendant,

VANESSA L. HAMMER,
KAREN V. PAIGE,
CANDACE L. MEYERS and
DETECTIVE RYAN MCENERNEY,

      Third Party Defendants.

## CROSSCLAIM DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant/Crossclaim Defendant

Marissa Girard now files this Notice of Removal ("Notice") for the action filed in the Circuit

Court of Cook County, State of Illinois, case number 2015-D-009633, styled as *Jane Girard v. Kenton Girard* ("State Court Action").

Pursuant to 28 U.S.C. § 1446(a), the process and pleadings served upon Defendant/Crossclaim Defendant Marissa Girard through April 28 2025 are attached as **Exhibit A**, and the orders served upon Defendant/Crossclaim Defendant Marissa Girard through April 28 2025 are attached as **Exhibit B**.

On May 26 2023, Jane Girard filed an alias summons (**Exhibit A**) which references a "Motion to Add Third Party". About a month later, Marissa Girard was served with said summons together with an accompanying paper entitled "Motion to Join Third Party" filed on March 8 2023 (**Exhibit A**). That "Motion to Join Third Party" is a motion – not a pleading – seeking court permission for taking the steps required to join Marissa Girard as a defendant, does not even include Marissa Girard in its caption, and therefore constitutes deficient joinder under 735 ILCS 5/2-201(a).

On April 28 2025, Defendant/Crossclaim Plaintiff Kenton Girard served a declaratory judgment pleading ("DJ Crossclaims") on Marissa Girard, which paper raises federal questions, owing to a <u>Postnuptial Indemnification Agreement</u> which provides for indemnification by Kenton as to Marissa's reasonable and necessary legal fees if her rights under the Constitution or federal law are *violated* owing to a course of action by Jane F. Girard and therefore raises federal and Constitutional questions.

## I. **This Notice is Timely.**

Removal of this action is timely under 28 U.S.C. § 1446(b), which provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the

claim for relief upon which such action or proceeding is based[.]" In this case, Defendant/Crossclaim Defendant Marissa Girard has repaired to federal court on the very same day she was served with the removable pleading from Kenton Girard.

## II. The Northern District of Illinois is the proper venue.

Venue in this District is proper under 28 U.S.C. § 1441(a) because the Circuit Court of Cook County, Illinois (where the State Court Action is pending) is within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice is being filed with the clerk of the Circuit Court for Cook County and will be served upon Plaintiff contemporaneously with this filing. A copy of the Notice of Filing of Notice of Removal is attached hereto as **Exhibit C**.

## III. Federal Jurisdiction Exists.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Crossclaim Plaintiff Kenton Girard has brought claims which raise federal questions. Because the entire pleading arises under the same "case or controversy," this Court "shall have supplemental jurisdiction over all other claims." 28 U.S.C. § 1367.

The recent Supreme Court decision under *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ___ (2019) established that 28 U. S. C. §1441(a) does not permit a third-party counterclaim defendant[1] to remove a claim. However, the posture here is noticeably different: (a) Marissa Girard is an "original defendant" under the State Court Action, which implicated a federal question only at the moment when her co defendant filed a crossclaim against her; and (b) the Federal Rules of Civil Procedure distinguish between counterclaims and crossclaims (Rule 13).

Continuing, the Domestic Relations Exception does not apply here because Marissa

---

[1] Under Supreme Court Justice Thomas's opinion, "third-party counterclaim defendant" refers to a party first brought into the case as an additional defendant to a counterclaim asserted against the original plaintiff.

Girard was never actioned with a pleading, much less a pleading seeking domestic relations style relief. To provide even more clarity, Marissa Girard has neither a biological connection nor a claim to parental responsibility as to the minor children of Kenton Girard and Jane F. Girard.

The State Court Action appears to constitute a post-decree effort to adjudicate the custody of the minor children, although it is difficult to decipher lacking pleadings filed by Plaintiff Jane F. Girard, and because of the most recent description of the trial under the State Court Action provided by Beermann LLP attorney Enrico J. Mirabelli on February 14 2025 as a "criminal contempt trial against Kenton & Marissa Girard". Moreover, the Trial Order of Hon. William Yu from the same date references a "Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa" – an alleged pleading which does not exist (and by the description, is nonsensical – Marissa Girard has no parenting rights to the minor children) and which paper has certainly not been served on Marissa Girard.

The minor children have already been identified as victims of sexual abuse at the hands of their biological mother, Jane F. Girard, who asserted her Fifth Amendment right against self-incrimination under questioning by Prosecutor Mary Stein from the Illinois State's Attorneys Office on September 7 2023. From a civil standard, Jane F. Girard is an admitted child sex abuser and **therefore divested of the right to seek a custody remedy in any court of law**. The federal government has an interest in protecting violent/sex crime victims, and parental rights under the Fourteenth Amendment are implicated.

If any questions arise as to the propriety of the removal of this action, Crossclaim Defendant Marissa Girard requests the opportunity to supplement this Notice. Crossclaim Defendant expressly reserves all objections she may have to the DJ Crossclaims.

WHEREFORE, Crossclaim Defendant Marissa Girard hereby gives notice that the State

Court Action has been removed to this Court.

Dated: April 28 2025                           Respectfully Submitted,

                                              for Crossclaim Defendant Marissa Girard:

                                              /s/ Marissa Girard
                                              965 Forestway Drive
                                              Glencoe, IL 60022
                                              Email: marissadakis@gmail.com
                                              Tel: 773-425-4393

## CERTIFICATE OF SERVICE

The undersigned certifies that this paper and all attachments were (a) electronically filed
with the clerk of this Court on April 28 2025, (b) provided via email to the attorneys who have
filed appearances in this matter as indicated below, and (c) provided via email and hand-delivery
to Kenton Girard, who is pro se hereunder:

kpaige@beermannlaw.com, for Jane F. Girard
jduffy@smbtrials.com, for Vanessa Hammer
kimberly.blair@wilsonelser.com, for Karen Paige and Candace Meyers
jkivetz@jsotoslaw.com, for Ryan McEnerney

*for delivery to Kenton Girard:*
965 Forestway Drive
Glencoe, IL 60022
Email: kg5252@yahoo.com

                                              /s/ Marissa Girard

1          ]            UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
2                          EASTERN DIVISION

3      JANE F. GIRARD,                    )   Case No. 25 CV 04586
                                          )
4                   Plaintiff,            )
                                          )
5          vs.                            )
                                          )
6      MARISSA GIRARD and KENTON          )
       GIRARD,                            )   Chicago, Illinois
7                                         )   May 6, 2025
                    Defendants.           )   10:01 a.m.
8
              TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
9              BEFORE THE HONORABLE JEREMY C. DANIEL

10     APPEARANCES:

11     For the Plaintiff:        BEERMANN LLP
                                 BY:  MR. ENRICO J. MIRABELLI
12                               161 North Clark Street
                                 Chicago, Illinois 60601
13
       For the Defendant         PRO SE
14     Kenton Girard:            BY:  MR. KENTON GIRARD
                                 965 Forestway Drive
15                               Glencoe, Illinois 60022

16     Court Reporter:           KRISTA BURGESON, CSR, RMR, CRR
                                 219 S. Dearborn Street
17                               Chicago, Illinois 60604
                                 312-435-5567
18                               krista_burgeson@ilnd.uscourts.gov

19

20

21

22

23

24                     * * * * *
                 PROCEEDINGS REPORTED BY STENOTYPE
25     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

                             A3

1    (Proceedings heard in open court:)

2        THE CLERK:  25 C 4586, Girard versus Girard, et al.,

3    for motion hearing.

4        MR. MIRABELLI:  Good morning, Judge.

5        Judge, Enrico Mirabelli of the Beermann firm.  We are

6    here on behalf of Jane Girard, our client.

7        THE COURT:  Good morning.

8        And sir?

9        MR. GIRARD:  Kenton Girard, defendant.

10       THE COURT:  Okay.  This case is before me on a

11   removal.

12       Typically I would set a status in 70 days so that the

13   parties can file any motions to remand, for improper removal,

14   what have you, and then I bring them in to get a sense of where

15   things stand.

16       In this case apparently that is not a prudent course

17   of action, according to one side, you wanted to be heard, and

18   so I will hear you now.

19       MR. MIRABELLI:  Thank you, Judge.

20       We filed a motion to reconsider respectfully because

21   we have some deadlines in the State Court, and we don't

22   understand, and maybe this is all on us, but how is this

23   divorce case part of a removal?  The fact that Mr. Girard and

24   Marissa Girard, my client's name is Jane, Mr. Girard and Mrs.

25   Girard are now apparently suing each other on a cross-claim

1    that they filed without leave of Court and within a matter of

2    an hour the wife then moves the case to Federal Court, taking

3    with us our divorce case.

4            And as I said in our pleadings, we were set for

5    hearing I think it was -- I want to be as accurate as I can, it

6    might have been their fourth motion for substitution of Judge

7    for cause, in addition to their motion for substitution of

8    Judge for right.  So that matter is set to be heard on Tuesday

9    morning.

10           On Monday they go and remove the case.  Within a

11   matter of hours we ask to remand and say, if Mr. and Mrs.

12   Girard want to litigate in Federal Court over this declaratory

13   judgment action over an alleged post-nuptial agreement, that is

14   never attached to any pleadings, never heard about before,

15   okay, fine, but our divorce case is set, our divorce case

16   meaning our post-judgment petition to get our client parenting

17   time back with her children, who she hasn't seen for a couple

18   years.  So in order to do that we had trial dates set for May

19   1st and May 2nd.

20           When Your Honor issued the order after the notice of

21   removal granting the briefing schedule, I went before the State

22   Court judges and informed them that there had been a notice of

23   removal, and struck those dates.

24           Now, these two little girls, and I don't mean to be

25   disrespectful, these teen-age girls are 17.  At age 18, the

A3

1  trial court will lose jurisdiction over them as they will be

2  emancipated.  We have alleged in our pleadings to you that

3  Mr. Girard and his current wife have been running the clock for

4  the last two years to avoid this hearing, and there is no

5  reason for our divorce case to be in Federal Court.

6      We have cited the statute having to do with sever, and

7  we felt that if we waited until June to come back and argue

8  this, it was only set for a status.  So we have asked the Court

9  respectfully to immediately sever the divorce filing away from

10  this declaratory judgment action.

11      And again, I am not arguing whether there is Federal

12  jurisdiction here, a Federal question, whether I see it or

13  don't see it, I don't have an interest in that fight between

14  Mr. and Mrs. Girard.  What I have an interest in is getting to

15  a hearing so my client has a chance to start seeing her

16  children.  That is the most important goal that I have been

17  fighting for for at least a year and a half myself, and my firm

18  has been involved in the case for almost two and a half years

19  or longer.

20      As we noted in some of these pleadings that we filed,

21  Judge, I think it is no less than six or seven of the lawyers

22  in my firm have been sued pro se by Mr. and Mrs. Girard, one of

23  them has been sued twice, once by each Mr. and Mrs. Girard.

24      So I think it is clear, and maybe it is because I am

25  too close to this, Your Honor, but we are trying to give you a

A3

1  picture that there is no reason to be here other than to derail

2  the trial, and they successfully did that.  By filing that

3  notice of removal they took away our trial dates.

4      The last Judge that ruled on the matter, Judge

5  Johnson, about a week and a half ago, within three days they

6  named him as a defendant in a Federal lawsuit.  So that is the

7  Judge that is supposed to hear my motion for SOJ for cause -- I

8  apologize, Mrs. Girard's motion for SOJ for cause.

9      So for all of those reasons we are imploring this

10  Court and asking this Court to maybe take a look at what is

11  going on here.

12      I know Mr. Girard will speak in a second.  I am

13  curious as to what he will say as to why he is objecting to the

14  divorce case proceeding because he agreed I think in the

15  pleading I saw.  Mrs. Girard said that her husband agreed to be

16  sued in Federal Court.

17      So our whole basis here is we are asking the Court to

18  immediately sever the domestic relations proceedings from the

19  matter that was removed and allow us to proceed, or in the

20  alternative, give us a more expedited hearing date.

21      Judge, I don't know if I have answered any questions

22  you may have, but if you have any questions of me I would like

23  the opportunity to respond.

24      THE COURT:  Can you remind me who you represent?  Is

25  it Jane Girard?

1          MR. MIRABELLI:  Our firm represents Jane Girard, and

2    she is the mother of these two young girls.

3          THE COURT:  Understood.

4          MR. MIRABELLI:  Marissa is the new wife of Mr. Girard,

5    who is standing to my left and your right.

6          THE COURT:  And Mr. Girard, why is this case eligible

7    for removal to Federal Court?

8          MR. GIRARD:  Your Honor, I have a couple things that I

9    was hoping I could say, if that is all right.

10          THE COURT:  You will start by answering my question.

11          MR. GIRARD:  Okay.

12          THE COURT:  Why is this case appropriately in Federal

13    Court?

14          MR. GIRARD:  There have been a lot of issues in State

15    Court, namely since it was removed.  They have also signed two

16    State orders since it was in Federal jurisdiction.  It was

17    removed on April 28th, they have signed an order on the 29th,

18    and after that, they have written a third order asking another

19    Judge, Judge Ewing (phonetic) in State Court, to sign that.

20    And as of yesterday, they followed up with two requests from

21    him to sign that, and in one of those orders they struck the

22    SOJ for cause and --

23          THE COURT:  You are not answering my question.  You

24    are telling me what happened after removal.

25          MR. GIRARD:  Yes.

A3

1          THE COURT:  I want to know why the case is

2     appropriately in Federal Court?

3          MR. GIRARD:  It is in Federal Court because there has

4     been a series of misconduct by opposing counsel including the

5     fact that he just stated it is over two years, but it has

6     actually been nearly three years, and per Supreme Court Rule

7     922, all domestic cases should have been resolved within 18

8     months, and --

9          THE COURT:  That is a State Court rule.

10          MR. GIRARD:  Okay.

11          THE COURT:  We are going to start from a civics

12     lesson.  This is a Federal Court.  I am a Court of limited

13     jurisdiction.  You either have a Federal question, meaning a

14     Federal statute, or a Federal law is at play, or there is

15     diversity jurisdiction, where the people on either side of the

16     "v" are from different states, and the amount in controversy is

17     in excess of $75,000.

18          Are either you or Jane Girard not citizens or are you

19     both citizens of Illinois?

20          MR. GIRARD:  Yes, we are all citizens.

21          THE COURT:  So it is not a diversity case.

22          What is the Federal statute that you asserted or is at

23     play in the State Court proceedings?

24          MR. GIRARD:  Your Honor, I would like to take the time

25     to brief it and --

                                A3

1    THE COURT: No. You removed it, which means you had a

2  reason to remove it. You should be able to explain it to me

3  and --

4    MR. GIRARD: I would like to --

5    THE COURT: Stop, you do not talk over me. You also

6  do not file frivolous lawsuits or frivolous pleadings. I can

7  sanction you and hold you in contempt for that and I will.

8    So you, standing here today having removed this action

9  to Federal Court, have a reason, and that reason cannot be, I

10  don't like how things were going in State Court, because when I

11  look at my law books, that is not a justification.

12    I have told you the two instances in which you can

13  remove a case to Federal Court. We have established that it

14  is not diversity jurisdiction because you and Jane Girard are

15  both citizens of the great State of Illinois. And so what is

16  the Federal question that gives me the authority to hear this

17  case?

18    MR. GIRARD: My current wife Marissa and I had a

19  post-nuptial indemnification agreement and we had an issue with

20  what she wanted to do with that, because I did not agree with

21  what she wanted to do, and so we filed a cross-claim, and I

22  filed it against her and asked -- and I believe she removed it

23  into Federal Court. That was in our notice of removal on the

24  second page.

25    THE COURT: I have got Ms. Girard's counsel here

A3

1   telling me you did not remove it to Federal Court.

2           Or are you talking about the new wife?

3           MR. MIRABELLI:  The new wife, Marissa Girard, moved it

4   to Federal Court.  Kenton sued his current wife and then she

5   turned around within a matter of we think moments and filed a

6   notice of removal, and then Mr. Girard sent the notice of

7   removal at 12:48 on Monday of last week telling us it has been

8   removed.

9           THE COURT:  Where is Marissa Girard?  Why is she not

10  here?  Neither of you can answer that.  I understand.  Never

11  mind.

12          What is the cross-claim that implicates a Federal

13  question, Mr. Girard?

14          MR. GIRARD:  That was not my motion, Your Honor.  I

15  think she wanted to brief that out.

16          THE COURT:  Okay.

17          MR. GIRARD:  I just learned about this through the

18  docket.  I was not even noticed, Your Honor.

19          THE COURT:  My apologies, since it wasn't your motion

20  or your removal.

21          MR. MIRABELLI:  Judge, if I may.

22          We noticed Marissa Girard of this motion.  She is the

23  one that did the removal.  Mr. Girard did not have an

24  appearance on file and I think he may have filed it either late

25  last night or very early this morning.  So at the time I

A3

1   noticed this up I noticed it to the only person I thought was

2   entitled to notice, and that is Marissa Girard.

3         THE COURT:  I will review the docket.  If I don't see

4   an appropriate Federal question I will remand.  I will review

5   that today.

6         MR. MIRABELLI:  Thank you, Your Honor.

7         THE COURT:  Thank you.

8         Both of you have a good day.

9    (Proceedings concluded at 10:12.)

10

11                          *  *  *  *  *

12         I certify that the foregoing is a correct transcript

13   of the record of proceedings in the above-entitled matter.

14

15   /s/Krista Burgeson, CSR, RMR, CRR    May 28, 2025
     Official Court Reporter

16

17

18

19

20

21

22

23

24

25

1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
2                            EASTERN DIVISION

3     JANE F. GIRARD,                    )   Case No. 25 CV 04586
                                         )
4                    Plaintiff,          )
                                         )
5           vs.                          )
                                         )
6     MARISSA GIRARD and KENTON          )
      GIRARD,                            )   Chicago, Illinois
7                                        )   May 15, 2025
                     Defendants.         )   10:01 a.m.
8
             TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
9              BEFORE THE HONORABLE JEREMY C. DANIEL

10    APPEARANCES:

11    For the Plaintiff:        BEERMANN LLP
                                BY:  MR. ENRICO J. MIRABELLI
12                              161 North Clark Street
                                Chicago, Illinois 60601
13
      For the Defendant         PRO SE
14    Kenton Girard:            BY:  MR. KENTON GIRARD
                                965 Forestway Drive
15                              Glencoe, Illinois 60022

16    Also Present:             MS. ALISON MUTH

17    Court Reporter:           KRISTA BURGESON, CSR, RMR, CRR
                                219 S. Dearborn Street
18                              Chicago, Illinois 60604
                                312-435-5567
19                              krista_burgeson@ilnd.uscourts.gov

20

21

22

23

24                          *  *  *  *  *
                   PROCEEDINGS REPORTED BY STENOTYPE
25       TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

                              A4

1     (Proceedings heard in open court:)

2             THE CLERK:  25 C 4586, Girard versus Girard, et al.

3             Please state your name for the record and the party

4     that you represent.

5             MS. MUTH:  (Inaudible.)

6             THE COURT:  Ms. Muth, you are coming in muffled.  I

7     don't know if you need to be coming in closer to your

8     microphone or --

9       (Discussion held off the record.)

10            THE COURT:  Mr. Mirabelli, if you can do a test for

11    us.

12            MS. MUTH:  Can you hear me, Judge?  Hello?

13            THE COURT:  We hear you but not -- it is coming

14    through like an auxiliary speaker, and so we are trying to

15    figure out how to get better sound.

16            Can you try one more time?

17            MS. MUTH:  Yes, sir.  Is this any better?  I will try

18    to speak a little louder but --

19            THE COURT:  Hold on.

20      (Discussion held off the record.)

21            THE COURT:  We will give it a try.  I apologize in

22    advance if there are interruptions but if we aren't getting

23    satisfactory sound we will have to stop.

24            So Ms. Muth, you have appeared on behalf of Marissa

25    Girard?

1          MS. MUTH:  Yes.

2          THE COURT:  Mr. Mirabelli, you have appeared on behalf

3    of --

4          MR. MIRABELLI:  Jane Girard.

5          THE COURT:  Okay.

6          Mr. Girard, your appearance.

7          MR. GIRARD:  Kenton Girard, pro se, appearing for

8    myself.

9          THE COURT:  So there are a couple motions up.

10          The first thing we have to address, Ms. Muth, your

11   client filed something regarding remand.  Are you standing by

12   that or withdrawing it?

13          MS. MUTH:  (Inaudible.)

14          THE COURT:  I am going to have to ask you folks to

15   indulge me so we can get Systems up here to fix this.  We will

16   have to have someone from Systems come up because I am not sure

17   why this is not working on our end.

18          I am going to pass the case briefly and hear the next

19   matter up.  Once Systems comes up I will interrupt the next

20   proceeding and continue with this one.  All right?  I

21   apologize.

22    (The case was passed and was later recalled as follows:)

23          THE CLERK:  25 C 4586, Girard versus Girard, et al.

24          Please state your name for the record and the party

25   that you represent.

A4

1          THE COURT:  Can we get appearances again?

2          First for Jane Girard?

3          MR. MIRABELLI:  Enrico Mirabelli on behalf of Jane

4  Girard.

5          THE COURT:  For Marissa Girard?

6          MS. MUTH:  Allison Muth on behalf of Marissa Girard.

7          THE COURT:  Mr. Girard?

8          MR. GIRARD:  Kenton Girard, pro se.

9          THE COURT:  Good morning everyone.  Sorry about the

10 delay.

11         So where we left off yesterday there was the motion to

12 vacate the remand order.  I asked Ms. Muth to take a look and

13 see if she intended to stand by it.

14         What is your position?

15         MS. MUTH:  Well, Your Honor, there is a lot going on

16 in this case.  There are a lot of different lawsuits, a lot of

17 different issues.

18         Particular in my representation stems the scope of

19 Marissa Girard, who is the current wife of the respondent -- of

20 the plaintiff, the original plaintiff, Kenton Girard, who is

21 now the respondent in this new matter.  It was an original

22 divorce case in State Court and has been brought before Your

23 Honor in Federal Court.

24         The issue that this case has been brought in Federal

25 Court is because Marissa has a pending Civil Rights lawsuit

A4

1   with Constitutional issues that was brought.  That is in 25 CV
2   00136.
3          Now, there is an issue of attorney's fees that is
4   being brought up today, and there is a -- from my
5   understanding, there was a post-nuptial agreement between
6   Kenton Girard and Marissa Girard, which is her Constitutional
7   -- if her Constitutional rights become violated as a result of
8   her involvement or her forced involvement, because first of
9   all, Your Honor, there is no reason my client should even be
10  involved in this lawsuit in the first place, and --
11          THE COURT:  Before you continue on, my question --
12          MS. MUTH:  Uh-huh?
13          THE COURT:  My principal concern is whether this
14  lawsuit belongs in Federal Court.
15          As you indicated, it is a divorce case where a
16  cross-claim was filed bringing in your client, but what basis
17  does that provide me?  Does that confer subject matter
18  jurisdiction on me under the removal statute?
19          MS. MUTH:  On the cross-claim it does, Your Honor,
20  because there are Constitutional issues that my client is
21  raising.
22          THE COURT:  And what authority are you citing for
23  that?
24          MS. MUTH:  Um, Your Honor, we have -- let me pull it
25  back up.

A4

1          So Marissa is an original defendant, so she is not

2     precluded to removal under Home Depot versus Jackson, and that

3     is 17-1471.

4          THE COURT:  Are you saying that your client was an

5     original defendant in the case filed?

6          MS. MUTH:  Yes.

7          THE COURT:  She wasn't even named in the original

8     case.  How was she a defendant?  She was brought in in a

9     cross-claim.

10         MS. MUTH:  She was not in-pleaded, and so I guess the

11    first defendant is Kenton Girard, and then -- I guess directly

12    by the operative plaintiff in this matter, Jane Girard.

13    Confusing, but that is the way we are seeing it right now.

14         THE COURT:  It is not confusing.

15         There was a civil action filed, correct?

16         MS. MUTH:  Correct.

17         THE COURT:  And that civil action was a divorce case

18    involving Jane and Kenton Girard, correct?

19         MS. MUTH:  Right, correct.

20         THE COURT:  And what under any Supreme Court or

21    Seventh Circuit precedent has me look beyond the original

22    action filed to identify who is a defendant and who can remove

23    a case to Federal Court?

24         MS. MUTH:  Well, it is our position -- Judge, it is my

25    client's position that she is an original defendant in this

A4

1  matter, because she was being held and there are contempt

2  proceedings going on, criminal contempt proceedings, so she has

3  got -- there are issues of her civil rights that are being

4  implicated by this lawsuit.

5         THE COURT:  How is she an original defendant if she is

6  not a party to the union that was the subject of the divorce

7  case?

8         MS. MUTH:  That is a good question, Judge.  I mean,

9  that I do not have the answer for unfortunately because -- and

10  I don't --

11         THE COURT:  I am going to stop you there.

12         MS. MUTH:  I am --

13         THE COURT:  Ms. Muth, I am going to stop you there.

14         MS. MUTH:  Okay.

15         THE COURT:  It does not work if we speak over each

16  other, and given where I sit I have the privilege to interrupt

17  you, so when I do, I ask that you stop and you listen to my

18  question.

19         And so if you don't have an answer of explaining how

20  she is an original defendant to this case, why are you arguing

21  that she was an original defendant in this case?

22         MS. MUTH:  Your Honor, because she is being named as

23  an original defendant in this case.

24         THE COURT:  By Jane Girard?

25         MS. MUTH:  Yes.

1          THE COURT:  In this case?

2          MS. MUTH:  Yes.

3          THE COURT:  Okay.  She is named as a defendant.  So in

4  that original action, what basis is there to remove this case

5  to Federal Court?

6          MS. MUTH:  Violation of her Constitutional rights.

7          THE COURT:  And that was --

8          MS. MUTH:  And that is also --

9          I apologize, Judge.  Go ahead.

10          THE COURT:  And that was brought in through a

11  cross-claim, correct?

12          MS. MUTH:  Yes.

13          THE COURT:  Okay.

14          So the Supreme Court has ruled that this -- I am

15  quoting, this Court has long held that a District Court, when

16  determining whether it has original jurisdiction over a civil

17  action, should evaluate whether that action could have been

18  brought originally in Federal Court.  This requires a District

19  Court to evaluate whether the plaintiff could have filed its

20  operative complaint in Federal Court, either because it raises

21  claims arising under Federal law or because it falls within the

22  Court's diversity jurisdiction.  Section 1441(a) thus does not

23  permit removal based on counter-claims at all, as a

24  counter-claim is irrelevant to whether the District Court had

25  original jurisdiction over the civil action.

1          So parsing through that, yes or no, the basis of

2   removal is a Federal question and not diversity jurisdiction?

3   Ms. Muth?

4          MS. MUTH:  Yes.

5          THE COURT:  And this is not a counter-claim instance,

6   this is a cross-claim instance, correct?

7          MS. MUTH:  Correct.

8          THE COURT:  And let me back up.

9          The original action as filed by Jane Girard did not

10  include a Federal question?

11         MS. MUTH:  Correct.

12         THE COURT:  Okay.

13         The Supreme Court went on in Home Depot USA Inc.

14  versus Jackson, 587 U.S. 435, pages 441 to 42, which is the

15  case I was just quoting, to say, and because the civil action

16  of which the District Court must have original jurisdiction as

17  the action as defined by the plaintiff's complaint.  The

18  defendant to that action is the defendant to that complaint,

19  not a party named in the counter-claim.

20         Ms. Marissa Girard and her removal notice tried to

21  distinguish Home Depot based on it being a cross-claim and not

22  a counter-claim, but then I look at the Seventh Circuit case

23  law, which is Atkins versus Illinois Central Railroad Company,

24  326 F.3rd, 828, at 835 to 36, and it says, even if Federal

25  jurisdiction was lacking at the outset, the question arises

A4

1   again whether jurisdiction over the case as a whole was somehow

2   created when Birmingham Steel filed its third-party complaint

3   against Amtrak.  It is clear that an original stand-alone

4   lawsuit against Amtrak would fall within the original subject

5   matter jurisdiction of the Federal Court, nevertheless, we must

6   consider whether the existence of a third-party complaint

7   effects the Court's subject matter jurisdiction over the

8   original action.  We conclude that it does not.

9           This in my view is consistent with the Supreme Court's

10  reasoning in Homes Group Inc. versus Vornado Air Circulation

11  Systems, 535 U.S. 826 at 831 to 832, where the Supreme Court

12  wrote, it would allow a defendant to remove a case brought in

13  State Court under State law, thereby defeating a plaintiff's

14  choice of forum simply by raising a Federal counter-claim,

15  second, conferring this power upon the defendant would

16  radically expand the class of removable cases contrary to the

17  do regard for the rightful independence of State governments

18  that are cases requiring removal require -- which indicates to

19  me that the Supreme Court is not interested in expanding the

20  ability to remove cases by pleading of the defendant or

21  defendants in bringing in additional cross-claims and

22  counter-claims.  I am to look at the original action, which is

23  the complaint filed by Ms. Girard.

24          Do you have anything that is contrary to that,

25  Ms. Muth?

A4

1          MS. MUTH:  I do not, Your Honor.

2          THE COURT:  Okay.

3          Mr. Girard, do you have anything contrary to that law

4     that tells me to look at something other than the original

5     case, the original action filed, to determine whether I have

6     jurisdiction under the removal statute?

7          MR. GIRARD:  I am not sure I fully understand the

8     question but I am going to attempt to respond.

9          My understanding is that the circumstances for the

10    removal is completely exactly analogous to the common insurance

11    case scenarios where they have a case and then they have a

12    separate case on a declaratory lawsuit request, and that is

13    what the intent of this was, to get that declaratory judgment

14    based on our post-nuptial indemnification agreement, which I do

15    have if you are interested, I just would want it sealed if it

16    is put in the record, if that matters, Your Honor.

17         THE COURT:  What is it you want to hand up?

18         MR. GIRARD:  This is the post-nuptial indemnification

19    agreement, which was the hope that this would --

20         THE COURT:  I have seen that.  You have to pay the

21    attorney's fees for --

22         MR. GIRARD:  Oh, yes.  But I don't think you have seen

23    it, Your Honor, the actual agreement itself, unless Ms. Muth

24    gave it to you.

25         MS. MUTH:  I have not.

A4

1          MR. GIRARD:  I didn't file it because I wanted it to

2     be sealed if it was, and that is why I brought it to you, if

3     you would like to look at it.

4          THE COURT:  Okay.  We will take it and file it under

5     seal.  It does not effect my determination on remand.

6          This case is remanded to State Court because the

7     original action did not raise a Federal question, and

8     therefore, is not properly before this Court because I lack

9     subject matter jurisdiction over it.

10          And I believe what you are referring to, Mr. Girard,

11     is Section 4A, which reads that if any course of action

12     undertaken by Jane Girard proximately causes a violation of

13     Marissa Girard's rights secured under the Constitution or under

14     Federal law, then Kenton Girard will indemnify Marissa from all

15     necessary and reasonable legal billings incurred to address

16     said violations as long as Kenton and Marissa are married and

17     residing together for more than seven days per month.

18          Correct?

19          MR. GIRARD:  That is correct, Your Honor.

20          We were basically asking for the declaratory judgment

21     based on that, and that was the intent of this.

22          THE COURT:  And that is the basis of your cross-claim,

23     which is that you have to indemnify her, but nothing in this

24     action -- nothing in what Jane Girard filed implicates Marissa

25     Girard's -- or it doesn't raise a Federal question.

A4

1    MR. GIRARD:  That was a separate Federal lawsuit which

2  does enumerate all of the violations in the counts, and I have

3  a copy of that if you --

4    THE COURT:  That is a separate lawsuit.  It has

5  nothing to do with -- that is a separate lawsuit.  If you want

6  to -- it is not this case.

7    This case involves Jane Girard's complaint against you

8  and Marissa related to child custody.

9    MR. GIRARD:  Well, Your Honor, it is separate than the

10  child custody part, and that is where I was saying that it --

11  my understanding of it was the analogy of the insurance

12  companies who ask for declaratory judgment while the other case

13  is going contemporaneously, at the same time, and --

14    THE COURT:  The case remains remanded because I have

15  no jurisdiction over it.

16    That leaves the motion for attorney's fees and the

17  motion to direct the clerk to immediately transmit a certified

18  copy.

19    I am going to deny the motion for attorney's fees.

20  Marissa Girard filed her notice of removal with her

21  understanding of Home Depot, that case which dealt with

22  counter-claims not cross-claims, giving her a plausible though

23  legally incorrect basis for asserting removal.  You have to

24  look back I think 16 years before Home Depot for the Seventh

25  Circuit to address the issue of cross-claims.  And so I don't

A4

1    see a justification for imposing attorney's fees.

2           As for the remand, any opposition to immediate remand

3    from you, Mr. Girard?

4           MR. GIRARD:  I would leave it up to the Court's

5    discretion.  I can't think of a legal reason to do anything

6    more than what you feel is appropriate.

7           THE COURT:  Ms. Muth, any opposition to an immediate

8    remand?

9           MS. MUTH:  No, Judge.

10          THE COURT:  All right.

11          So that motion will be granted.

12          That concludes our business here today.  Thank you

13    all.

14          MR. MIRABELLI:  Thank you, Judge.

15          MS. MUTH:  Thank you.

16          MR. GIRARD:  Thank you.

17      (Proceedings concluded at 10:29 a.m.)

18

19                          *  *  *  *  *

20           I certify that the foregoing is a correct transcript

21    of the record of proceedings in the above-entitled matter.

22

23    /s/Krista Burgeson, CSR, RMR, CRR    May 29, 2025
      Official Court Reporter

24

25

A4

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.3)
### Eastern Division

Jane F. Girard

                Plaintiff,

v.

                                  Case No.: 1:25–cv–04586

Marissa Girard, et al.

                                  Honorable Jeremy C. Daniel

                Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, May 6, 2025:

      MINUTE entry before the Honorable Jeremy C. Daniel: Motion hearing held. Marissa Girard failed to appear. Marissa Girard removed this case to federal court on April 28, 2025. (R. 1.) In her notice of removal, she claims that an April 28, 2025, declaratory judgment pleading served on her by Kenton Girard raised a federal question. (R. 1 at 2.) She claims that a postnuptial indemnification agreement that grants her reasonable and necessary legal fees from Kenton Girard if Jane Girard violates Marissa Girard's rights under federal law. (Id.) She further claims that Kenton Girard has brought claims that raise federal questions. (R. 1 at 3.) At no point does she explain which rights have been violated under federal law or what federal questions Kenton Girard's claims implicate. Exhibit A to her notice of removal is a motion to join her as a third party in a custody dispute between Jane and Kenton Girard. According to Exhibit A, Jane and Kenton have divorced and Kenton and Marissa married. According to Kenton Girard's crossclaims, which she also attached to her notice of removal, Kenton and Marissa are no longer married. Kenton Girard's crossclaims address the postnuptial indemnification agreement, which Marissa seeks to enforce in connection with a pending federal lawsuit. Nothing about those claims introduce a federal question into this case, which centers on domestic disputes related to custody and divorce agreements. Therefore, this Court lacks subject matter jurisdiction. Accordingly, this case is remanded to state court. Civil case terminated. Mailed notice. (vcf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**BC**

**FILED** PJJ

5/5/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Jane F. Girard, | **Case No. 1:25-cv-04586** |
| Plaintiff, | District Judge Jeremy C. Daniel |
| v. | Mag. Judge Heather K. McShain |
| Marissa Girard et al., | **NOTICE OF CAUSE AS TO** |
| Defendants. | **BEERMANN LLP** |

Defendant Kenton Girard having reviewed the docket entries hereby notifies the Court

that Plaintiff's law firm Beermann LLP is engaged in open defiance and deception hereunder:

I.      Beermann LLP continues to litigate in state court.

Defendant Kenton Girard notes that the attorneys for Plaintiff Jane Girard – namely

Beermann LLP – have seemingly refused to acknowledge the exclusive federal jurisdiction

hereunder. To wit, Attorney Enrico J. Mirabelli convened a hearing under these proceedings

before Cook County Judge Robert W. Johnson at the Daley Center **on April 29 2025**, wherein

Mr. Mirabelli crafted a proposed order (**Exhibit 1**) setting an in person court date **on May 1 2025**

at 8:15 AM before Hon. Johnson for hearing pending motions.

In case of any doubt, the proposed order – *duly signed by Hon. Johnson* – includes a

statement that the state court is fully informed as to the removal of the proceedings to this Court.

On May 1 2025, Beermann LLP prepared another order (**Exhibit 2**) – also duly signed by Hon.

Johnson – wherein the pending motion seeking the removal of judicial officer William Yu

(brought by Defendant Marissa Girard and later adopted by Kenton Girard) was stricken.

Not fully satisfied to obtain two signed orders from Hon. Johnson, Beermann LLP also

*Notice of Cause as to Beermann LLP*

proceeded to prepare a third proposed order (**Exhibits 3, 4**) – requesting signature from Cook County Judge William Yu – seeking an order that the trial set for May 1-2 2025 was stricken.

II.     Beermann LLP has deceived this Court as to the status of the custody proceedings.

Under Illinois Supreme Court Rule 922: "All allocation of parental responsibilities proceedings under this rule in the trial court shall be resolved within 18 months from the date of service of the petition or complaint to final order." Ascertaining the recent order of state judge William Yu on February 14 2025 (**Exhibit 5**), papers set [a] through [e] comprising the trial syllabus are dated from 2022 and no later than July 13 2023. Certainly papers from 2022 violate the 18 month rule. Even the late-dated paper from July 13 2023 violates the 18 month rule.

Therefore the custody proceedings have self-terminated; the only circumstance under which extension would be viable would require a showing of "good cause" including input from the child representative who resigned in August 2024. Indeed there is no viable, breathing domestic relations component under these proceedings under which the analysis under Beermann LLP's motion to remand requires resolution *instanter*. The only pleadings which retain viability are the TP Claims filed by Marissa Girard for eavesdropping/surveillance and the DJ Crossclaims regarding the postnuptial indemnification agreement (Dkt[1]).

WHEREFORE, Plaintiff KENTON GIRARD prays the Court finds Cause that Beermann LLP has actively disrespected federal jurisdiction and deceived the Court about the material question of the viability of the domestic relations claims hereunder.

Dated: May 5, 2025

Respectfully Submitted,

KENTON GIRARD, *In Pro Se*

/s/ Kenton Girard
965 Forestway Drive
Glencoe, IL 60022
Email: kg5252@yahoo.com
Tel: 773-575-7035

## **CERTIFICATE OF SERVICE**

This undersigned certifies that this motion was electronically filed with the clerk of this Court on May 5 2025 and was provided via email to the attorneys who have filed appearances in this matter as well as directly to the unrepresented parties.

/s/ Kenton Girard

## EXHIBIT 1

Order                                                                    (12/01/24) CCG 0002

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IRMO
KENTON GIRARD

         v.

**ENTERED**
Judge Robert Johnson-2156

**APR 29 2025**

CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
Deputy Clerk-DEER

15 D 9633

JANE GIRARD
AND
MARISSA GIRARD

This matter coming on to be heard upon the motion of Marissa Girard for Substition of Judge for Cause filed against J. Daniel Yu and said motion being adopted by Kenton Girard and this hearing being set for 8:00 am by this court's order of April 25, 2025 and Jane being present w/ counsel from Beermann LLP and neither Kenton or Marissa appearing and counsel for Jane informed the court that by Kenton filed a declaratory action against Marissa on April 28th 28th and Marissa filed a notice of Removal of the entire pending case (25 CV-04586) on April 28, 2025 and Jane filed a Motion to Remand and said Motion to Remand is set for 9:30 in Federal court before Judge Daniel on April 30, 2025 and this court Recognizing the federal action and being fully informed in this matter:

    IT IS HEREBY ORDERED:

A) Kenton and Marissa's Motion for SOJ for Cause are set over to May 1, 2025 at 8:15 A.M. Kenton and Mr Beermann shall appear in person and Marissa shall appear via Zoom.

Attorney No.: _____80095_____

Name: _E.J. Mirabelli / Beermann LLP_

ENTERED:

Atty. for: _Jane Girard_

Address: _161 N Clark St #3000_

City/State/Zip: _Chgo, IL 60601_

Telephone: _312-621-9700_

Dated: _4/29/2025_

Judge                                    Judge's No.

B) If the Federal Court remands the divorce matters back to state court on April 30th the hearing on the motions shall proceed. If there is no Remand then May 1st shall be a status only on the status of the Removal action and the parties may appear via Zoom.

    Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois

*Notice of Cause as to Beermann LLP*

**EXHIBIT 2**

## IN THE IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

IN RE THE FORMER MARRIAGE OF    )

KENTON GIRARD,    )

       Petitioner,    )

   and    )

JANE GIRARD,    )    No. 2015 D 9633

       Respondent.    )

MARISSA GIRARD,    )

       Third-Party Respondent.    )

> **ENTERED**
> Judge Robert Johnson-2156
> **MAY 0 1 2025**
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> Deputy Clerk

### ORDER

**THIS CAUSE** coming before the Court for status pursuant to the Order entered April 29, 2025; Marissa Girard's Notice of Removal, Case No. 25 CV 04586 is still pending and no order of remand having yet been issued;

**IT IS HEREBY ORDERED:**

The Motion for Substitution of Judge for Cause filed by Marissa Girard and adopted by Kenton Girard, set for May 1, 2025, at 8:15 a.m. is stricken.

**ENTER:**

The Hon. Robert Johnson

**BEERMANN LLP**
161 North Clark Street
Suite 3000
Chicago, Illinois 60601
312.621.9700
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com

## EXHIBIT 3

**From:** Martha Steele <msteele@beermannlaw.com>
**To:** CCC DomRelCR2108 (Chief Judge's Office) <ccc.domrelcr2108@cookcountyil.gov>
**Cc:** Enrico J. Mirabelli <ejmirabelli@beermannlaw.com>; kg5252@yahoo.com <kg5252@yahoo.com>; marissadakis@gmail.com <marissadakis@gmail.com>; Karen Paige <kpaige@beermannlaw.com>; Candace L. Meyers <clmeyers@beermannlaw.com>; Patricia A. Rice <parice@beermannlaw.com>
**Sent:** Thursday, May 1, 2025 at 11:53:16 AM CDT
**Subject:** Proposed Court Order - Case No. 2015 D 9633

Good Morning Judge Johnson

Attached for your review and entry is a proposed order (both in Word and Pdf) regarding the above-captioned matter.  Please be advised all counsels and parties have been copied on this email.    Please do not hesitate to contact our office with any questions you may have.

Thank you

**Martha Steele | Legal Assistant**

161 N Clark St., Suite 3000 | Chicago, IL 60601

Tel: 312.621.9700 | Fax: 312.621.0909

2275 Half Day Rd., Suite 350 | Bannockburn, IL 60015

Tel: 847.681.9600 | Fax: 847.681.0909

 

**CONFIDENTIAL E-MAIL**

---

This e-mail message is intended only for the named recipient(s) above. It may contain confidential information that is privileged or that constitutes attorney work product.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachment(s) is strictly prohibited.  If you have received this e-mail in error, please immediately notify the sender by replying to this e-mail and delete the message and any attachment(s) from your system.

**2 attachments**

**2025.05.01 Order (striking Motion for SOJ - Judge Johnson) kvp(6232036.1).docx**
30K

**2025.05.01 Order (striking Motion for SOJ - Judge Johnson) kvp(6232036.1).pdf**
41K

**EXHIBIT 4**

## IN THE IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION

| | | |
|---|---|---|
| IN RE THE FORMER MARRIAGE OF | ) | |
| KENTON GIRARD, | ) | |
| Petitioner, | ) | |
| and | ) | |
| JANE GIRARD, | ) | No. 2015 D 9633 |
| Respondent. | ) | |
| MARISSA GIRARD, | ) | |
| Third-Party Respondent. | ) | |

### ORDER

   **THIS CAUSE** coming before the Court for Trial May 1 and May 2, 2025; the Court having been advised that a Notice of Removal has been filed in Federal Court, Case No. 25 CV 04586, by Marissa Girard; and that a Motion to Remand in said case has been filed by Jane Girard;

   **IT IS HEREBY ORDERED THAT:**

   The Trial dates of May 1 and May 2, 2025 are hereby stricken.

**ENTER:**

_____

The Hon. William Yu

**BEERMANN LLP**
161 North Clark Street
Suite 3000
Chicago, Illinois 60601
312.621.9700
ejmirabelli@beermannlaw.com
kpaige@beermannlaw.com

*Notice of Cause as to Beermann LLP*

**EXHIBIT 5**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – DOMESTIC RELATIONS DIVISION

IN RE THE FORMER MARRIAGE OF   )
   )
KENTON GIRARD,   )
     Petitioner,   )   Case No.   2015 D 009633
   )
     and   )
   )
JANE GIRARD,   )
     Respondent,   )
   )
     and   )   Judge William Yu
   )
MARISSA GIRARD,   )   FEB 14 2025
     Third Party Respondent.   )   Circuit Court-2:2 21

### ORDER

This cause coming before the Court pursuant to the Court's February 7, 2025 order and for presentment of (i) Third-Party Respondent, Marissa Girard's Petition for Substitution of Judge for Cause; (ii) Third-Party Respondent, Marissa Girard's Motion for Substitution of Judge as a Matter of Right; (iii) Kenton Girard's Motion to Perfect DWP; (iv) Jane Girard's Motion to Restrict Communication with the Court, Kenton Girard appearing in person, Marissa Girard appearing through counsel, Robert Holstein (who represented he has field a limited scope appearance with respect to the pending petition for substitution of judge), Jane Girard appearing individually and through counsel, the Court having heard argument of counsel with respect to Marissa Girard's Petition for Substitution of Judge for Cause, having jurisdiction over the parties and the subject matter, and being fully advised in the premises, IT IS HEREBY ORDERED THAT:

    1.    This matter is set for trial on May 1 and 2, 2025 starting at 10:30 a.m. in person in Courtroom 3005 on the following pleadings:

    a.    Jane's May 27, 2022 Motion to Appoint a Parenting Coordinator and Compel Use of Our Family Wizard

    b.    Jane's August 31, 2022, Motion to Compel Enrollment in Therapy (seeking reunification therapy for the family)

    c.    Jane's September 20, 2022 Petition for Finding of Parenting Time Abuse directed against Kenton and Marissa.

    d.  Kenton's July 11, 2023 Motion to Modify Joint Parenting Agreement and Custody Judgment,

    e.  Jane's July 13, 2023 Motion to Enforce the Joint Parenting Agreement;

    f.  Jane's March 13, 2024 Motion to Modify the Joint Parenting Agreement and to Implement the 604.10(b) Recommendations.

Said proceedings may be conducted in a hybrid manner and any party/witness who wishes to appear remotely may seek leave to do so. Said trial dates shall not be continued absent compelling circumstances.

    2.    This matter is continued for **status** on resetting hearings on other pending motions to **February 25, 2025 at 10:30 a.m. via Zoom**.

    3.    Petitioner, Kenton Girard, shall have **until 5:00 p.m. on February 14, 2025** to either join Marissa Girard's Petition for Substitution of Judge for Cause, or file his own such petition. In the event he fails to do so, he shall be deemed to have waived his right to seek a for-cause substitution of judge for any alleged bias occurring up to and including today's court proceedings.

    4.    Third-Party Respondent, Marissa Girard's Petition for Substitution of Judge for Cause shall be transferred to Calendar 01 for reassignment via separate order.

ENTER:

_____

Dated: February 14, 2025

Order Prepared by
**BEERMANN LLP** (Firm No. 80095)
Attorneys for Respondent
161 N. Clark St., Suite 3000
Chicago, IL 60601
312.621.9700
mdelster@beermannlaw.com

Copies to
kg5252@yahoo.com
marissadakis@gmail.com
holsteinrobert3@gmail.com

9    A6        *Notice of Cause as to Beermann LLP*